## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEC HOLDINGS CORP., *et al.*,[1] | Case No. 10-11890 (PJW) |
| | Jointly Administered |
| Debtors. | **Docket Ref. No. 109** |

## DEBTORS' OBJECTION TO MOTION OF CENVEO CORPORATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. § 105(A) AND FED. R. BANKR. P. 2004 (I) PERMITTING EXAMINATION OF THE DEBTORS AND THEIR ADVISORS AND (II) DIRECTING THE DEBTORS AND THEIR ADVISORS TO PERMIT PROSPECTIVE PURCHASERS TO PARTICIPATE IN THE SALE PROCESS

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"),

hereby submit this objection (the "**Objection**") to the *Motion of Cenveo Corporation for Entry of*

*an Order Under 11 U.S.C. § 105(A) and Fed. R. Bankr. P. 2004 (I) Permitting Examination of*

*the Debtors and their Advisors and (II) Directing the Debtors and their Advisors to Permit*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: NEC Holdings Corp., a Delaware corporation (6395); National Envelope Corporation, a New York corporation (5935); National Envelope – WH LLC, a New York limited liability company (9721); National Envelope – AECO LLC, a Delaware limited liability company (9071); National Envelope – Chino LLC, a California limited liability company (9266); National Envelope – City of Industry, LLC, a California limited liability company (9710); National Envelope – Ennis LLC, a Delaware limited liability company (3868); National Envelope – Corsicana LLC, a Texas limited liability corporation (9716); National Envelope – Grand Prairie LLC, a Texas limited liability company (9258); National Envelope – Aurora LLC, a Colorado limited liability company (9712); National Envelope – Lenexa LLC, a Kansas limited liability company (9256); National Envelope – Appleton LLC, a Wisconsin limited liability company (9719); National Envelope – Elk Grove Village LLC, an Illinois limited liability company (9262); National Envelope – Scottdale LLC, a Pennsylvania limited liability company (9711); National Envelope Corporation – East, a New Jersey Corporation (6888); National Envelope – Specialties Group LLC, a Delaware limited liability company (9156); National Envelope – Houston LLC, a Texas limited liability company (9210); National Envelope – Shelbyville Equity LLC, a Delaware limited liability company (9255); National Envelope – Exton Equity LLC, a Delaware limited liability company (9354); National Envelope – Nashville Equity LLC, a Delaware limited liability company (9410); National Envelope – Houston Equity LLC, a Delaware limited liability company (9488); National Envelope – Leasing LLC, a Delaware limited liability company (9542); New York Envelope Corporation, a New York corporation (3186); National Envelope Corporation – North, a Massachusetts corporation (1548); National Envelope Corporation – South, a Georgia corporation (5404); National Envelope Corporation – Central, a Missouri corporation (8259); Old Colony Envelope Corporation, a Massachusetts corporation (4416); and Aristocrat Envelope Corporation, a New York corporation (9284). The mailing address for National Envelope Corporation is 333 Earle Ovington Boulevard, Suite 1035, Uniondale, NY 11553.

*Prospective Purchasers to Participate in the Sale Process* [Docket No. 109] (the "**Motion**"). In

support of this Objection, the Debtors respectfully represent as follows:

**Preliminary Statement**

1.      Cenveo Corporation ("**Cenveo**") requests that this Court permit an examination of

the Debtors, the Debtors' advisors, and a party Cenveo believes to be a prospective purchaser of

the Debtors' assets.  Further, Cenveo requests that this Court order the Debtors to ignore any

exclusivity provisions of any agreements with such a prospective purchaser.

2.      Cenveo's Motion should be denied because (i) Cenveo is not a party in interest

and has no standing to request a 2004 examination, (ii) the Debtors, not Cenveo, should dictate

the course of these Chapter 11 Cases, and (iii) permitting such a broad examination by Cenveo,

the Debtors' largest competitor, would be damaging to the Debtors' estates and creditors.

**Background**

3.      On June 10, 2010 (the "**Petition Date**"), each of the Debtors filed a petition with

the Court under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  The

Debtors are operating their businesses and managing their properties as debtors in possession

pursuant to Sections 1107(a) and 1108 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"**Bankruptcy Code**").  On June 11, 2010, the Court entered an order consolidating these Chapter

11 Cases for procedural purposes only [Docket No. 34].  On June 22, 2010, the Office of the

United States Trustee appointed an official committee of unsecured creditors pursuant to Section

1102 of the Bankruptcy Code.

4.      A description of the Debtors' businesses, and the reasons for commencing these

Chapter 11 Cases, are set forth in the Declaration of James Shelby Marlow in Support of Chapter

11 Petitions and First Day Motions (the "**First Day Declaration**") [Docket No. 2] filed on the

Petition Date.

## The Prepetition Sale Process and Current Status

5. For months prior to the Petition Date, the Debtors explored various strategic alternatives, including avoiding bankruptcy, was well as a possible sale of their assets. As explained to the Court by the Debtors' counsel at the first day hearing, the Debtors elected, in the exercise of their business judgment, to enter into a confidential letter of intent with a single party, for the purpose of negotiating a stalking horse asset purchase agreement, which would form the basis upon which other interested parties could bid for the Debtors' assets in a future postpetition bidding process.[2] Prior to completion of negotiations, the Debtors were forced to file these chapter 11 cases due to a lack of liquidity.

6. As of the date hereof, these cases have been pending for less than a month. The Debtors exclusive period within which to propose a plan does not expire for more than 90 days. The Debtors have not yet signed a stalking horse asset purchase agreement, nor have the Debtors commenced a postpetition bidding process.

7. By the time this Motion is heard, the Debtors may have commenced a postpetition bidding process. When the Debtors elect to commence such a process, all interested purchasers, including Cenveo, will be permitted to perform due diligence and submit bids for the Debtors assets at that time.

---

[2] Cenveo's suggestion in paragraph 15 of the Motion that the Debtors hid material facts from this Court is false and misleading. At the first day hearing, the Debtors' counsel disclosed that after a lengthy process, prior to the Petition Date, William Blair, the Debtors' investment banker, identified a potential purchaser for the Debtors' assets as the highest and best initial bid and the Debtors have signed a confidential letter of intent with that potential purchaser. The Debtors counsel then explained that the Debtors intend to sign up a purchase agreement with that potential purchaser over the next few weeks, subject to higher and better bids and court approval, and conduct an auction. The Debtors did not disclose the name of the potential purchaser, nor the terms of the letter of intent, because, pursuant to the terms of the letter of intent, the Debtors are required to keep such information confidential.

## Motion of Cenveo

8.    On June 30, 2010, Cenveo filed the Motion requesting certain discovery and participation in an alleged sale process for the Debtors' assets. Motion at ¶ 2. Specifically, Cenveo requests that (a) the Debtors, William Blair & Company, LLC ("**Blair**"), and The Gores Group, LLC ("**Gores**"), produce documents set forth in the *Request for Documents on Behalf of Cenveo Corporation Pursuant to Fed. R. Bankr. P. 2004*, attached to the Motion as Exhibit D (the "**Document Request**"), and (b) the Debtors be directed to disregard any possible exclusive "no-shop" provision in any letter of intent with Gores so that Cenveo may have access to the Debtors' data room, management, and other information. Motion at ¶ 9.

9.    Cenveo claims that as a result of a single letter it sent, attached as Exhibit A to the Motion (the "**Cenveo Letter**"), that outlined the prospects of a potential offer by Cenveo to purchase the Debtors' assets, Cenveo is a "bidder" for the Debtors' assets and is therefore entitled to an examination under Rule 2004 and has standing to raise any issues relating to these Chapter 11 Cases. Motion at ¶11.

## Objection

10.    The Court should deny the Motion. Cenveo is not a party in interest in these Chapter 11 Cases and, as a result, has no standing to request an examination under Bankruptcy Rule 2004 nor to object to the conduct of these Chapter 11 Cases to date. The Debtors' exclusive period to file a plan of reorganization has not yet expired, the Debtors have not yet filed a motion for approval of bidding procedures or commenced a postpetition bidding process, and potential bidders such as Cenveo should not be permitted to dictate either the timing or method of any bidding process that the Debtors may propose during these Chapter 11 Cases.

11.    Even if Cenveo *was* a party in interest and had proper standing, Cenveo is the Debtors' largest competitor and it would be highly inappropriate and damaging to the Debtors

estates and creditors to allow Cenveo access to detailed information regarding the Debtors'

customers and operations. By the time this Motion is heard, the Debtors may have commenced a

postpetition bidding process. When Debtors elect to commence such a process, all interested

purchasers, including Cenveo, will be permitted to perform due diligence and submit bids for the

Debtors assets at that time. At the auction, the Debtors will support the highest or best bid for

the Debtors' assets, which may be a bid from Cenveo. The Motion, however, seeks information

far more detailed than that which would be required for a strategic bidder to bid on the Debtors

assets and should, even after commencement of the bidding process, be denied.

**A.      Cenveo Does Not Have Standing To Request An Examination Under Bankruptcy Rule 2004 Because Cenveo Is Not A Party In Interest**

12.      Cenveo is not a "party in interest" and thus has no standing and no right to an

examination under Bankruptcy Rule 2004. Only parties in interest "may raise and may appear

and be heard on any issue in a case under [Chapter 11]." 11 U.S.C. § 1109(b). In general, a

"party in interest" under Section 1109(b) is any person with a direct financial stake in the

outcome of the case or certain representatives of persons with direct financial interests such as

the chapter 11 trustee or a statutory creditors' committee. Specifically, Section 1109(b) states:

> A party in interest, including the debtor, the trustee, a creditors'
> committee, an equity security holders' committee, a creditor, an
> equity security holder, or any indenture trustee, may raise and may
> appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b). Bankruptcy Rule 2004 specifically requires party in interest status,

providing that "On motion of any *party in interest*, the court may order the examination of any

entity." Fed. R. Bankr. P. 2004(a) (emphasis added).

13.      This Court has previously rejected "the proposition that anyone with an economic

stake in the outcome of a bankruptcy case has standing to participate in that case." In re Lifeco

Inv. Group, Inc., 173 B.R. 478, 487 (Bankr. D. Del. 1994). Indeed, "[a] too-liberal interpretation

of 'party in interest' will ultimately clash with the need for prompt and efficient resolution of a bankrupt's estate." In re Aronson, No. 94-2497, 1994 U.S. Dist. LEXIS 12811, at *23 (E.D. Pa. Sep. 12, 1994). While the term "party in interest" is broadly interpreted, it is not "infinitely expansive." See In re Martin Paint Stores, 207 B.R. 57, 61 (S.D.N.Y. 1997).

14. In the Third Circuit, party in interest status is determined by the relationship the party has with the debtor and, as a result, must be determined not as a general matter but on an ad hoc basis. See In re Amatex Corp., 755 F.2d at 1034 (3d Cir. 1985) ("[C]ourts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation."). A "sufficient stake" may be obtained if the party suffers a direct effect from the bankruptcy proceeding. See, e.g., Hartford Accident & Indem. Co. v. Global Indus. Techs., Inc., 2008 U.S. Dist. LEXIS 108185, *6-8 (W.D. Pa. July 25, 2008) ("Generally speaking, a 'sufficient stake' indicates an interest that is directly or adversely affected by the bankruptcy proceeding.").

15. Rarely have courts expanded the scope of "party in interest" to include a party whose indirect interests may be affected by a bankruptcy proceeding. See In re Amatex Corp., 755 F.2d at 1042-43 (permitting party in interest status due to the unique position of future claimants in asbestos litigation context). These limited circumstances do not change the fundamental rule that standing requires a direct stake in the chapter 11 cases and a direct relationship to the debtor. See In re ANC Rental Corp., Inc., 277 B.R. 226, 232-33 (Bankr. D. Del. 2002).

16. Cenveo has no direct stake in these Chapter 11 Cases and no direct relationship to the Debtors. Therefore, Cenveo is not a party in interest. Moreover, were it relevant, Cenveo has no economic stake in these Chapter 11 Cases, other than as a competitor with an interest in

obtaining access to the Debtors' confidential and proprietary information. No facts have been presented which could warrant the type of extraordinary expansion of the definition of a "party in interest" that would be required to permit Cenveo such standing. Cenveo's entire argument that it constitutes a "party in interest" appears to be that Cenveo is a "bidder," and, as a result, constitutes a party in interest. Motion at ¶ 5. However, Cenveo cannot be a bidder because no bidding process has even been established. To date, the Debtors' have not filed any bidding procedures motion, have not commenced any formal auction process and have not filed any sale motion seeking to sell substantially all of the Debtors' assets. As a result, Cenveo's claim that it is a "bidder" is simply incorrect.

17.    Cenveo's claim that it is a "bidder" appears to hinge on the Cenveo Letter and certain informal preliminary communications between Cenveo and Debtors prior to the Petition Date. However, the Cenveo Letter provided simply that Cenveo *may* submit an offer after additional diligence and negotiation of a purchase agreement. This letter and the informal communications should not be found to make Cenveo a "party in interest." If such simple correspondence and preliminary communications could bestow standing upon a party that otherwise has no direct stake in the bankruptcy proceedings, then the entire "party in interest" requirement of Section 1109(b) and Rule 2004 would be eviscerated.

18.    Further, even if Cenveo were a bidder, it would not necessarily mean that Cenveo constitutes a "party in interest" in these Chapter 11 Cases. Cenveo relies upon In re Summit Corp., 891 F.2d 1, 5 (1st Cir. 1989), for the proposition that "[i]t is undisputed that a bidder for estate property is a party in interest." Motion at ¶ 11. However, the holding in Summit, a Chapter 7 case, has never been adopted in the Third Circuit. Indeed, the standing of a prospective bidder is questionable in the Third Circuit. See e.g., In re Mall at One Assocs., L.P.,

1995 Bankr. LEXIS 716. *21 (Bankr. E.D. Pa. May 23, 1995) (noting that "there are numerous authorities which hold that a non-creditor whose only connection with a bankruptcy case is that the party was an unsuccessful bidder at a bankruptcy sale lacks standing to challenge the right of other bidders to consummate the sale"); In re Karpe, 84 B.R. 926, 929 (Bankr. M.D. Pa. 1988) (finding that a bidder whose "only interest in this proceeding is that it wishes to purchase an asset of the estate" lacked standing and was not a party in interest). As a result, even if Cenveo were a "bidder," it is unclear that this would permit standing for Cenveo to insert itself into these Chapter 11 Cases.

19.    As a result of the foregoing, Cenveo should not be found to constitute a "party in interest." Thus, Cenveo has no standing in these Chapter 11 Cases and no right to an examination under Bankruptcy Rule 2004.

**B.    Cenveo Should Not Be Permitted To Dictate The Timing Of Any Bidding Process That May Be Proposed**

20.    Cenveo, by its Motion, seeks to dictate the nature and timing of the Debtors' bidding process. Cenveo would not even have standing to object to bid procedures and certainly shouldn't be allowed to circumvent the bidding process before it even begins.

21.    As noted above, the Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. Section 1107 provides that:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a). Section 1108 provides that "Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business." 11 U.S.C. § 1108.

22. This Court has not limited the Debtors' authority to manage their business in accordance with Sections 1107(a) and 1108, and, therefore, the Debtors should be permitted to continue managing their business as debtors-in-possession. Cenveo's attempt to dictate the direction of these Chapter 11 Cases, and whether and how the Debtors should proceed to sell assets during these Chapter 11 Cases, should be rejected.

**C.  Cenveo is the Debtors' Largest Competitor and It Would Be Highly Inappropriate and Damaging to the Debtors' Estates To Provide Cenveo Detailed Information About the Debtors' Customers and Operations**

23. Even if this Court finds that Cenveo *is* a party in interest and could bring a motion for an examination under Bankruptcy Rule 2004, the broad 2004 examination proposed by Cenveo should not be permitted. Once a bidding process begins, and Cenveo signs an appropriate confidentiality agreement, Cenveo will be granted access to perform such reasonable due diligence as is required for Cenveo to make a bid for the Debtors' assets. If Cenveo's bid is the highest or best bid, the Debtors will sell the assets to Cenveo.

24. Cenveo is the Debtors' largest competitor. As set forth in the First Day Declaration, the Debtors held a 21 percent market share of the overall envelope industry in 2008, while Cenveo held a 19 percent market share for that year. First Day Declaration at ¶ 10. Similarly, with respect to direct sales to consumers, the Debtors have a 14 percent market share, behind only Cenveo. First Day Declaration at ¶ 12.

25. Certain of the documents Cenveo seeks in the Document Request, clearly constitute information that would be improper for the Debtors' primary competitor to receive. For example, Request for Production No. 16 seeks "All documents that relate to the assets to be

069504.1001

sold by the Debtors in connection with the solicitation for purchase initiated by Blair in or about March 2010." Answering such a request would require the Debtors to turn over sensitive detailed customer and operational information to of the Debtors' primary competitor. The release of such information, at a time when the Debtors have neither established bidding procedures nor filed any sale motion requesting authorization to sell the Debtors assets, is both premature and risks serious harm to the Debtors' estates.

## Conclusion

26. Cenveo is not a party in interest in these Chapter 11 Cases. Cenveo is not, and cannot, constitute a "bidder" since, to date, the Debtors have not filed any bidding procedures motion or commenced any postpetition bidding process. Since Cenveo is not a party in interest, but rather is simply one of the Debtors' primary competitors, Cenveo should not be permitted to inject itself into these Chapter 11 Cases and dictate to the Debtors what bidding process should be undertaken and when. Further, even if Cenveo were found to be a party in interest, allowing Cenveo broad access to the Debtors' customer information and operations, as it requests in the Motion, should be denied. By the time this Motion is Heard, the Debtors may have commenced a bidding process and provided due diligence materials to multiple bidders, including Cenveo, but the relief requested in the Motion is not in the best interest of the Debtors or their estates and, in any event, is premature at this juncture. Therefore, the Motion should be denied.

WHEREFORE, the Debtors respectfully request that this Court (i) sustain the Debtors' Objection, (ii) deny the Motion, and (iii) grant the Debtors such other and further relief as may be just and proper.

Dated: July 1, 2010
Wilmington, Delaware

Respectfully Submitted,

Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

David S. Heller
Josef S. Athanas
Stephen R. Tetro II
LATHAM & WATKINS LLP
Suite 5800
233 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION

069504.1001