**Exhibit B**

**Proposed Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>NEC HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-11890 (PJW)<br><br>Jointly Administered<br><br>**Docket Ref. No. [___]** |

## ORDER AUTHORIZING (I) SALE OF CERTAIN OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES

Upon the motion, dated July [___], 2010 (the "<u>Motion</u>") of the above-captioned

debtors and debtors in possession (collectively, the "<u>Debtors</u>"), seeking, among other things,

entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: NEC Holdings Corp., a Delaware corporation (6395); National Envelope Corporation, a New York corporation (5935); National Envelope – WH LLC, a New York limited liability company (9721); National Envelope – AECO LLC, a Delaware limited liability company (9071); National Envelope – Chino LLC, a California limited liability company (9266); National Envelope – City of Industry, LLC, a California limited liability company (9710); National Envelope – Ennis LLC, a Delaware limited liability company (3868); National Envelope – Corsicana LLC, a Texas limited liability corporation (9716); National Envelope – Grand Prairie LLC, a Texas limited liability company (9258); National Envelope – Aurora LLC, a Colorado limited liability company (9712); National Envelope – Lenexa LLC, a Kansas limited liability company (9256); National Envelope – Appleton LLC, a Wisconsin limited liability company (9719); National Envelope – Elk Grove Village LLC, an Illinois limited liability company (9262); National Envelope – Scottdale LLC, a Pennsylvania limited liability company (9711); National Envelope Corporation – East, a New Jersey corporation (6888); National Envelope – Specialties Group LLC, a Delaware limited liability company (9156); National Envelope – Houston LLC, a Texas limited liability company (9210); National Envelope – Shelbyville Equity LLC, a Delaware limited liability company (9255); National Envelope – Exton Equity LLC, a Delaware limited liability company (9354); National Envelope – Nashville Equity LLC, a Delaware limited liability company (9410); National Envelope – Houston Equity LLC, a Delaware limited liability company (9488); National Envelope – Leasing LLC, a Delaware limited liability company (9542); New York Envelope Corporation, a New York corporation (3186); National Envelope Corporation – North, a Massachusetts corporation (1548); National Envelope Corporation – South, a Georgia corporation (5404); National Envelope Corporation – Central, a Missouri corporation (8259); Old Colony Envelope Corporation, a Massachusetts corporation (4416); and Aristocrat Envelope Corporation, a New York corporation (9284).  The mailing address for National Envelope Corporation is 333 Earle Ovington Boulevard, Suite 1035, Uniondale, NY 11553.

Procedure (the "Bankruptcy Rules") authorizing the Debtors to sell the Acquired Assets pursuant to the terms of an Asset Purchase Agreement, dated as of July 8, 2010 (the "Agreement")[2] by and among the Debtors, as sellers, NEV Holdings, LLC, as purchaser (the "Purchaser"); and the Court having entered an order (the "Bidding Procedures Order"), dated July [__], 2010 [Docket No. ___] approving, among other things, the Bidding Procedures (the "Bidding Procedures") based upon the evidence presented at the hearing held on July 22, 2010 (the "Bidding Procedures Hearing"); and the Auction (as defined in the Bidding Procedures Order) having been held in accordance with the Bidding Procedures Order on August 20, 2010; and at the conclusion of the Auction, the Purchaser having been chosen as the Successful Bidder (as defined in the Bidding Procedures); and [_____] having been chosen by the Debtors to be the Back-up Bidder (as defined in the Bidding Procedures); and the Court having conducted a hearing to consider the results of the Auction and the Debtors' request to enter into and consummate the transactions contemplated by the Agreement on August [__], 2010 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Agreement, a copy of which is attached hereto as Exhibit A, and all transactions contemplated thereby (together, the "Sale"); and the Court having reviewed and considered the Agreement and the Motion, the arguments of counsel made, and the evidence adduced at the Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding Procedures Hearing and the Sale Hearing and these Chapter 11 Cases, and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:[3]

---

[2] Any term used but not defined herein shall have the meaning ascribed to such term in the Agreement.

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Bankruptcy Rule 7052.

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     The Court has jurisdiction over this Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

D.     As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Auction, the Sale, and the assumption and assignment of the Assumed Contracts has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and in compliance with the Bidding Procedures Order to each party entitled thereto, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Auction, the Sale or the assumption and assignment of the Assumed Contracts is or shall be required.

E.     As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale

Hearing, the Debtors have marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures Order and the Auction was duly noticed.

F.        Except as set forth in the Agreement, each of the Debtors (i) has full corporate or other power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale by the Debtors has been duly and validly authorized by all necessary corporate or other action, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Agreement, and (iii) has taken all corporate or other action necessary to authorize and approve the Agreement and the consummation by the Debtors of the transactions contemplated thereby; and no consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtors to consummate such transactions.

G.        Except as set forth in the Agreement, the Debtors (i) have good, valid and marketable title to all of the Acquired Assets, (ii) the Acquired Assets are to be transferred free and clear of any and all Liens, Claims and Interests (as defined below), which, for the avoidance of doubt, do not include Assumed Liabilities and (iii) all of the Acquired Assets are, or will on the date of Sale, be owned by the Debtors and will be transferred under the Agreement.

H.        Approval of the Agreement and consummation of the Sale at this time are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

I.        The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the Sale the value of the Debtors' assets will be harmed.

YCST01:9900422.1                                                                                                069504.1001

J.  A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the official committee of unsecured creditors in these Chapter 11 Cases (the "Committee"); (iii) counsel to the administrative agent for the lenders under the Debtors' prepetition credit agreement; (iv) counsel to the agents for the Debtors' postpetition secured lenders; (v) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (vi) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (vii) all Persons known or reasonably believed to have asserted a Lien, Claim and Interest on any of the Acquired Assets; (viii) the non-Debtor parties to the Leases and Contracts; (ix) the Attorneys General in the State(s) where the Acquired Assets are located; (x) the United States Environmental Protection Agency; (xi) the New Jersey Environmental Protection Agency; (xii) any other applicable state environmental agency; (xiii) counsel to International Paper; and (xiv) the creditors listed on the Debtors' consolidated list of 30 largest unsecured creditors as of the Petition Date, as filed with the Debtors' petitions.[4]

K.  As evidenced by the affidavits of service filed with the Court and based upon the representations of counsel at the Sale Hearing and as approved under the Bidding Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Auction and the Sale Hearing has been provided to all parties in interest; (ii) such notice was and is good, sufficient and appropriate under the circumstances of the Debtors' Chapter 11 Cases and was provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy

---

[4] [ADD ADDITIONAL PARTIES AS APPROPRIATE]

YCST01:9900422.1                                                 069504.1001

Rules 2002, 6004, 9006 and 9007 and the Local Rules; and (iii) no other or further notice of the the Auction, the Sale Hearing or of the entry of this Sale Order is necessary or shall be required.

L.      Upon conclusion of the Auction, the Purchaser submitted the highest and best offer for the Acquired Assets, as set forth in the Agreement, including the payment of the Purchase Price, as defined therein.

M.      The Agreement was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither Debtors, nor the Purchaser, nor any Affiliate of the Purchaser has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person, and the aggregate price paid by the Purchaser for the Acquired Assets was not controlled by any agreement among any bidders.

N.      The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Specifically, (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Purchaser complied with the provisions in the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) the Purchaser in no way induced or caused the chapter 11 filings by the Debtors; and (v) the negotiation and execution of the Agreement was at arms' length and in good faith.

O.      The consideration provided by Purchaser for the Acquired Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be

YCST01:9900422.1                                        069504.1001

provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

P.     The Sale must be approved and consummated promptly in order to preserve the value of the Debtors' assets.

Q.     As of the Closing, pursuant and subject to the terms of the Agreement, the transfer of the Acquired Assets to the Purchaser will be a legal, valid, enforceable, and effective transfer of the Acquired Assets and will vest the Purchaser with all right, title, and interest of the Debtors in the Acquired Assets free and clear of all Liens, Claims and Interests.

R.     The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if each of (i) the sale of the Acquired Assets to the Purchaser, and (ii) the assignment of the Assumed Contracts and the Assumed Liabilities to the Purchaser were not free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (except Permitted Liens), or if the Purchaser would, or in the future could, be liable for any of the Excluded Liabilities.

S.     The Debtors may sell the Acquired Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (except Permitted Liens) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens, Claims and Interests and (ii) non-debtor parties to Assumed Contracts who did not object timely, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Liens, Claims and Interests and (ii) non-debtor parties to Assumed Contracts

7

who did object fall within one or more of the other subsections of section 363(f) of the

Bankruptcy Code and are adequately protected by having their Liens, Claims and Interests, if

any, attach to the portion of the Purchase Price ultimately attributable to the property against or

in which they claim an interest, in the order of their priority, with the same validity, force and

effect which they now have as against such property, subject to any claims and defenses the

Debtors may possess with respect thereto.

      T.     Neither the Purchaser nor any of its Affiliates is a successor to the Debtors

or their bankruptcy estates by reason of any theory of law or equity, and neither the Purchaser

nor any of its Affiliates shall assume or in any way be responsible for any liability or obligation

of any of the Debtors and/or their bankruptcy estates, except as otherwise expressly provided in

the Agreement.

      U.     The Debtors have demonstrated that it is an exercise of their sound

business judgment to assume and assign the Assumed Contracts to the Purchaser in connection

with the consummation of the Sale, and the assumption and assignment of the Assumed

Contracts are in the best interests of the Debtors, their estates, and their creditors. The Assumed

Contracts and Assumed Liabilities being assigned to the Purchaser, are an integral part of the

Agreement and, accordingly, such assumption and assignment of Assumed Contracts and

Assumed Liabilities are reasonable and enhance the value of the Debtors' estates.

      V.     The Debtors have served a notice of assignment and cure costs (the

"Contract Notice") on all counterparties to Assumed Contracts identified, as of the Initial

Designation Deadline, on the Assumed Contracts List. Such Contract Notices were adequate and

sufficient of the proposed assumption and assignment of the Assumed Contracts identified on the

Assumed Contracts List pursuant to the terms of the Agreement.

YCST01:9900422.1                                                      069504.1001

W.      For all such counterparties to Assumed Contracts that were served with a Contract Notice at least 10 days prior to the Sale Hearing, the deadline to file an objection to the assumption and assignment to the Purchaser of any Assumed Contract (a "Contract Objection") has expired and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, or overruled. To the extent that any such party did not timely file a Contract Objection by the Contract Objection deadline, such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract, and (ii) the proposed cure amount (the "Cure Amount") set forth on the Contract Notice.

X.      The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the Agreement did not provide that the Purchaser could (i) on or prior to the Initial Designation Deadline modify, pursuant to the terms of Section 2(i)(iii) of the Agreement, the Assumed Contract List to include or remove a Non-Lease Contract or a Lease, or (ii) on or prior to the Subsequent Designation Deadline modify, pursuant to the terms of Section 2(i)(vi) of the Agreement, the Assumed Contract List to include one or more additional Leases. The notice and opportunity to object provided in accordance with the Agreement and this Order to counterparties to subsequently designated Assumed Leases fairly and reasonably protects any rights that such counterparties may have with respect to any additions to the Assumed Contracts List.

Y.      The Debtors have, including by way of entering into the Agreement, and the provisions relating to the Assumed Contracts therein and the performance of the Purchaser thereunder, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(l)(A) of

the Bankruptcy Code and (ii) Purchaser has provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Purchaser has provided adequate assurance of future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.

Z.    Without limiting the effect or scope of the foregoing, the transfer of the Acquired Assets and the Assumed Contracts from the Seller to the Purchaser does not and will not deem the Purchaser or its affiliates, to: (i) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Agreement), including a "successor employer" for the purposes of the Internal Revenue Code of 1986 or the Employee Retirement Income Security Act of 1974; (ii) have, *de facto* or otherwise, merged with or into any of the Debtors; (iii) be a mere continuation of the Debtors or their estates (and there is no continuity of enterprise between the Purchaser and the Debtors); or (iv) be holding itself out to the public as a continuation of the Debtors.  Except for the Assumed Liabilities, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Acquired Assets or otherwise. Without limiting the generality of the foregoing, and except for the Assumed Liabilities, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Purchaser, and each of their Affiliates shall have no successor or vicarious liabilities of any kind or character including but not limited to any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising,

YCST01:9900422.1                                                      069504.1001

whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing.

AA.     Approval of the Agreement and assumption and assignment of the Assumed Contracts and consummation of the Sale of the Acquired Assets at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest and represent an exercise of the Debtors' sound business judgment.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is granted, as further described herein.

2.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled on the merits.

3.     Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014.

**Approval of the Agreement**

4.     The Agreement, and all of the terms and conditions thereof, is hereby approved.

5.     Pursuant to sections 363(b) and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under and comply with the terms of the Agreement,

069504.1001

and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Agreement.

6.      The Debtors are authorized to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, together with all additional instruments, documents, and agreements that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement, including effectuating amendments to the Agreement in furtherance thereof.

7.      This Order and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of any Debtor, all non-debtor parties to the Assumed Contracts, all successors and assigns of the Purchaser, the Debtors and their affiliates and subsidiaries, and any subsequent trustees appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code.  Nothing contained in any chapter 11 plan confirmed in these bankruptcy cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Agreement or this Order.

8.      The Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

9. The Purchaser shall have no obligation to proceed with the Closing until all conditions precedent in the Agreement to its obligation to do so have been met, satisfied, or waived in accordance with the terms of the Agreement.

## Transfer of Assets

10. Pursuant to sections 105(a), 363(f) and 365 of the Bankruptcy Code, upon the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease), the Acquired Assets shall be transferred to the Purchaser in accordance with the Agreement and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and, except as set forth in the Agreement, shall vest the Purchaser with title to the Acquired Assets, free and clear of all liens, mortgages, pledges, options, security interests, charges, rights of first refusal, hypothecations, encumbrances on real property, easements, encroachments, rights of way, restrictive covenants on real property, real property licenses, leases or conditional sale arrangements, debts, liabilities and obligations, whether accrued or fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured, determined or undeterminable, known or unknown, including those arising under any law or action and those arising under any contract or otherwise, including any tax liability, and including any rights, claims or causes of action based on any theories of transferee or successor liability (other than Permitted Liens and Assumed Liabilities, each as defined in the Purchase Agreement) (collectively, the "Liens, Claims and Interests"). Liens, Claims and Interests shall also include but are not limited to: (a) those that purport to give to any party a right terminate the Debtors' or the Purchaser's interest in the Acquired Assets, or any similar rights; (b) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the

13

Acquired Assets prior to the Closing (or, with respect to any Assumed Lease subsequently

designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such

Assumed Lease); and (c) all debts arising in any way in connection with any agreements, acts, or

failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as

that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties,

options, rights, contractual or other commitments, restrictions, interests and matters of any kind

and nature, whether known or unknown, contingent or otherwise, whether arising prior to or

subsequent to the commencement of these Chapter 11 Cases, and whether imposed by

agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise

arising under doctrines of successor liability. All Liens, Claims and Interests released,

terminated and discharged as to the Acquired Assets shall attach to the sale proceeds with the

same validity, force and effect that they now have as against the Debtors, the estates or the

Acquired Assets, subject to any claims and defenses the Debtors may possess with respect

thereto; provided, however, that notwithstanding any of the foregoing to the contrary, no Liens,

Claims or Interests shall attach to the Transition Account or the proceeds thereof or the Wind-

Down Account or the proceeds thereof (except as otherwise provided in paragraph 36 below).

The sole and exclusive right and remedy available to purported creditors, equity holders,

including, without limitation, equity holders of the Debtors, holders of any other Liens, Claims

and Interests, and parties in interest shall be a right to assert Liens, Claims and Interests against

the Debtors' estates and, to the extent permitted by paragraph 36 below, the proceeds of the

Wind-Down Account after payment of the Wind-Down Expenses.

       11.     Upon receipt of the Purchase Price, the Debtors are authorized and

directed to pay in cash from the sale proceeds received by the Debtors the claims of the DIP

Agent, on behalf of the DIP Lenders, and the claims of the Prepetition Agent, on behalf of the

Prepetition Lenders, in the same order of priority as existed prior to the Closing, with any

remaining unused portion of the Purchase Price to be retained by the Debtors; provided,

however, the Debtors shall be permitted to retain any proceeds held in the Transition Account

and the Wind-Down Account disbursed to the Debtors in accordance with the Agreement, the

Transition Services Agreement and any applicable escrow agreement.  Notwithstanding anything

to the contrary contained herein or in any of such releases or other documents, the obligations

and liabilities of the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agent and the

Prepetition Lenders under or in respect of the DIP Facility Documents or Prepetition Loan

Documents, respectively, insofar as such obligations and liabilities survive termination of the

DIP Facility Documents or Prepetition Loan Documents in accordance with this Order, shall

continue in full force and effect in accordance with their terms; and provided further that,

pursuant to and in accordance with the Order Authorizing Debtor's Application Pursuant To

Section 327(a) And 328(a) Of The Bankruptcy Code To Retain And Employ William Blair &

Company, LLC As Investment Bankers For The Debtors Nunc Pro Tunc To The Petition Date

[D.I. ___], the Debtors are authorized and directed to pay to William Blair & Company, LLC

("**Blair**") from the proceeds of the sale, and as part of the "Carve-Out" as set forth and defined in

the Final Order (I) Authorizing Debtors To Obtain Postpetition Financing Pursuant To Section

364 Of The Bankruptcy Code, (II) Authorizing The Use Of Cash Collateral Pursuant To Section

363 Of The Bankruptcy Code, (III) Granting Adequate Protection To The Prepetition Lenders

Pursuant To Sections 361, 362, 363 and 364 Of The Bankruptcy Code, And (IV) Granting Liens

And Superpriority Claims [D.I. ___], the M&A Fee (as defined in the Blair Engagement Letter)

in the amount of $_____ upon entry of this Order on the docket.  For the avoidance of

doubt, Blair is not relieved from seeking final approval of its fees pursuant to a final fee application. The DIP Agent, on behalf of the DIP Lenders, and the Prepetition Agent, on behalf of the Prepetition Lenders, shall retain their respective liens and super priority claims, as applicable, with respect to (a) the Excluded Assets (as defined in the Agreement), (b) to the extent permitted by paragraph 36 below, the proceeds of the Wind-Down Account after payment in full of the Wind-Down Expenses and (c) any fund which may be established per agreement between the Debtors, the DIP Agent, on behalf of the DIP Lenders, and/or the Prepetition Agent, on behalf of the Prepetition Lenders, as security for the indemnification obligations of the Debtors as set forth in the Prepetition Loan Documents, the DIP Financing Documents, or the DIP Order, as applicable.

12. Except as set forth in the Agreement, all persons and entities, including, but not limited to, the Debtors, all debt security holders, all equity security holders, the Creditors' Committee, governmental, tax, and regulatory authorities, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, parties to executory contracts, customers, lenders, trade and other creditors and their respective successors or assigns and any trustees thereof holding Liens, Claims and Interests of any kind or nature whatsoever against or in the Debtors or the Acquired Assets conveyed as of the date hereof, or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease, (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Acquired Assets to the Purchaser,

YCST01:9900422.1

069504.1001

hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors, designees or assigns, its property, or the Acquired Assets conveyed in accordance with the Agreement, such persons' or entities' Liens, Claims and Interests.

13.     The transfer of the Acquired Assets to the Purchaser pursuant to the Agreement shall constitute a legal, valid, and effective transfer of such Acquired Assets on the Closing Date (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease), and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever.  As of the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease), the Purchaser shall have any and all rights, claims, defenses and offsets held by Debtors and the estates with respect to Assumed Liabilities.

14.     Except for Permitted Liens and Assumed Liabilities as set forth in the Agreement, the transfer of the Acquired Assets pursuant to this Order shall not subject the Purchaser to any liability with respect to any obligations incurred in connection with or in any way related to the Acquired Assets prior to the date of Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease) or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability.

**Assumption and Assignment of**
**Non-Lease Contracts and Leases**

15.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject
to and conditioned upon the Closing, the Debtors' assumption and assignment to the Purchaser,
and the Purchaser's assumption on the terms set forth in the Agreement, of the Assumed
Contracts are hereby approved, and the requirements of section 365(b)(l) of the Bankruptcy Code
with respect thereto are hereby deemed satisfied.

16.     On or before the Initial Designation Deadline, the Purchaser shall have the
right pursuant to the Agreement to (a) designate any Non-Lease Contract or Lease that is not an
Identified Assumed Contract as an Assumed Contract by amending the Assumed Contract List
and (b) designate any Identified Assumed Contract that is not to be an Assumed Contract by
amending the Assumed Contract List to remove such Assumed Contract.

17.     Unless otherwise agreed to by the Purchaser and the Debtors in writing,
the Subsequent Designation Deadline shall be December 17, 2010.  On or before the Subsequent
Designation Deadline, the Purchaser shall have the right pursuant to the Agreement to designate
any Lease that is not already an Identified Assumed Contract as an Assumed Contract by
amending the Assumed Contract List.

18.     The Debtors are hereby authorized in accordance with sections 105(a) and
365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon and
subject to the occurrence of the Closing (or, with respect to any Assumed Lease subsequently
designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such
Assumed Lease), the Assumed Contracts listed on the Assumed Contracts List free and clear of
all Liens, Claims and Interests of any kind or nature whatsoever, which Assumed Contracts by
operation of this Order, shall be deemed assumed and assigned effective as of the Closing (or,

with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the

Agreement, at the time of the transfer of such Assumed Lease), and (b) execute and deliver to the

Purchaser such documents or other instruments as may be necessary to assign and transfer such

Assumed Contracts and Assumed Liabilities to the Purchaser.

19.     Subject to paragraph 20 hereof, the Assumed Contracts shall be

transferred and assigned to, and following the Closing of the Sale (or, with respect to any

Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement,

following the transfer of such Assumed Lease) remain in full force and effect for the benefit of,

the Purchaser in accordance with their respective terms, notwithstanding any provision in any

such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the

Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and,

pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any

further liability with respect to the Assumed Contracts after such transfer and assignment to the

Purchaser.  The Debtors may assume the Assumed Contracts in accordance with section 365 of

the Bankruptcy Code.  Subject to paragraph 20, the Debtors may assign each Assumed Contract

in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any

Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow

the non-debtor party to such Assumed Contract to terminate, recapture, impose any penalty,

condition renewal or extension, or modify any term or condition upon the assignment of such

Assumed Contract, shall constitute unenforceable anti-assignment provisions that are void and of

no force and effect.  All other requirements and conditions under sections 363 and 365 of the

Bankruptcy Code for the assumption and assignment by the Debtors to the Purchaser of each

Assumed Contract have been satisfied.  Upon Closing (or, with respect to any Assumed Lease

YCST01:9900422.1                                                                                                    069504.1001

subsequently designated pursuant to Section 2(i)(vi) of the Agreement, upon the transfer of such Assumed Lease), in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract. Any portion of any Assumed Contract that purports to permit a landlord thereunder to cancel the remaining term of such Assumed Contract if the Debtors discontinue their use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against the Purchaser, its assignees and sublessees; and the landlords under any such Assumed Contract shall not have the right to cancel or otherwise modify the Assumed Contract or increase the rent, assert any claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Assumed Contract to the Purchaser, or the interruption of business activities at any of the leased premises.

20. The Debtors have served, on all of the non-debtor counterparties to Assumed Contracts listed on the Assumed Contract List as of the Initial Designation Deadline, a Contract Notice that included, to the extent applicable (a) the Assumed Contract, (b) the name of the counterparty to such Assumed Contract, (c) the Cure Amount for such Assumed Contract, (d) the identity of the assignee for such Assumed Contract, and (e) the deadline by which any such Assumed Contract counterparty must file a Contract Objection to the proposed assumption and assignment, and no other or further notice is required with respect to the Assumed Contracts listed on the Assumed Contract List as of the Initial Designation Deadline. For all non-debtor counterparties to an Assumed Contract served a Contract Notice in accordance with this paragraph 20, ten or more days prior to the Sale Hearing, to which no Contract Objection was timely filed, such Assumed Contract is hereby deemed assumed and assigned in accordance with the Contract Notice. For all non-debtor counterparties to an Assumed Contract served with a

20

Contract Notice less than ten days prior to the Sale Hearing, if a timely filed Contract Objection is not received, the counterparty to such Assumed Contract shall be deemed to have consented to such assumption and assignment and Cure Amount, and the assignment will be deemed effective as of the date hereof. If any counterparty timely files a Contract Objection that cannot be resolved by the Purchaser and the counterparty, the Court shall resolve such Contract Objection prior to assumption and assignment of such designated contract, and upon entry of an order by the Court resolving such Contract Objection, the assignment shall be deemed effective as of the date set forth in the Contract Notice.

21.     Within five business days after the designation of a lease as a Assumed Lease pursuant to Section 2(i)(vi) of the Agreement, the Debtors shall serve, on the counterparty to such Assumed Lease, a Contract Notice that includes, to the extent applicable (a) the Assumed Lease, (b) the name of the counterparty to such Assumed Lease, (c) the Cure Amount for such Assumed Lease, (d) the identity of the assignee for such Assumed Lease, and (e) the deadline by which any such Assumed Lease counterparty must file a Contract Objection to the proposed assumption and assignment (including any objection to the Cure amount for such Lease or to adequate assurance of future performance thereunder), which deadline shall not be less than ten days following the service of the Contract Notice, and no other or further notice is required. If a timely filed Contract Objection is not received, the counterparty to such Assumed Lease shall be deemed to have consented to such assumption and assignment and Cure Amount, and the assignment will be deemed to be effective on such date. If any counterparty timely files a Contract Objection that cannot be resolved by the Purchaser and the counterparty, the Court shall resolve such Contract Objection prior to the assumption and assignment of such designated contract, and upon entry of an order by the Court resolving such Contract Objection, the

YCST01:9900422.1                                                                  069504.1001

assumption and assignment of such designated contract shall be deemed effective as of the date set forth in the Contract Notice.

22.     All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing, or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, prior to the transfer of such Assumed Lease, (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) as to which no objections were interposed, are deemed satisfied by the Cure Amounts with respect to each Assumed Contract in those amounts set forth in the Contract Notice, which was served in accordance with the Bidding Procedures Order, and which were satisfied, or shall be satisfied as soon as practicable, by the Purchaser.

23.     With the exception of the Cure Amounts set forth in the Contract Notices, or as otherwise reflected in this Order, each non-Debtor party to an Assumed Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors, any Purchaser, or the property of any of them, any default existing as of the date of the Sale Hearing; or, against any Purchaser, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors. Except as provided in the Agreement or this Order, after the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, after the transfer of such Assumed Lease), the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the

069504.1001

Debtors as a result of the assumption, assignment and/or transfer of any Assumed Contract. The Purchaser's promise pursuant to the terms of the Agreement to pay the Cure Amounts and to perform the obligations under the Assumed Contract after the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, after the transfer of such Assumed Lease) shall constitute adequate assurance of its future performance under the Assumed Contracts being assigned to it within the meanings of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

24. Notwithstanding anything to the contrary in this Order, no executory contract or unexpired lease will be assumed and assigned pursuant to this Order until the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, until the transfer of such Assumed Lease).

25. The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

26. All executory Contracts (but not unexpired Leases) to which any Debtor is a party and which are not Assumed Contracts or Non-Lease Contracts pursuant to which the Sellers are providing services to the Purchaser pursuant to the Transition Services Agreement (the "Rejected Contracts") are hereby rejected as of the Closing Date, without other or further notice (other than as set forth in paragraph 27 of this Order) or further order of this Court. The Debtors do not waive any claims they may have against any landlord or counterparty to the Rejected Contracts, whether or not such claims arise under, are related to the rejection of, or are independent of the Rejected Contracts.

23

27. The Debtors have served a notice of rejection (the "<u>Rejection Notice</u>") on all counterparties to the Rejected Contracts, setting forth that each counterparty to a Rejected Contract shall be required to file a rejection damages claim, if any, relating to the rejection of such Rejected Contracts by the later of (a) the claims bar date established in the Debtors' Chapter 11 Cases or (b) 30 days after the effective date of rejection of such Rejected Contract.

28. Unless authorized in writing by the Purchaser or permitted under the terms of the Transition Services Agreement, the Debtors shall not reject any unexpired Lease prior to the occurrence of the Subsequent Designation Deadline. In the event that the Transition Services Agreement permits, or the Purchaser authorizes the Debtors, in writing, to reject any unexpired Lease prior to the occurrence of the Subsequent Designation Deadline, the Debtors shall serve a Rejection Notice on the counterparty to such Lease, and such Lease shall be deemed rejected by the Debtors as of the date of such Rejection Notice without other or further notice or order of this Court. Any unexpired Lease not previously assumed or rejected by the Debtors, and not designated as an Assumed Lease pursuant to Section 2(i)(vi) of the Agreement, shall be deemed rejected by the Debtors as of the Subsequent Designation Deadline. Within five business days after the Subsequent Designation Deadline, the Debtors shall file with the Court and serve on the counterparties to unexpired Leases rejected as of the Subsequent Designation Deadline pursuant to this paragraph, a Rejection Notice, and no other or further notice is required.

**Additional Provisions**

29. The consideration provided by the Purchaser for the Acquired Assets under the Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

YCST01:9900422.1 069504.1001

30.    The consideration provided by the Purchaser for the Acquired Assets under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

31.    The transaction contemplated by the Agreement is undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser, including the assignment to the Purchaser of the Assumed Contracts.  The Purchaser is a purchaser in good faith of the Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

32.    On the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens, Claims and Interests in the Acquired Assets, if any, as such Liens, Claims and Interests may have been recorded or may otherwise exist.

33.    This Order (a) shall be effective as a determination that, upon the Closing, all Liens, Claims and Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets. For the avoidance of doubt, all Liens, Claims and Interests with respect to (i) the Excluded Assets and (ii) to the extent permitted by paragraph 36, below, the proceeds of the Wind-Down Account after payment of the Wind-Down Expenses, shall continue with the same validity, force, effect and priority as they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

34. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens, Claims and Interests in the Acquired Assets conveyed pursuant to the Agreement shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims and Interests which the person or entity has with respect to such Acquired Assets or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Acquired Assets and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and Interests in the such Acquired Assets of any kind or nature whatsoever.

35. The Purchaser shall be entitled to avail itself of any and all Seller Services to be provided under the Transition Services Agreement, including, but not limited to occupying Leased Real Property that is subject to a Lease that has not been assumed by Purchaser as of the Closing Date, free of any interference from any entity or person, subject to Purchaser's compliance with this Order and the Transition Services Agreement. All expenses related to such

services will be paid in accordance with the terms and conditions of the Transition Services Agreement. Debtors and Purchaser shall be authorized to continue to take any and all actions as may be necessary or desirable to implement the Transition Services Agreement and each of the transactions contemplated thereby. Other than actions permitted by an Order of this Court, all utility providers, landlords, creditors and all persons acting for or on their behalf shall not interfere with or otherwise impede the operations, institute any action in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or otherwise impedes the operations contemplated under the Transition Services Agreement.

36.     The amounts deposited into the Transition Account and the Wind-Down Account (each as defined in the Transition Services Agreement) shall not be, and shall not be deemed to be, property of the Debtors' estates. The Debtors shall be entitled to periodically direct that funds from the Wind-Down Account be used to pay budgeted Wind-Down Expenses (as defined in the Transition Services Agreement), including to direct that funds be delivered from the Wind-Down Account to Professionals to pay fees and expenses of Professionals incurred prior to the later of (a) the termination of the Transition Services Agreement and (b) the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or the effective date of a plan of reorganization or liquidation in the Chapter 11 Cases, and to periodically direct that funds from the Transition Account be delivered to employees and creditors to pay other Liabilities incurred prior to the termination of the Transition Services Agreement, in each case as contemplated by the Transition Services Agreement, and in each case whether paid prior to or after the termination of the Transition Services Agreement, the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or the

YCST01:9900422.1                    069504.1001

effective date of a plan of reorganization or liquidation in the Chapter 11 Cases. The respective escrow agents for the Wind-Down Account and the Transition Account shall disburse the funds in the Wind-Down Account and the Transition Account, respectively, for the above-described purposes at the direction of the Debtors. None of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders shall have any Lien, Claim or Interest in the Transition Account or the proceeds thereof or in the Wind-Down Account; provided, however, that notwithstanding the foregoing, unless and until the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders are paid in full in cash, the Liens, Claims and Interest of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders on the proceeds of the Wind-Down Account (but not on the Wind-Down Account itself), if any, remaining after payment of the Wind-Down Expenses shall continue in the same order of priority existing prior to the Closing.

37. The Purchaser shall indemnify and hold harmless each Seller Service Provider (as defined in the Transition Services Agreement), their affiliates and each of their respective representatives in accordance with the terms and conditions of the Transition Services Agreement.

38. The Purchaser shall have no obligation to pay or provide wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment to current or former employees of the Debtors and their eligible dependents and beneficiaries, except as set forth in the Agreement or the Transition Services Agreement. Furthermore, (a) the Purchaser shall have no obligation or liability, as a successor or otherwise, with respect to any collective bargaining agreement or any multiemployer pension welfare, retention, employee benefit and/or

incentive plan or agreement to which any Debtors are a party (including, without limitation, arising from or related to the rejection or other termination of any such plan or agreement), (b) the Purchaser shall in no way be deemed a party to or assignee of any such plan or agreement, (c) no employee of the Purchaser shall be deemed in any way covered by or a party to any such plan or agreement, and (d) all parties to any such agreement are hereby enjoined from asserting against the Purchaser any and all claims arising from or relating to such plan or agreement.

39.     Any amounts that become payable by the Debtors to the Purchaser pursuant to the Agreement (and related agreements executed in connection therewith) (a) shall constitute administrative expenses of the Debtors' estates under sections 503(b) and/or 507(a)(2) of the Bankruptcy Code, and (b) shall be paid by the Debtors in the time and manner provided for in the Agreement (and such related agreements) without further Court order.

40.     All non-Debtor entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing.

41.     Neither the Purchaser nor its affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to: (a) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Agreement), including a "successor employer" for the purposes of the Internal Revenue Code of 1986 or the Employee Retirement Income Security Act of 1974 or other applicable laws; (b) have, *de facto* or otherwise, merged with or into any of the Debtors; (c) be a mere continuation of the Debtors or their estates (and there is no continuity of enterprise between the Purchaser and the Debtors); or (d) be holding itself out to the public as a continuation of the Debtors.  Except for the Assumed Liabilities, the Purchaser shall have no

YCST01:9900422.1                                                                                                            069504.1001

liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Acquired Assets or otherwise. Without limiting the generality of the foregoing, and except for the Assumed Liabilities, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Purchaser, and each of their Affiliates shall have no successor or vicarious liabilities of any kind or character including but not limited to any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing.

42. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any Permit with respect to the Acquired Assets transferred to the Purchaser by the Debtors, and all such Permits are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

43. Following the Closing, no holder of a Lien, Claim or Interest in the Debtors or the Acquired Assets shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Lien, Claim or Interest, or any actions that the Debtors may take in their Chapter 11 Cases.

44. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith (including, but not limited to, the Transition Services Agreement) in all respects, including, but not limited to,

retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Excluded Liabilities or any Liens, Claims and Interests in the Debtors or the Acquired Assets, of any kind or nature whatsoever.

45.     Notwithstanding Bankruptcy Rule 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self executing. In the absence of any entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time.

46.     The terms and provisions of the Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Liens, Claims and Interests in the Acquired Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

47.     The provisions of this Order are non-severable and mutually dependent without the written consent of the Purchaser and the Debtors.

48.     To the extent of any conflict between the Agreement or the Transition Services Agreement and this Order, the terms and provisions of this Order shall govern.

49.     The failure specifically to include any particular provisions of the

Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being

the intent of the Court that the Agreement be authorized and approved in its entirety.

Dated: Wilmington, Delaware
        August ___, 2010


_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

YCST01:9900422.1                                              069504.1001