# Exhibit D

# Bidding Procedures

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEC HOLDINGS CORP., *et al.*,[1] | Case No. 10-11890 (PJW) |
| Debtors. | Jointly Administered |

## BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS

(the "**Bidding Procedures**")[2]

These Bidding Procedures have been approved by order of the United States Bankruptcy Court for Delaware (the "**Court**") in connection with the above-captioned jointly administered cases of NEC Holdings Corp. and its subsidiaries (collectively, the "**Debtors**" or the "**Company**"), dated as of [_____], 2010 [Docket No. ___] (the "**Bidding Procedures Order**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: NEC Holdings Corp., a Delaware corporation (6395); National Envelope Corporation, a New York corporation (5935); National Envelope – WH LLC, a New York limited liability company (9721); National Envelope – AECO LLC, a Delaware limited liability company (9071); National Envelope – Chino LLC, a California limited liability company (9266); National Envelope – City of Industry, LLC, a California limited liability company (9710); National Envelope – Ennis LLC, a Delaware limited liability company (3868); National Envelope – Corsicana LLC, a Texas limited liability corporation (9716); National Envelope – Grand Prairie LLC, a Texas limited liability company (9258); National Envelope – Aurora LLC, a Colorado limited liability company (9712); National Envelope – Lenexa LLC, a Kansas limited liability company (9256); National Envelope – Appleton LLC, a Wisconsin limited liability company (9719); National Envelope – Elk Grove Village LLC, an Illinois limited liability company (9262); National Envelope – Scottdale LLC, a Pennsylvania limited liability company (9711); National Envelope Corporation – East, a New Jersey Corporation (6888); National Envelope – Specialties Group LLC, a Delaware limited liability company (9156); National Envelope – Houston LLC, a Texas limited liability company (9210); National Envelope – Shelbyville Equity LLC, a Delaware limited liability company (9255); National Envelope – Exton Equity LLC, a Delaware limited liability company (9354); National Envelope – Nashville Equity LLC, a Delaware limited liability company (9410); National Envelope – Houston Equity LLC, a Delaware limited liability company (9488); National Envelope – Leasing LLC, a Delaware limited liability company (9542); New York Envelope Corporation, a New York corporation (3186); National Envelope Corporation – North, a Massachusetts corporation (1548); National Envelope Corporation – South, a Georgia corporation (5404); National Envelope Corporation – Central, a Missouri corporation (8259); Old Colony Envelope Corporation, a Massachusetts corporation (4416); and Aristocrat Envelope Corporation, a New York corporation (9284). The mailing address for National Envelope Corporation is 333 Earle Ovington Boulevard, Suite 1035, Uniondale, NY 11553.

[2] [ALL DATES SET FORTH HEREIN ARE SUBJECT TO CONTINUED DISCUSSION.]

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct the sale (the "**Sale**") by auction (the "**Auction**") of all or substantially all of the assets of the Debtors (the "**Assets**," including, without limitation, that portion of the Assets defined as the "**Acquired Assets**" in the Asset Purchase Agreement dated as of July 8, 2010 (the "**Stalking Horse APA**"), by and among the Debtors and NEV Holdings, LLC (the "**Stalking Horse Bidder**")) pursuant to the terms and conditions substantially in the form of the Stalking Horse APA. Please take notice that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse APA.

> Copies of the Bidding Procedures Order, Stalking Horse APA or other documents related thereto are available upon request to the Garden City Group, Inc. by calling (866) 405-2134, emailing NationalEnvelope@gardencitygroup.com or visiting www.NationalEnvelopeInfo.com.

**A.     Assets to Be Sold.**

These Bidding Procedures set forth the terms by which prospective bidders may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for any or all of the Assets.

**B.     Stalking Horse Bidder**

On July 8, 2010, the Debtors and the Stalking Horse Bidder entered into the Stalking Horse APA for the sale of the Acquired Assets pursuant to which, among other things: (i) the Stalking Horse Bidder agreed to pay One Hundred Thirty Four Million Five Hundred Thousand Dollars ($134,500,000) in cash (the "**Cash Purchase Price**") and to assume the Assumed Liabilities (together with the Cash Purchase Price, the "**Stalking Horse Bid**") for the Acquired Assets, subject to the outcome of the Auction and Court approval; and (ii) the Debtors agreed, in the event that the Court approves, and the Debtors consummate, the purchase of substantially all of the Acquired Assets by any Person or combination of Persons other than the Stalking Horse Bidder (a "**Competing Transaction**") to (a) pay the Stalking Horse Bidder a break-up fee in the amount of Two Million Six Hundred Fifty Thousand Dollars ($2,650,000) (the "**Break-Up Fee**") from the proceeds of the Competing Transaction and (b) reimburse the Stalking Horse Bidder's reasonable out-of-pocket expenses up to an aggregate amount equal to Two Million Dollars ($2,000,000) (the "**Reimbursable Expenses**").

**C.     Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a Person (other than the Stalking Horse Bidder) interested in purchasing any of the Assets (a "**Potential Bidder**") must, on or before July 30, 2010 deliver (unless previously delivered) to each of (i) National Envelope Corporation, at 333 Earle Ovington Boulevard, Suite 1035, Uniondale, NY 11553 (Attn: Dale Nissenbaum, General Counsel); (ii) Latham & Watkins LLP, 233 South Wacker Drive, Chicago, IL 60606 (Attn: Josef S. Athanas and Stephen R. Tetro II) and Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Michael R. Nestor and Kara Hammond Coyle), proposed co-counsel to the Debtors; (iii) William Blair & Company, LLC, 222 West Adams Street, Chicago, Illinois 60606 (Attn: Geoffrey A. Richards); and (iv) Paul Hastings, Janofsky & Walker LLP, 600

Peachtree Street, N.E., Twenty-Fourth Floor, Atlanta, GA 30308 (Attn: Jesse H. Austin, III) and Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, DE 19801 (Attn: Kurt F. Gwynne), co-counsel to the administrative agent for the lenders under the Debtors' prepetition credit agreement and debtor-in-possession credit agreement; each of the following documents (the "**Preliminary Bid Documents**"):

    a. an executed confidentiality agreement (the "**Confidentiality Agreement**") reasonably acceptable to the Company and containing terms in the aggregate no less favorable to the Company in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder, the Company and certain of their respective affiliates;

    b. a non-binding indication of interest with respect to the purchase of any or all of the Assets (identifying the Assets to be purchased, purchase price (clearly indicating total cash consideration to be provided to the Debtors at closing) and material terms of such purchase;

    c. unless waived by the Debtors in their discretion, preliminary written proof by the Potential Bidder of its financial capacity to close the proposed transaction, including, but not limited to, its ability to satisfy the standards to provide adequate assurance of future performance of any contracts and leases to be assumed and assigned under section 365 of the Bankruptcy Code, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and their advisors will determine, after consultation with the advisors for the Consulting Parties (as defined below).

Within two (2) Business Days after a Potential Bidder delivers the Preliminary Bid Documents, the Debtors, after consultation with the advisors for the Consulting Parties, shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents. The Debtors may work with Potential Bidders during the two (2) Business Day period to attempt to correct or cure any deficiencies in any Preliminary Bid Documents. Only those Potential Bidders whose Preliminary Bid Documents have been deemed acceptable by the end of such two (2) Business Day period (as it may be extended by the Debtors) (each, an "**Acceptable Bidder**") may conduct a due diligence review with respect to the Debtors or submit bids to purchase any or all of the Assets and assume all of the Assumed Liabilities. The Stalking Horse Bidder is deemed an Acceptable Bidder.

**D.    Obtaining Due Diligence Access.**

After receipt of an executed Confidentiality Agreement and notification of Acceptable Bidder status, the Debtors shall provide each Acceptable Bidder reasonable due diligence

information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder. To the extent the Debtors give any information to any Acceptable Bidder that they had not previously provided to the Stalking Horse Bidder, the Debtors shall make such information available to the Stalking Horse Bidder. The due diligence period will end on the Bid Deadline (as defined herein).

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors, the Assets, or the Sale to any person except an Acceptable Bidder or such other parties to the extent provided in the applicable Confidentiality Agreement.

The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however*, the Debtors may decline to provide such information to Acceptable Bidders who, the Debtors in their reasonable business judgment subsequently determine do not intend in good faith to, or have the capacity to, consummate the purchase of any or all of the Assets. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

<u>The Debtors designate William Blair & Company, LLC ("**William Blair**") to coordinate all reasonable requests for additional information and due diligence access. The contact information for William Blair is: William Blair & Company, LLC, 222 West Adams Street, Chicago, Illinois 60606, Tel. (312) 364-5436, Attn: Geoffrey A. Richards, grichards@williamblair.com.</u>

E. **Bid Requirements.**

To be entitled to participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder, or, subject to the limitations and requirements of paragraph G., below, the DIP Lender, Term A Lenders, Term B Lenders or their applicable designee or assignee if making a credit bid) must deliver to the Debtors and their advisors by the Bid Deadline an irrevocable offer that must:

- a. be in writing;

- b. at a minimum, alone or combined with other offers, exceed the aggregate sum of the following: (i) the Cash Purchase Price; (ii) the Assumed Liabilities; (iii) the Break-Up Fee; (iv) the maximum Reimbursable Expenses; and (v) the minimum bid increment of Three Hundred and Fifty Thousand Dollars ($350,000) (such aggregate sum, the "**Minimum Initial Bid Increment**") (all of which must be in cash, marketable securities that are freely tradable with readily ascertainable value, and/or the assumption of administrative expense liabilities of the Debtors) (the "**Overbid Amount**");

- c. constitute a good faith, bona fide offer to purchase any or all of the Assets;

d.     be accompanied by a clean and a duly executed copy of the Stalking Horse APA and the documents set forth as schedules and exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the Stalking Horse APA executed with the Stalking Horse Bidder, which may not be materially more burdensome to the Debtors or inconsistent with these Bidding Procedures;

e.     identify with particularity each and every condition to closing, including any regulatory conditions and a timeline for satisfying such conditions;

f.     identify with particularity the executory contracts and unexpired leases for which assumption and assignment is required;

g.     not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, (iii) regulatory contingencies of any kind (other than a condition that any applicable waiting period under HSR (as defined below) shall have expired or been terminated), and/or (iii) the outcome or completion of a due diligence review by the Acceptable Bidder;

h.     remain irrevocable until forty-eight (48) hours after the conclusion of the Sale Hearing or such longer period of time as set forth below if the Acceptable Bidder is selected as the Back-Up Bidder (defined below);

i.     provide (i) a commitment to close within the later of (A) three (3) days after the entry of the Sale Order and (B) the expiration or termination of the applicable HSR waiting period; and (ii) a representation that the Acceptable Bidder will make all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended ("**HSR**") and pay the fees associated with such filings within two (2) Business Days following the entry of the Sale Order

j.     provide the Debtors with sufficient and adequate information to demonstrate, to the satisfaction of the Debtors, after consultation with the advisors for the Consulting Parties, that such Acceptable Bidder has the financial wherewithal and ability to consummate the proposed purchase with readily available funds and satisfy the standards to provide adequate assurance of future performance of any contracts and leases to be assumed and assigned under Section 365 of the Bankruptcy Code, including executed copies of any financing agreements, letters or commitments;

k.     fully disclose the identity of each entity that will be bidding for purchasing or obtaining possession of any or all of the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable

Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

l.  be accompanied by a cash deposit equal to Fifteen Million Four Hundred Fifty Thousand Dollars ($15,450,000), by wire transfer of immediately available funds to an account or accounts designated by the Debtors (the "**Good Faith Deposit**");

m.  state that the offering party or parties consents to the jurisdiction of the Court; and

n.  not request or entitle the Acceptable Bidder to any transaction or break-up fee, expense reimbursement, termination or similar type of fee or payment and shall include an acknowledgement and representation of the Acceptable Bidder that (i) the sale of the Assets is on an "as is" and "with all faults" basis and without representations, warranties or guarantees, express, implied or statutory, written or oral, of any kind, nature or description by the Debtors, their agents, their representatives or their estates, except as otherwise provided in a definitive purchase agreement with the Debtors; and (ii) it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the Stalking Horse APA.

Within two (2) Business Days after the Bid Deadline, the Debtors shall determine which bids are deemed to be "**Qualified Bids**" and which Acceptable Bidders are "**Qualified Bidders**" after consultation with their advisors and the advisors to the agent (the "**DIP Agent**") for the postpetition lenders (the "**DIP Lenders**"), the agent (the "**Prepetition Agent**," and, together with the DIP Agent the "**Agent**") for the Term A lenders (the "**Term A Lenders**"), and the revolving lenders (the "**Revolving Lenders,**" and, together with the DIP Lenders and the Term A Lenders, the "**Lenders**") and the official committee of unsecured creditors (the "**Creditors' Committee**" and, together with the Agent, the "**Consulting Parties**") and will notify the Acceptable Bidders and the Stalking Horse Bidder whether any bids submitted constitute Qualified Bids so as to enable Qualified Bidders to bid at the Auction. Any bid that is not deemed a "Qualified Bid" shall not be considered by the Debtors. The Stalking Horse Bidder is deemed to be a Qualified Bidder. The Stalking Horse APA submitted by the Stalking Horse Bidder and any additional bids timely submitted by the Stalking Horse Bidder (to the extent such bids are generally consistent with the terms of the Stalking Horse APA) are deemed Qualified Bids, qualifying the Stalking Horse Bidder to participate in the Auction.

F.  **Bid Deadline.**

To be entitled to be Qualified Bids, binding bids must be received by each of the Debtors, their advisors, and the advisors to each of the Consulting Parties, in each case so as to be actually received no later than 9:00 a.m. (prevailing Eastern Time) on August 16, 2010 (the "**Bid Deadline**").

G.  **Credit Bidding**

The DIP Lenders, Term A Lenders, Revolving Lenders and the Term B lenders under the Debtors' prepetition credit agreement (the "**Term B Lenders**"), or their applicable designee or assignee, may make a credit bid or joint credit bid for all of the collateral securing their claims to the full extent permitted by Section 363(k) of the Bankruptcy Code; provided, however, that the conditions set forth in this Paragraph G must be satisfied before the credit bid of a DIP Lender, Term A Lender, Revolving Lender or Term B Lender is deemed to be a Qualified Bid. To be a Qualified Bid, a credit bid must also comply with each of the requirements set forth in Paragraph E above (other than the requirement in E(b) that the bid be all in cash, marketable securities that are freely tradable with readily ascertainable value, and/or the assumption of administrative expense liabilities, and the requirement for a deposit in E(l)). In addition, to be a Qualified Bid, a credit bid must (i) include a cash amount as part of the purchase price for all Assets upon which such DIP Lenders, Term A Lenders, Revolving Lenders and Term B Lenders do not have a first priority security interest, (ii) provide for payment in cash at closing and/or the assumption of the administrative and priority expense claims against the Debtors accrued and unpaid through closing, and (iii) include a cash amount as part of the purchase price sufficient to pay the Break-Up Fee and Reimbursable Expenses. In the event a Consulting Party submits a credit bid for all of its collateral pursuant to these Bidding Procedures by the Bid Deadline or at any Auction, such parties shall waive any rights to consult with the Debtors and their advisors and shall not be entitled to be Consulting Parties unless and until such credit bid is irrevocably withdrawn.

H.  **Evaluation of Qualified Bids.**

The Debtors shall provide the Stalking Horse Bidder and all other Qualified Bidders who have submitted a Qualifed Bid (i) as promptly as practicable (and in no event later than 24 hours) after the expiration of the Bid Deadline, copies of all asset purchase agreements received by Debtors as part of any Qualified Bids (the "**Qualified APAs**") and (ii) as promptly as practicable (and in no event later than 48 hours) after the expiration of the Bid Deadline, copies of all agreements, schedules, exhibits and annexes related to the Qualified APAs, other than (a) agreements, schedules, exhibits and annexes which contain confidential or financial information of the Person submitting such Qualified APA and (b) financing letters delivered in connection with such Qualified APA.

Prior to the Auction, and after consultation with the advisors for the Consulting Parties, the Debtors and their advisors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, the highest or otherwise best bid (the "**Starting Bid**"). No later than one (1) business day prior to the date of the Auction, the Debtors shall notify the Stalking Horse Bidder as to which Qualified Bid is the Starting Bid. By no later than 5:00 p.m. (prevailing Eastern Time) on the business day prior to the Auction, the Debtors shall distribute copies of the

Starting Bid (other than portions that contain confidential or financial information of such bidder and other than financing letters delivered in connection with such Starting Bid) to each Qualified Bidder who has submitted a Qualified Bid (including the Stalking Horse Bidder).

**I.    No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse APA will be deemed the Successful Bid (as defined herein) and, subject to the termination rights under the Stalking Horse APA, the Debtors will immediately pursue entry of an order by the Court approving the Stalking Horse APA and authorizing the sale of the Acquired Assets and the transfer of the Assumed Liabilities to the Stalking Horse Bidder.

**J.    Auction.**

If one or more Qualified Bids are received by the Bid Deadline, then the Debtors shall conduct the Auction. The Auction shall commence on August 20, 2010 at the offices of Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022-4834 at 9:00 a.m. (prevailing Eastern Time), or such later time or other place as the Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders following consultation with its advisors and the advisors to the Consulting Parties.

The Auction will be conducted in accordance with the following procedures (the "**Auction Procedures**"):

    a.    only Qualified Bidders and their legal and financial advisors, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

    b.    the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

    c.    only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, their respective advisors, and the advisors to the Consulting Parties shall be permitted to attend the Auction;

    d.    bidding at the Auction shall begin at the Starting Bid;

    e.    subsequent bids at the Auction, including any bids by the Stalking Horse Bidder, shall be made in minimum increments of Three Hundred and Fifty Thousand Dollars ($350,000);

    f.    the Stalking Horse Bidder shall receive a credit equal to the sum of the Break-Up Fee and the Reimbursable Expenses in each round of bidding when bidding at the Auction;

    g.    each Qualified Bidder will be informed of the terms of the previous bids;

    h.    the bidding will be transcribed to ensure an accurate recording of the bidding at the Auction;

i. each Qualified Bidder will be required to confirm on the record of the Auction that it has not colluded with any other person with respect to the bidding or the Sale;

j. absent irregularities in the conduct of the Auction, the Court will not consider bids made after the Auction is closed; and

k. the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors, after consultation with their advisors as well as the advisors to the Consulting Parties, from time to time on the record at the Auction; *provided*, that any such other Auction Procedures shall not be inconsistent with any order of the Court in the Debtors' Chapter 11 Cases.

### K. Acceptance of the Successful Bid.

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, and after consulting with their advisors and the advisors to the Consulting Parties, shall identify the highest or otherwise best bid(s) (the "**Successful Bid**"). The Qualified Bidder(s) having submitted the Successful Bid will be deemed the "**Successful Bidder**." The Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Debtors will present the results of the Auction to the Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, (iii) the Successful Bid was a Qualified Bid, and (iv) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for all of the Assets and is in the best interests of the Debtors.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction and (ii) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Court of the Successful Bid and the entry of an Order approving such Successful Bid.

### L. Sale Hearing.

A hearing to consider approval of the Sale of all of the Assets and the transfer of all of the Assumed Liabilities to the Successful Bidder (or to approve the Stalking Horse APA if no Auction is held) (the "**Sale Hearing**") is presently scheduled to take place on August 23, 2010 at 10:00 a.m.(prevailing Eastern Time), or as soon thereafter as counsel may be heard, before the Honorable Peter J. Walsh, United States Bankruptcy Judge at 824 North Market Street, Wilmington, Delaware 19801.

The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.

At the Sale Hearing, the Debtors shall present the Successful Bid to the Court for approval.

**M.   Designation of Back-Up Bidder.**

Following the approval of the Sale of all or substantially all of the Assets to any Successful Bidder at the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale within the later of (i) five (5) days after the entry of the Sale Order or (ii) the expiration or termination of the applicable HSR waiting period, the Debtors shall be authorized, after consultation with the advisors to the Consulting Parties, but not required, to deem the next highest or otherwise best Qualified Bid (the "**Back-Up Bid**" and the party submitting the Back-Up Bid, the "**Back-Up Bidder**"), as disclosed at the Sale Hearing, the Successful Bid, and the Debtors, in consultation with the advisors to the Consulting Parties shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder submitting such bid without further order of the Court. The Back-Up Bid shall remain open until the first business day following the consummation of a Sale of the Assets to the Successful Bidder, subject to any right to terminate such bid in the applicable purchase agreement.

**N.   Break-Up Fee and Reimbursable Expenses.**

The Debtors shall pay to the Stalking Horse Bidder, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, all amounts due to the Stalking Horse Bidder, including the Break-Up Fee, to be paid from the proceeds of the Competing Transaction, and the Reimbursable Expenses, in each instance in accordance with the applicable provisions of the Stalking Horse APA. The Break-Up Fee and the Reimbursable Expenses were a material inducement for, and a condition of, the Stalking Horse Bidder entering into the Stalking Horse APA.

**O.   Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the purchase of all of the Assets, be credited to the purchase price paid for all of the Assets. If the Successful Bidder fails to consummate the purchase of all of the Assets, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors to the extent provided in the applicable asset purchase agreement.

The Good Faith Deposit of any unsuccessful Qualified Bidders (except for the Stalking Horse Bidder) will be returned within fifteen (15) days after consummation of the Sale or upon the permanent withdrawal of the proposed Sale of all of the Assets. The Good Faith Deposit of the Stalking Horse Bidder shall be returned or retained in accordance with the terms of the Stalking Horse APA.

**P.     Reservation of Rights.**

The Debtors reserve their rights, following consultation with their advisors and the advisors to the Consulting Parties, to modify these Bidding Procedures in any manner that is not inconsistent with the Stalking Horse APA or the Bidding Procedures Order and that will best promote the goals of the bidding process and to impose, at or prior to the Auction, additional customary terms and conditions on the Sale of all of the Assets and the transfer of all of the Assumed Liabilities, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in these Bidding Procedures, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, canceling the Auction, and rejecting any or all Qualified Bids if, in the Debtors' business judgment, following consultation with their advisors and the advisors to the Consulting Parties, the Debtors determine that such Qualified Bid is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or any related rules or the terms set forth herein, or (iii) contrary to the best interests of the Debtors. Notwithstanding the foregoing, the provisions of this paragraph shall not operate or be construed to permit the Debtors to (A) accept any Qualified Bid that (x) does not require a bid deposit of at least the amount of the Good Faith Deposit be placed in a protected, segregated account, which shall serve as protection and security for the Stalking Horse Bidder as outlined herein or (y) does not equal or exceed the Overbid Amount, or (B) impose any terms and conditions upon the Stalking Horse Bidder that are contradictory to or in breach of the terms of the Stalking Horse APA other than any such terms and conditions set forth in these Bidding Procedures or the Bidding Procedures Order.

The Debtors shall provide to the Stalking Horse the information and documents specified in the Stalking Horse APA relating to the Auction and other bids within the time period and on the terms and conditions set forth in the Stalking Horse APA and these Bidding Procedures.

**Q.     Miscellaneous**

In the event the Stalking Horse Bidder is not the Successful Bidder, the Stalking Horse Bidder shall have standing to object to the Sale of the Assets or any portion thereof (including the conduct of the Auction and interpretation of these Bidding Procedures) at the Sale Hearing.