# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEC HOLDINGS CORP., *et al.*,[1] | Case No. 10-11890 (PJW) |
| | Jointly Administered |
| Debtors. | Docket Ref. No. 159 |

## ORDER AUTHORIZING (I) SALE OF CERTAIN OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES

Upon the motion, dated July 9, 2010 [Docket No. 159] (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking, among other things, entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: NEC Holdings Corp., a Delaware corporation (6395); National Envelope Corporation, a New York corporation (5935); National Envelope – WH LLC, a New York limited liability company (9721); National Envelope – AECO LLC, a Delaware limited liability company (9071); National Envelope – Chino LLC, a California limited liability company (9266); National Envelope – City of Industry, LLC, a California limited liability company (9710); National Envelope – Ennis LLC, a Delaware limited liability company (3868); National Envelope – Corsicana LLC, a Texas limited liability corporation (9716); National Envelope – Grand Prairie LLC, a Texas limited liability company (9258); National Envelope – Aurora LLC, a Colorado limited liability company (9712); National Envelope – Lenexa LLC, a Kansas limited liability company (9256); National Envelope – Appleton LLC, a Wisconsin limited liability company (9719); National Envelope – Elk Grove Village LLC, an Illinois limited liability company (9262); National Envelope – Scottdale LLC, a Pennsylvania limited liability company (9711); National Envelope Corporation – East, a New Jersey Corporation (6888); National Envelope – Specialties Group LLC, a Delaware limited liability company (9156); National Envelope – Houston LLC, a Texas limited liability company (9210); National Envelope – Shelbyville Equity LLC, a Delaware limited liability company (9255); National Envelope – Exton Equity LLC, a Delaware limited liability company (9354); National Envelope – Nashville Equity LLC, a Delaware limited liability company (9410); National Envelope – Houston Equity LLC, a Delaware limited liability company (9488); National Envelope – Leasing LLC, a Delaware limited liability company (9542); New York Envelope Corporation, a New York corporation (3186); National Envelope Corporation – North, a Massachusetts corporation (1548); National Envelope Corporation – South, a Georgia corporation (5404); National Envelope Corporation – Central, a Missouri corporation (8259); Old Colony Envelope Corporation, a Massachusetts corporation (1748); and Aristocrat Envelope Corporation, a New York corporation (9284). The mailing address for National Envelope Corporation is 333 Earle Ovington Boulevard, Suite 1035, Uniondale, NY 11553.

Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to sell the Acquired Assets[2]; and the Court having entered an amended order (the "Bidding Procedures Order"), dated July 30, 2010 [Docket No. 302] approving and authorizing, among other things, the bidding procedures attached as Exhibit A thereto (the "Bidding Procedures") based upon the evidence presented at the hearing held on July 22, 2010 (the "Bidding Procedures Hearing"); and the Auction (as defined in the Bidding Procedures Order) having been held in accordance with the Bidding Procedures Order on August 20, 2010; and at the conclusion of the Auction, NEV Holdings, LLC (the "Purchaser") having been chosen as the Successful Bidder (as defined in the Bidding Procedures); and Envelope Operations, Inc. having been chosen by the Debtors to be the Back-up Bidder (as defined in the Bidding Procedures) (the "Back-up Bidder"); and the Court having conducted a hearing to consider the results of the Auction and the Debtors' request to enter into and consummate the transactions contemplated by that certain Agreement dated as of July 8, 2010, as amended by that certain first amendment dated as of July 21, 2010 and by that certain second amendment dated as of August 23, 2010 (the "Agreement")[3] by and between the Debtors and the Purchaser on August 23, 2010 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Agreement, a copy of which is attached hereto as Exhibit 1, and all transactions contemplated thereby (together, the "Sale"); and the Court having reviewed and considered the Agreement and the Motion, the arguments of counsel made, and the evidence adduced at the Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding Procedures Hearing and the Sale Hearing

---

[2]     The Acquired Assets shall not include the shredder identified by serial number 500-9457, which is located at the Debtors' Smyrna, Georgia facility.

[3]     A copy of the Agreement is attached hereto as Exhibit 1. Any term used but not defined herein shall have the meaning ascribed to such term in the Agreement.

and these Chapter 11 Cases, and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:[4]

A.        The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.        The Court has jurisdiction over this Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.        The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

D.        As evidenced by the affidavits of service and publication previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Auction, the Sale, and the assumption and assignment of the Assumed Contracts has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and in compliance with the Bidding Procedures Order to each party entitled thereto, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii)

---

[4]        Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Bankruptcy Rule 7052.

no other or further notice of the Motion, the Sale Hearing, the Auction, the Sale or the assumption and assignment of the Assumed Contracts is or shall be required.

E.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures Order and the Auction was duly noticed. The Auction process set forth in the Bidding Procedures Order and the Bidding Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Acquired Assets.

F.    The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

G.    Except as set forth in the Agreement, each of the Debtors (i) has full corporate or other power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale by the Debtors has been duly and validly authorized by all necessary corporate or other action, (ii) has all of the corporate or limited liability company power and authority necessary to consummate the transactions contemplated by the Agreement, and (iii) has taken all corporate, limited liability company or other action necessary to authorize and approve the Agreement and the consummation by the Debtors of the transactions contemplated thereby; and no consents or approvals, other than those expressly provided for in

- 4 -

the Agreement, are required for the Debtors to consummate the transactions contemplated by the Agreement.

H. Except as set forth in the Agreement, (i) the Debtors have good, valid and marketable title to all of the Acquired Assets, (ii) the Acquired Assets are to be transferred free and clear of any and all Liens, Claims and Interests (as defined below), which, for the avoidance of doubt, do not include Assumed Liabilities and (iii) all of the Acquired Assets are, or will on the date of Sale, be owned by the Debtors and will be transferred under the Agreement.

I. Approval of the Agreement and consummation of the Sale at this time are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

J. The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, the Agreement constitutes the highest or best offer for the Acquired Assets; the Agreement will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses; and absent the Sale the value of the Debtors' assets will be harmed.

K. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Committee"); (iii) counsel to the administrative agent for the lenders under the Debtors' prepetition credit agreement; (iv) counsel to the agents for the Debtors' postpetition secured lenders; (v) all taxing authorities having jurisdiction over any of the Acquired Assets, including

- 5 -

the Internal Revenue Service; (vi) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (vii) all Persons known or reasonably believed to have asserted a Lien, Claim and Interest on any of the Acquired Assets; (viii) the non-debtor parties to the Leases and Contracts; (ix) the Attorneys General in the State(s) where the Acquired Assets are located; (x) the United States Environmental Protection Agency; (xi) the New Jersey Department of Environmental Protection; (xii) any other applicable state environmental agency; (xiii) counsel to International Paper; and (xiv) the creditors listed on the Debtors' consolidated list of 30 largest unsecured creditors as of the Petition Date, as filed with the Debtors' petitions.

L. As evidenced by the affidavits of service filed with the Court and based upon the representations of counsel at the Sale Hearing and as approved under the Bidding Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Auction and the Sale Hearing has been provided to all parties in interest; (ii) such notice was and is good, sufficient and appropriate under the circumstances of the Debtors' Chapter 11 Cases and was provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006 and 9007 and the Local Rules; and (iii) no other or further notice of the Auction, the Sale Hearing or of the entry of this Sale Order is necessary or shall be required.

M. Upon conclusion of the Auction, the Purchaser submitted the highest and best offer for the Acquired Assets, as set forth in the Agreement, including the payment of the Purchase Price, as defined therein.

N. The Agreement was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither Debtors, nor the Purchaser, nor any Affiliate of the Purchaser has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the

- 6 -

Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person, and the aggregate price paid by the Purchaser for the Acquired Assets was not controlled by any agreement among any bidders. Cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d). The Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

        O.    The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Specifically, (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Purchaser complied with the provisions in the Bidding Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) the Purchaser in no way induced or caused the chapter 11 filings by the Debtors; and (v) the negotiation and execution of the Agreement was at arm's length and in good faith.

        P.    The Agreement contemplates that the Purchaser shall pay the following consideration for the Acquired Assets:

- $149.85 million in cash;

- Assume the Assumed Liabilities and pay the Cure Amounts in connection with the Assumed Contracts and Assumed Leases; and

- $37,686,928.74 ~~million dollars~~ in second lien debt payable to the Term B Lenders (as defined in the DIP Order), on the terms set forth in the term sheet attached hereto as Exhibit A to the Second Amendment To Asset Purchase Agreement, which second lien debt shall be fully guaranteed by Gores Capital Partners II, L.P. and Gores Co-Invest Partnership II, L.P. pursuant to a guaranty consistent with the terms set forth in Exhibit A to the Second Amendment To Asset Purchase Agreement attached hereto and all related documents, instruments and rights related thereto (collectively, the "Second Lien Term Loan Facility").

- 7 -

069504.1001

Q.     The consideration provided by Purchaser for the Acquired Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value, fair value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof, and the District of Columbia.

R.     The Sale must be approved and consummated promptly in order to preserve the value of the Debtors' assets.

S.     As of the Closing, pursuant and subject to the terms of the Agreement, the transfer of the Acquired Assets to the Purchaser will be a legal, valid, enforceable, and effective transfer of the Acquired Assets and will vest the Purchaser with all right, title, and interest of the Debtors in the Acquired Assets free and clear of all Liens, Claims and Interests with such Liens, Claims and Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as of the Closing.

T.     The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if each of (i) the sale of the Acquired Assets to the Purchaser, and (ii) the assignment of the Assumed Contracts and the Assumed Liabilities to the Purchaser were not free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (except Permitted Liens), or if the Purchaser would, or in the future could, be liable for any of the Excluded Liabilities. A sale of the Acquired Assets other than one free and clear of all Liens, Claims and Interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale

- 8 -

contemplated by the Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

U.     The Debtors may sell the Acquired Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever (except Permitted Liens) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens, Claims and Interests and (ii) non-debtor parties to Assumed Contracts who did not object timely, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Liens, Claims and Interests and (ii) non-debtor parties to Assumed Contracts who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims and Interests, if any, attach to the portion of the Purchase Price ultimately attributable to the property against or in which they claim an interest, in the order of their priority, with the same validity, force and effect which they now have as against such property, subject to any claims and defenses the Debtors may possess with respect thereto.

V.     Neither the Purchaser nor any of its Affiliates is a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity, and neither the Purchaser nor any of its Affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their bankruptcy estates, except as otherwise expressly provided in the Agreement.

W.     The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assumed

- 9 -

Contracts are in the best interests of the Debtors, their estates, and their creditors. The Assumed Contracts and Assumed Liabilities being assigned to the Purchaser, are an integral part of the Agreement and, accordingly, such assumption and assignment of Assumed Contracts and Assumed Liabilities are reasonable and enhance the value of the Debtors' estates.

X.     The Debtors have served a notice of assignment and cure costs (the "Contract Notice") on all non-debtor counterparties to Contracts. Such Contract Notice is adequate and sufficient notice of the proposed assumption and assignment of the Assumed Contracts identified on the Assumed Contracts List pursuant to the terms of the Agreement.

Y.     For all such counterparties to Assumed Contracts that were served with a Contract Notice at least 10 days prior to the Sale Hearing, the deadline to file an objection to the assumption and assignment to the Purchaser of any Assumed Contract (a "Contract Objection") has expired and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties. To the extent that any such party did not timely file a Contract Objection by the Contract Objection deadline, such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract, and (ii) the proposed cure amount (the "Cure Amount") set forth on the Contract Notice.

Z.     The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the Agreement did not provide that the Purchaser could (i) on or prior to the Initial Designation Deadline modify, pursuant to the terms of Section 2(i)(iii) of the Agreement, the Assumed Contract List to include or remove a Non-Lease Contract or a Lease, or (ii) on or prior to the Subsequent Designation Deadline modify, pursuant to the terms of Section

- 10 -

2(i)(vi) of the Agreement, the Assumed Contract List to include one or more additional Leases. The notice and opportunity to object provided in accordance with the Agreement and this Order to counterparties to subsequently designated Assumed Leases fairly and reasonably protects any rights that such counterparties may have with respect to any additions to the Assumed Contracts List.

AA.    The Debtors have, including by way of entering into the Agreement, and the provisions relating to the Assumed Contracts therein and the performance of the Purchaser thereunder, (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) Purchaser has provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Purchaser has provided adequate assurance of future performance of and under the Assumed Contracts, and the Debtors believe that the Purchaser has the wherewithal, financial and otherwise, to perform all of its obligations thereunder, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.

BB.    Without limiting the effect or scope of the foregoing, the transfer of the Acquired Assets and the Assumed Contracts from the Seller to the Purchaser does not and will not deem the Purchaser or its affiliates, to: (i) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Agreement), including but not limited to a "successor employer" for the purposes of the Internal Revenue Code of 1986, the Employee Retirement Income Security Act of 1974, or the National Labor Relations Act; (ii) have, de facto or otherwise, merged with or into any of the

- 11 -

Debtors; (iii) be a mere continuation of the Debtors or their estates (and there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Purchaser and the Debtors, and there is no continuity of enterprise between the Purchaser and the Debtors); or (iv) be holding itself out to the public as a continuation of the Debtors. Except for the Assumed Liabilities, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Acquired Assets or otherwise. Without limiting the generality of the foregoing, and except for the Assumed Liabilities, the Purchaser shall not be liable for, and shall be released and forever discharged from, any and all claims, causes of action, obligations, liabilities, demands, losses, costs or expenses of any kind, character or nature whatsoever against the Debtors or any of their predecessors or affiliates, and the Purchaser, and each of its Affiliates, shall have no successor, vicarious or other liabilities of any kind or character including but not limited to any theory of antitrust, environmental, successor or transferee liability, labor or employment law, bulk sales law (to the extent permitted under the Bankruptcy Code), de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing. Notwithstanding the foregoing, nothing herein shall be held to limit any bargaining obligations that may arise pursuant to the National Labor Relations Act, 29 U.S.C. § 151 *et seq*. (the "NLRA"), subsequent to the closing of the sale or other obligations arising under the NLRA consistent with the application of the United States bankruptcy laws.

CC. The consummation of the transactions contemplated by the Agreement is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b)(1) and 365(f)(2), and all of the applicable requirements of such sections have been or will be complied with in respect of the Agreement and such transactions as of the effective date of assignment.

DD. The sale and assignment of the Acquired Assets and the Assumed Contracts, and the issuance of the Second Lien Term Loan Facility to the Term B Lenders (as defined in the DIP Order), outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Agreement does not, and the transactions contemplated thereby do not, constitute a *sub rosa* chapter 11 plan.

EE. Time is of the essence. In order to maximize the value of the Debtors' assets, it is essential that the sale and assignment of the Acquired Assets and the Assumed Contracts occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rule 6004.

FF Approval of the Agreement and assumption and assignment of the Assumed Contracts and consummation of the Sale of the Acquired Assets at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest and represent an exercise of the Debtors' sound business judgment.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is granted, as further described herein.

- 13 -

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled on the merits and denied.

3.      Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014.

4.      The Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, are incorporated herein by reference.

## Approval of the Agreement

5.      The Agreement, and all of the terms and conditions thereof, is hereby approved.

6.      Pursuant to sections 363(b) and 365 of the Bankruptcy Code, the Debtors are and at the Closing will be authorized to perform their obligations under and comply with the terms of the Agreement, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Agreement.

7.      The Debtors are and at the Closing will be authorized to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, together with all additional instruments, documents, and agreements that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement, including effectuating amendments to the Agreement in furtherance thereof.

- 14 -

8.     This Order and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of any Debtor, all non-debtor parties to the Assumed Contracts, all successors and assigns of the Purchaser, the Debtors and their affiliates and subsidiaries, and any subsequent trustees appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code. Nothing contained in any chapter 11 plan confirmed in these bankruptcy cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Agreement or this Order.

9.     The Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

10.     The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

- 15 -

11.     The Purchaser shall have no obligation to proceed with the Closing until all conditions precedent in the Agreement to its obligation to do so have been met, satisfied, or waived in accordance with the terms of the Agreement.

## **Transfer of Assets**

12.     Pursuant to sections 105(a), 363(f) and 365 of the Bankruptcy Code, upon the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease), the Acquired Assets shall be transferred to the Purchaser in accordance with the Agreement and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and, except as set forth in the Agreement, shall vest the Purchaser with title to the Acquired Assets, free and clear of all liens, mortgages, pledges, options, security interests, charges, rights of first refusal, hypothecations, encumbrances on real property, easements, encroachments, rights of way, restrictive covenants on real property, real property licenses, leases or conditional sale arrangements, debts, liabilities and obligations, whether accrued or fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured, determined or undeterminable, known or unknown, including those arising under any law or action and those arising under any contract or otherwise, including any tax liability, and including any rights, claims or causes of action based on any theories of transferee or successor liability (other than Permitted Liens and Assumed Liabilities, each as defined in the Purchase Agreement) (collectively, the "Liens, Claims and Interests").  Liens, Claims and Interests shall also include but are not limited to: (a) those that purport to give to any party a right terminate the Debtors' or the Purchaser's interest in the Acquired Assets, or any similar rights; (b) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing (or, with respect to any Assumed Lease subsequently

- 16 -

designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such

Assumed Lease); and (c) all debts arising in any way in connection with any agreements, acts, or

failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as

that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties,

options, rights, contractual or other commitments, restrictions, interests and matters of any kind

and nature, whether known or unknown, contingent or otherwise, whether arising prior to or

subsequent to the commencement of these Chapter 11 Cases, and whether imposed by

agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise

arising under doctrines of successor liability. All Liens, Claims and Interests released,

terminated and discharged as to the Acquired Assets shall attach to the sale proceeds with the

same validity, force and effect that they now have as against the Debtors, the estates or the

Acquired Assets, subject to any claims and defenses the Debtors may possess with respect

thereto; provided, however, that notwithstanding any of the foregoing to the contrary, no Liens,

Claims or Interests shall attach to the Transition Account (as defined in the Transition Services

Agreement[5]) or the proceeds thereof (except as otherwise provided in paragraphs 45 through 47

below), the Wind-Down Account (as defined in the Transition Services Agreement) or the

proceeds thereof (except as otherwise provided in paragraphs 45 through 47 below), the

503(b)(9) Account (as defined below) or the proceeds thereof (except as otherwise provided in

paragraphs 45 through 47 below), the Professional Fee Account (as defined below) or the

proceeds thereof (except as otherwise provided in paragraphs 45 through 47 below), the Working

Capital Escrow Account (as defined in the Escrow Agreement attached as Exhibit C to the Asset

Purchase Agreement) or the proceeds thereof or the Avoidance Actions Proceeds Account (as

[handwritten margin note: specifically including all rights and interests under the Second Lien Term Loan Facility]

---

[5] A copy of the form of the Transition Services Agreement is attached hereto as Exhibit C to the ~~the~~ Exhibit A to the
Second Amendment To Asset Purchase Agreement.

069504.1001

defined below). The sole and exclusive right and remedy available to holders of any other Liens, Claims and Interests, and other parties in interest shall be a right to assert Liens, Claims and Interests against the Debtors' estates and, solely to the extent permitted by paragraphs 45 through 47 below, the proceeds of the Wind-Down Account, the proceeds of the Working Capital Escrow Account, the proceeds of the 503(b)(9) Account and the proceeds of the Professional Fee Account.

13. Upon receipt of the Purchase Price, on the Closing Date, the Debtors are authorized and directed to distribute the cash from the sale proceeds received by the Debtors in the following manner and in the following amounts:

- $9,020,000 shall be deposited into the Wind-Down Account;

- $15,000,000 shall be deposited into the Working Capital Escrow Account;

- $3,2**,000 shall be deposited into a segregated account of the Debtors to be used by the Debtors for payment of allowed claims against the Debtors under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Account");

- $3,600,000 shall be delivered to William Blair & Company, LLC;

- $4,000,000 shall be delivered to the Debtors free of Liens, Claims and Interests representing payments for the Avoidance Actions, to be held in a segregated bank account of the Debtors (the "Avoidance Actions Proceeds Account");

- $4,500,000 shall be deposited into a segregated account of the Debtors to pay fees and expenses of the professionals of the Debtors and the Committee (the "Professional Fee Account")

[handwritten: allowed]

[handwritten: other than any fees and expenses of William Blair & Company, LLC]

- $134,003.67 shall be paid to Johnson County, Kansas as payment in full of all 2010 personal property taxes of the Debtors owed to Johnson County, Kansas and the Board of County Commissioners of Johnson County, Kansas;

- $364,449.86 shall be paid to City of Ennis, Texas as payment in full of all 2010 personal property taxes of the Debtors owed to City of Ennis, Texas and Ennis ISD; and

- the remaining cash proceeds from the Sale paid by the Purchaser on the Closing Date shall be paid to the DIP Agent on behalf of the DIP Lenders, and shall be immediately applied toward the Postpetition Indebtedness (as defined in the DIP Order ~~(defined below)~~ *as provided for in the DIP Order (as defined below)* *payable to the DIP Lenders* ~~and~~ the Capital Transaction Fee (as defined in the DIP Order) payable to the DIP Lenders and to cash collateralize Existing Letters of Credit (as defined in the DIP Order). *any amounts remaining due and owing on account of the A Obligations (as defined in the Prepetition Credit Agreement), specifically including*

14. Upon the Debtors' receipt of any Tax refunds, rebates or credits (the "Tax Refunds"), the Debtors are hereby authorized to remit such amounts to the DIP Agent for application to the Postpetition Indebtedness until the Postpetition Indebtedness ~~has been~~ *and the A Obligations have* been paid in full *in cash* *or, as the case may be, the A Obligations*.

15. Notwithstanding anything to the contrary contained herein or in any of such releases or other documents, the obligations and liabilities of the Debtors to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders under or in respect of the DIP Facility Documents (as defined in the DIP Order) or Prepetition Loan Documents (as defined in the DIP Order), respectively, insofar as such obligations and liabilities have not been paid in full, survive termination of the DIP Facility Documents or Prepetition Loan Documents in accordance with this Order, and shall continue in full force and effect in accordance with their terms.

YCST01:10075468.2

069504.1001

16.     The DIP Agent, on behalf of the DIP Lenders, and the Prepetition Agent (as defined in the DIP Order) on behalf of the Revolving ~~Credit~~ Lenders (as defined in the DIP Order) and the Term A Lenders (as defined in the DIP Order), shall not seek or receive payment of the Postpetition Indebtedness or any amounts payable to the Revolving Credit Lenders or Term A Lenders under the Prepetition Credit Agreement from the Second Lien Term Loan Facility or the  proceeds thereof until after the application of the cash proceeds of the Sale to the Postpetition Indebtedness _and the A Obligations_ pursuant to paragraph 13 above and the application of the cash proceeds of the Tax Refunds to the Postpetition Indebtedness and the amounts payable to the Revolving Credit Lenders and Term A Lenders under the Prepetition Credit Agreement.

17.     Subject to the rights of the DIP Lenders under the Prepetition Credit Agreement and DIP Facility Documents (as defined in the DIP Order), as modified by paragraph 16 hereof, the Debtors hereby ~~assign~~ _deliver_ the Second Lien Term Loan Facility to the ~~Term B Lenders~~ (as defined in the DIP Order) and the Term B Lenders shall be obligees thereunder.  All liens, _(and their eligible assignees)_ claims and encumbrances of the Prepetition Agent on behalf of the Term B Lenders and of the Term B Lenders against the Debtors and the Debtors' assets (other than the Term B Lenders' claims for the unpaid portion of the $1,000,000 pursuant to paragraph 11(b) of the DIP Order) are deemed satisfied in full by such assignment.  The Term B Lenders are hereby deemed to have released _to_ all liens, claims and encumbrances against any and all property of the Debtors' estates other than the Second Lien Term Loan Facility and the proceeds thereof (other than the Term B Lenders' claims for the unpaid portion of the $1,000,000 pursuant to paragraph 11(b) of the DIP Order).  The Term B Lenders shall receive no recovery from the proceeds of the Sale or from assets of the Debtors' estates other than the Second Lien Term Loan Facility and the proceeds thereof and the unpaid portion of the $1,000,000 pursuant to paragraph 11(b) of the DIP Order.

_Prepetition Agent on behalf of the Revolving Lenders, the Term A Lenders and the Term B Lenders_

18.     Pursuant to and in accordance with the Order Authorizing Debtor's Application Pursuant To Section 327(a) And 328(a) Of The Bankruptcy Code To Retain And Employ William Blair & Company, LLC As Investment Bankers For The Debtors *Nunc Pro Tunc* To The Petition Date [D.I. 70], the Debtors are authorized and directed to pay to William Blair & Company, LLC ("Blair") from the proceeds of the sale, and as part of the "Carve-Out" as set forth and defined in the Final Order (I) Authorizing Debtors To Obtain Postpetition Financing Pursuant To Section 364 Of The Bankruptcy Code, (II) Authorizing The Use Of Cash Collateral Pursuant To Section 363 Of The Bankruptcy Code, (III) Granting Adequate Protection To The Prepetition Lenders Pursuant To Sections 361, 362, 363 and 364 Of The Bankruptcy Code, And (IV) Granting Liens And Superpriority Claims [D.I. 16] (the "DIP Order"), the M&A Fee (as defined in the Blair Engagement Letter (as defined in the DIP Order)) in the amount of $3,600,000 on the Closing Date.  Blair is not relieved from the requirement to file a fee application seeking final approval of its fees, this Order does not constitute final approval of the M&A Fee, and the amount paid hereunder to Blair shall be subject to disgorgement to the extent that the M&A Fee is disallowed by this Court.

19.     Except as set forth in the Agreement, all persons and entities, including, but not limited to, the Debtors, all debt security holders, all equity security holders, the Creditors' Committee, governmental, tax, and regulatory authorities, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, parties to executory contracts, customers, lenders, trade and other creditors and their respective successors or assigns and any trustees thereof holding Liens, Claims and Interests of any kind or nature whatsoever (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated)

- 21 -

against or in the Debtors or the Acquired Assets conveyed as of the date hereof, or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease, (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors, designees or assigns, its property, or the Acquired Assets conveyed in accordance with the Agreement, such persons' or entities' Liens, Claims and Interests.

20.     In addition, the Purchaser has not assumed and is not otherwise obligated for any of the Debtors' liabilities other than the Assumed Liabilities, the liabilities payable under the Transition Services Agreement, and as otherwise set forth in the Agreement and this Order, and the Purchaser has not acquired any of the Excluded Assets or the Excluded Liabilities (as defined in the Agreement). All persons holding or asserting any Liens, Claims and Interests on or in the Excluded Assets or the Excluded Liabilities are hereby enjoined from asserting or prosecuting such Liens, Claims and Interests, or any cause of action related thereto, against the Purchaser or the Acquired Assets for any liability associated with the Excluded Assets or the Excluded Liabilities.

21.     The transfer of the Acquired Assets to the Purchaser pursuant to the Agreement shall constitute a legal, valid, and effective transfer of such Acquired Assets on the Closing Date (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease), and shall

YCST01:10075468.2     069504.1001

vest the Purchaser with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever. As of the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease), the Purchaser shall have any and all rights, claims, defenses and offsets held by Debtors and the estates with respect to Assumed Liabilities.

22.     Except for Permitted Liens and Assumed Liabilities as set forth in the Agreement, the transfer of the Acquired Assets pursuant to this Order shall not subject the Purchaser to any liability with respect to any obligations incurred in connection with or in any way related to the Acquired Assets prior to the date of Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease) or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability.

### Assumption and Assignment of
### Non-Lease Contracts and Leases

23.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Agreement, of the Assumed Contracts are hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

24.     On or before the Initial Designation Deadline, the Purchaser shall have the right pursuant to the Agreement to (a) designate any Non-Lease Contract or Lease that is not an

- 23 -

Identified Assumed Contract as an Assumed Contract by amending the Assumed Contract List and (b) designate any Identified Assumed Contract that is not to be an Assumed Contract by amending the Assumed Contract List to remove such Assumed Contract.

25.     Unless otherwise agreed to by the Purchaser and the Debtors in writing, the Subsequent Designation Deadline shall be December 17, 2010. On or before the Subsequent Designation Deadline, the Purchaser shall have the right pursuant to the Agreement to designate any Lease that is not already an Identified Assumed Contract as an Assumed Contract by amending the Assumed Contract List.

26.     The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon and subject to the occurrence of the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease), the Assumed Contracts listed on the Assumed Contracts List free and clear of all Liens, Claims and Interests of any kind or nature whatsoever, which Assumed Contracts, by operation of this Order, shall be deemed assumed and assigned effective as of the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, at the time of the transfer of such Assumed Lease), and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer such Assumed Contracts and Assumed Liabilities to the Purchaser.

27.     Subject to paragraph 23 hereof, the Assumed Contracts shall be transferred and assigned to, and following the Closing of the Sale (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, following the transfer of such Assumed Lease) remain in full force and effect for the benefit of,

YCST01:10075468.2                                                        069504.1001

the Purchaser in accordance with their respective terms, notwithstanding any provision in any

such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the

Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and,

pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any

further liability with respect to the Assumed Contracts after such transfer and assignment to the

Purchaser. The Debtors may assume the Assumed Contracts in accordance with section 365 of

the Bankruptcy Code. Subject to paragraph 23, the Debtors may assign each Assumed Contract

in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any

Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow

the non-debtor party to such Assumed Contract to terminate, recapture, impose any penalty,

condition renewal or extension, or modify any term or condition upon the assignment of such

Assumed Contract, shall constitute unenforceable anti-assignment provisions that are void and of

no force and effect. All other requirements and conditions under sections 363 and 365 of the

Bankruptcy Code for the assumption and assignment by the Debtors to the Purchaser of each

Assumed Contract have been satisfied. Upon Closing (or, with respect to any Assumed Lease

subsequently designated pursuant to Section 2(i)(vi) of the Agreement, upon the transfer of such

Assumed Lease), in accordance with sections 363 and 365 of the Bankruptcy Code, the

Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed

Contract. Any portion of any Assumed Contract that purports to permit a landlord thereunder to

cancel the remaining term of such Assumed Contract if the Debtors discontinue their use or

operation of the leased premises is void and of no force and effect, and shall not be enforceable

against the Purchaser, its assignees and sublessees; and the landlords under any such Assumed

Contract shall not have the right to cancel or otherwise modify the Assumed Contract or increase

the rent, assert any claim or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Assumed Contract to the Purchaser, or the interruption of business activities at any of the leased premises.

28.     The Debtors have filed the Contract Notice, and as soon as practicable will serve the Contract Notice on all non-Debtor counterparties to the Assumed Contracts on the Assumed Contract List, that included, to the extent applicable: (a) the Assumed Contract, (b) the name of the counterparty to such Assumed Contract, (c) the Cure Amount for such Assumed Contract, (d) the identity of the assignee for such Assumed Contract, and (e) the deadline by which any such Assumed Contract counterparty must file a Contract Objection to the proposed assumption and assignment, and no other or further notice is required with respect to the Assumed Contracts listed on the Assumed Contract List as of the Initial Designation Deadline. For all non-debtor counterparties to an Assumed Contract served a Contract Notice in accordance with this paragraph 23, ten or more days prior to the Sale Hearing, to which no Contract Objection was timely filed, such Assumed Contract is hereby deemed assumed and assigned in accordance with the Contract Notice. For all non-debtor counterparties to an Assumed Contract served with a Contract Notice less than ten days prior to the Sale Hearing, if a timely filed Contract Objection is not received, the counterparty to such Assumed Contract shall be deemed to have consented to such assumption and assignment and Cure Amount, and the assignment will be deemed effective as of the date hereof. If any counterparty timely files a Contract Objection that cannot be resolved by the Purchaser and the counterparty, the Court shall resolve such Contract Objection prior to assumption and assignment of such designated contract, and upon entry of an order by the Court resolving such Contract Objection, the assignment shall be deemed effective as of the date set forth in the Contract Notice.

- 26 -

29.     Within five business days after the designation of a lease as an Assumed Lease pursuant to Section 2(i)(vi) of the Agreement, the Debtors shall serve, on the counterparty to such Assumed Lease, a Contract Notice that includes, to the extent applicable (a) the Assumed Lease, (b) the name of the counterparty to such Assumed Lease, (c) the Cure Amount for such Assumed Lease, (d) the identity of the assignee for such Assumed Lease, and (e) the deadline by which any such Assumed Lease counterparty must file a Contract Objection to the proposed assumption and assignment (including any objection to the Cure amount for such Lease or to adequate assurance of future performance thereunder), which deadline shall not be less than ten days following the service of the Contract Notice, and no other or further notice is required. If a timely filed Contract Objection is not received, the counterparty to such Assumed Lease shall be deemed to have consented to such assumption and assignment and Cure Amount, and the assignment will be deemed to be effective on such date. If any counterparty timely files a Contract Objection that cannot be resolved by the Purchaser and the counterparty, the Court shall resolve such Contract Objection prior to the assumption and assignment of such designated contract, and upon entry of an order by the Court resolving such Contract Objection, the assumption and assignment of such designated contract shall be deemed effective as of the date set forth in the Contract Notice.

30.     All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing, or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, prior to the transfer of such Assumed Lease, (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) as to which no objections were interposed, are deemed satisfied by the Cure Amounts with respect to each Assumed

Contract in those amounts set forth in the Contract Notice, which was served in accordance with the Bidding Procedures Order, and which were satisfied, or shall be satisfied as soon as practicable, by the Purchaser.

31.     Each non-debtor party to an Assumed Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Debtors' property, any default existing as of the date of the Sale Hearing; and, with the exception of the Cure Amounts set forth in the Contract Notice, or as otherwise reflected in this Order, each non-debtor party to an Assumed Contract hereby is forever barred, estopped, and permanently enjoined from asserting against the Purchaser, or the Purchaser's property, any default existing as of the date of the Sale Hearing, or any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors. Except as provided in the Agreement or this Order, after the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, after the transfer of such Assumed Lease), the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates. Notwithstanding the foregoing, the issues relating to the assumption and assignment of the Contracts set forth on Exhibit 2 attached hereto, have been continued and will be resolved by separate orders of the Court.

32.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtors as a result of the assumption, assignment and/or transfer of any Assumed Contract. The Purchaser's promise pursuant to the terms of the Agreement to pay the Cure Amounts and to perform the obligations under the Assumed Contract after the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to

Section 2(i)(vi) of the Agreement, after the transfer of such Assumed Lease) shall constitute adequate assurance of its future performance under the Assumed Contracts being assigned to it within the meanings of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

33.     Notwithstanding anything to the contrary in this Order, no executory contract or unexpired lease will be assumed and assigned pursuant to this Order until the Closing (or, with respect to any Assumed Lease subsequently designated pursuant to Section 2(i)(vi) of the Agreement, until the transfer of such Assumed Lease).

34.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

35.     All executory Contracts (but not unexpired Leases) to which any Debtor is a party and which are not (a) Assumed Contracts, (b) Non-Lease Contracts pursuant to which the Sellers are providing services to the Purchaser pursuant to the Transition Services Agreement, or (c) contracts listed on the list of retained contracts (the "Retained Contract List") to be filed by the Debtors prior to the Closing Date (collectively, the "Rejected Contracts"), are hereby rejected as of the Closing Date, without other or further notice (except as set forth in paragraph 36 of this Order) or further order of this Court. The Debtors do not waive any claims they may have against any landlord or counterparty to the Rejected Contracts, whether or not such claims arise under, are related to the rejection of, or are independent of the Rejected Contracts.

36.     Prior to the Closing Date, the Debtors shall file a notice of rejection (the "Rejection Notice"), and will serve the Rejection Notice on all counterparties to the Rejected Contracts, setting forth that each counterparty to a Rejected Contract shall be required to file a

rejection damages claim, if any, relating to the rejection of such Rejected Contracts by the later of (a) the claims bar date established in the Debtors' Chapter 11 Cases or (b) 30 days after the effective date of rejection of such Rejected Contract.

37. Unless authorized in writing by the Purchaser or permitted under the terms of the Transition Services Agreement, the Debtors shall not reject any unexpired Lease prior to the occurrence of the Subsequent Designation Deadline. In the event that the Transition Services Agreement permits, or the Purchaser authorizes the Debtors, in writing, to reject any unexpired Lease prior to the occurrence of the Subsequent Designation Deadline, the Debtors shall serve a Rejection Notice on the counterparty to such Lease, and such Lease shall be deemed rejected by the Debtors as of the date of such Rejection Notice without other or further notice or order of this Court. Any unexpired Lease not previously assumed or rejected by the Debtors, and not designated as an Assumed Lease pursuant to Section 2(i)(vi) of the Agreement, shall be deemed rejected by the Debtors as of the Subsequent Designation Deadline. Within five business days after the Subsequent Designation Deadline, the Debtors shall file with the Court and serve on the counterparties to unexpired Leases rejected as of the Subsequent Designation Deadline pursuant to this paragraph, a Rejection Notice, and no other or further notice is required.

### Additional Provisions

38. The consideration provided by the Purchaser for the Acquired Assets under the Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof, and the District of Columbia.

39. The consideration provided by the Purchaser for the Acquired Assets under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

- 30 -

40.     The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, any reversal, vacatur or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser, including the assignment to the Purchaser of the Assumed Contracts. The Purchaser is a purchaser in good faith of the Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

41.     On the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens, Claims and Interests in the Acquired Assets, if any, as such Liens, Claims and Interests may have been recorded or may otherwise exist.

42.     This Order (a) shall be effective as a determination that, upon the Closing, the Purchaser shall be vested with title to the Acquired Assets free and clear of all Liens, Claims and Interests except as set forth in the Agreement, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets. For the avoidance of doubt, all Liens, Claims and Interests with respect to the Excluded

- 31 -

Assets shall continue with the same validity, force, effect and priority as they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

43.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Liens, Claims and Interests in the Acquired Assets conveyed pursuant to the Agreement shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims and Interests which the person or entity has with respect to such Acquired Assets or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Acquired Assets and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and Interests in such Acquired Assets of any kind or nature whatsoever. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

44.     The Purchaser shall be entitled to avail itself of any and all Seller Services (as defined in the Transition Services Agreement) to be provided under the Transition Services Agreement, including, but not limited to occupying Leased Real Property that is subject to a Lease that has not been assumed by Purchaser as of the Closing Date, free of any interference from any entity or person, subject to Purchaser's compliance with this Order and the Transition Services Agreement. All expenses related to such services will be paid in accordance with the terms and conditions of the Transition Services Agreement. Debtors and Purchaser shall be

- 32 -

authorized to continue to take any and all actions as may be necessary or desirable to implement the Transition Services Agreement and each of the transactions contemplated thereby. Other than actions permitted by an Order of this Court, all utility providers, landlords, creditors and all persons acting for or on their behalf shall not interfere with or otherwise impede the operations, or institute any action in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or otherwise impedes the operations contemplated under the Transition Services Agreement.

45. The amounts deposited into the Transition Account (as defined in the Transition Services Agreement), and the proceeds thereof, shall not be, and shall not be deemed to be, property of the Debtors' estates, and are free and clear of any Liens, Claims and Interests, except for the interests of the Debtors and the Purchaser as set forth in the Transition Escrow Agreement (as defined in the Transition Services Agreement).

46. The Debtors shall be entitled to periodically direct that funds from the Transition Account be delivered to employees and creditors to pay other Liabilities incurred prior to the termination of the Transition Services Agreement, in each case as contemplated by the Transition Services Agreement, and in each case whether paid prior to or after the termination of the Transition Services Agreement, the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or the effective date of a plan of reorganization or liquidation in the Chapter 11 Cases. The escrow agent for the Transition Account shall disburse the funds in the Transition Account for the above-described purposes at the direction of the Debtors.

47. The Debtors shall be entitled to periodically direct that funds from the Wind-Down Account be used to pay Wind-Down Expenses (as defined in the Transition

Services Agreement) in the categories of obligations set forth on the budget attached as Exhibit 3 hereto (the "Wind-Down Budget"), up to the aggregate amounts set forth on the Wind-Down Budget for each such category, including to direct that funds be delivered from the Wind-Down Account to the parties owed the Wind-Down Expenses to pay amounts incurred prior to the later of (a) the termination of the Transition Services Agreement and (b) the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or the effective date of a plan of reorganization or liquidation in the Chapter 11 Cases. The Debtors shall, once per calendar month, deliver to the Committee an accounting of the Wind-Down Account indicating the aggregate amount of disbursements from the Wind-Down Account. Any amounts remaining in the Wind-Down Account after payment of the Wind-Down Expenses shall be subject to the security interests of those parties that had security interests in the Acquired Assets in the same order of priority existing prior to the Closing, subject to any claims and defenses the Debtors may possess with respect thereto.

48.     The Debtors shall use the funds in the 503(b)(9) Account to pay allowed claims under section 503(b)(9) of the Bankruptcy Code ("503(b)(9) Claims"). Any amounts remaining in the 503(b)(9) Account after payment in full of all allowed 503(b)(9) Claims against the Debtors shall be subject to ~~subject to~~ the security interests of those parties that had security interests in the Acquired Assets in the same order of priority existing prior to the Closing, subject to any claims and defenses the Debtors may possess with respect thereto

49.     The Debtors shall use the funds in the Professional Fee Account to pay fees and expenses of the professionals retained by the Debtors and the Committee. Any amounts remaining in the Professional Fee Account after payment in full of all fees and expenses of the professionals retained by the Debtors and the Committee shall be subject to ~~subject to~~ the

- 34 -

security interests of those parties that had security interests in the Acquired Assets in the same order of priority existing prior to the Closing, subject to any claims and defenses the Debtors may possess with respect thereto. *the Prepetition Agent (on behalf of the Revolving Lenders and the Term A Lenders) and the Revolving Lenders and the Term A Lenders*

50. None of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders, or any other party, shall have any Liens, Claims or Interests in the Transition Account or the proceeds thereof, the Wind-Down Account or the proceeds thereof, the Professional Fee Account or the proceeds thereof, the Working Capital Account or the proceeds thereof, the 503(b)(9) Account or the proceeds thereof, or the Avoidance Actions Proceeds Account or the proceeds thereof; provided, however, that notwithstanding the foregoing, unless and until the DIP Agent and the DIP Lenders are paid in full in cash, the Liens, Claims and *claims of the* Interests of the DIP Agents and the DIP Lenders on (a) the proceeds of the Wind-Down Account *on behalf of* (but not on the Wind-Down Account itself), if any, remaining after payment of the Wind-Down Expenses shall continue in the same order of priority existing prior to the Closing, (b) the proceeds of the Professional Fee Account (but not the Professional Fee Account itself), if any, *allowed* remaining after the payment of all fees and expenses owed to the professionals retained by the Debtors and the Committee shall continue in the same order of priority existing prior to the Closing; (c) the proceeds of the Working Capital Account (but not on the Working Capital Account itself), if any, remaining after the payment of any amounts owed to Purchaser under the Agreement resulting from the Final Purchase Price Adjustment shall continue in the same order of priority existing prior to the Closing; and (d) the proceeds of the 503(b)(9) Account (but not on the 503(b)(9) Account itself) remaining after the payment of all *allowed* obligations of the Debtors arising under section 503(b)(9) of the Bankruptcy Code shall continue in the same order of priority existing prior to the Closing. *Any excess funds remaining in any of the aforementioned accounts shall be paid over to the DIP Agent or the Prepetition Agent promptly upon receipt of such funds by the Debtors to apply to amounts unpaid with respect to the Postpetition Indebtedness or the A Obligations until such obligations, collectively, are paid in full in cash.*

069504.1001

_[handwritten: Effective as of the Closing,]_

51.    International Paper Company and its affiliates (collectively, "IP") waive

and release any and all claims held by IP pursuant to section 503(b)(9) of the Bankruptcy Code,

any and all general unsecured claims (including any and all rejection damages claims) held by IP

after giving effect to the IP Offset (as defined in the ~~Bankruptcy Code~~) and after giving effect to

_[handwritten: DIP Order]_

the Purchaser's assumption of certain claims of IP against the Debtors as set forth in the

Agreement.

52.    The Purchaser shall indemnify and hold harmless each Seller Service

Provider (as defined in the Transition Services Agreement), their affiliates and each of their

respective representatives in accordance with the terms and conditions of the Transition Services

Agreement.

53.    The Purchaser shall have no obligation to pay or provide wages, bonuses,

severance pay, benefits (including, without limitation, contributions or payments on account of

any under-funding with respect to any and all pension plans) or any other payment to current or

former employees of the Debtors and their eligible dependents and beneficiaries, except as set

forth in the Agreement or the Transition Services Agreement. Furthermore, (a) the Purchaser

shall have no obligation or liability, as a successor or otherwise, with respect to any collective

bargaining agreement or any multiemployer pension welfare, retention, employee benefit and/or

incentive plan or agreement to which any Debtors are a party (including, without limitation,

arising from or related to the rejection or other termination of any such plan or agreement), (b)

the Purchaser shall in no way be deemed a party to or assignee of any such plan or agreement, (c)

no employee of the Purchaser shall be deemed in any way covered by or a party to any such plan

or agreement, and (d) all parties to any such agreement are hereby enjoined from asserting

against the Purchaser any and all claims arising from or relating to such plan or agreement.

- 36 -

54.     Any amounts that become payable by the Debtors to the Purchaser pursuant to the Agreement (and related agreements executed in connection therewith) (a) shall constitute administrative expenses of the Debtors' estates under sections 503(b) and/or 507(a)(2) of the Bankruptcy Code, and (b) shall be paid by the Debtors in the time and manner provided for in the Agreement (and such related agreements) without further Court order.

55.     All non-debtor entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing.

56.     Neither the Purchaser nor its affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets or as a result of the consummation of the transactions contemplated by the Agreement or any other event occurring in the Chapter 11 Cases under any theory of law or equity, to: (a) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Agreement), including but not limited to a "successor employer" for the purposes of the Internal Revenue Code of 1986, the Employee Retirement Income Security Act of 1974, the National Labor Relations Act or other applicable laws; (b) have, de facto or otherwise, merged with or into any of the Debtors; (c) be a mere continuation of the Debtors or their estates (and there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Purchaser and the Debtors, and there is no continuity of enterprise between the Purchaser and the Debtors); or (d) be holding itself out to the public as a continuation of the Debtors. Except for the Assumed Liabilities, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Acquired Assets or otherwise. Without limiting the generality of the foregoing, and

YCST01:10075468.2                                                      069504.1001

except for the Assumed Liabilities, the Purchaser shall not be liable for, and shall be released and forever discharged from, any and all claims, causes of action, obligations, liabilities, demands, losses, costs or expenses of any kind, character or nature whatsoever against the Debtors or any of their predecessors or affiliates, and the Purchaser, and each of its Affiliates, shall have no successor, vicarious or other liabilities of any kind or character including but not limited to any theory of antitrust, environmental, successor or transferee liability, labor law, bulk sales law (to the extent permitted under the Bankruptcy Code), de facto merger, or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing. Notwithstanding the foregoing, nothing herein shall be held to limit any bargaining obligations that may arise pursuant to the National Labor Relations Act, 29 U.S.C. § 151 *et seq*. (the "NLRA"), subsequent to the closing of the sale or other obligations arising under the NLRA consistent with the application of the United States bankruptcy laws.

57.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any Permit with respect to the Acquired Assets transferred to the Purchaser by the Debtors, and all such Permits are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

58.     Following the Closing, no holder of a Lien, Claim or Interest in the Debtors or the Acquired Assets shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Lien, Claim or Interest, or any actions that the Debtors may take in their Chapter 11 Cases.

YCST01:10075468.2                                                                        069504.1001

59. Nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Agreement authorizes transfer to the Purchaser of any federal governmental authorizations and approvals (or any state governmental orders, licenses, permits, registrations, or other state governmental authorizations and approvals pursuant to state or federal environmental law) without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

60. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith (including, but not limited to, the Transition Services Agreement) in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Excluded Liabilities or any Liens, Claims and Interests in the Debtors or the Acquired Assets, of any kind or nature whatsoever.

61. Notwithstanding Bankruptcy Rule 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self executing and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. In the absence of any entity obtaining

- 39 -

a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, to allow the Purchaser to deliver any notice provided for in the Agreement and allow the Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof.

62. In the event the Purchaser is unable to close on or prior to September 7, 2010, the Debtors shall have the right to terminate the Agreement and accept the bid of the Back-up Bidder. In the event the Debtors accept the bid of the Back-up Bidder, the Debtors shall be permitted to submit a revised order on substantially the terms set forth herein naming the Back-up Bidder as the purchaser upon certification of counsel among the Debtors, the Back-up Bidder, the DIP Lenders, the Term B Lenders and the Creditors' Committee or seek an emergency hearing for entry of such order.

63. The terms and provisions of the Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Liens, Claims and Interests in the Acquired Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

64. The provisions of this Order are non-severable and mutually dependent without the written consent of the Purchaser and the Debtors.

YCST01:10075468.2                                                  069504.1001

65.     To the extent of any conflicts between the Agreement or the Transition Services Agreement and this Order, the terms and provisions of this Order shall govern.

66.     The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Order.

Dated: Wilmington, Delaware
    August 23, 2010

_____
UNITED STATES BANKRUPTCY JUDGE

YCST01:10075468.2

069504.1001