July 22, 2010

National Envelope Corporation
333 Earle Ovington Boulevard, Suite 1035
Uniondale, New York 11553

Ladies and Gentlemen:

Reference is hereby made to that certain Asset Purchase Agreement, dated July 8, 2010, by and among NEV Holdings, LLC ("Buyer"), NEC Holdings Corp., National Envelope Corporation and the other Sellers named therein (the "APA"). Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the APA.

In connection with the transactions contemplated by the APA, please note the following:

1. Buyer hereby waives its right to terminate the APA pursuant to Section 8(a)(xii) of the APA. Section 8(a)(xii) shall be of no further force or effect.

2. Assuming the hearing to determine the retention of Loughlin Meghji + Company Associates, Inc. is rescheduled to August 5, 2010, Buyer hereby waives its right to terminate the APA pursuant to Section 8(a)(xiii) of the APA. Subject to the foregoing assumption, Section 8(a)(xiii) shall be of no further force or effect.

3. Notwithstanding the requirements of Section 5(b)(iii) of the APA, Buyer and the Sellers shall not be required to make their HSR Act filings until the first Business Day immediately following approval of the Bidding Procedures by the Bankruptcy Court.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

Please indicate your acceptance of the foregoing by executing and returning to Buyer a copy of this letter.

Sincerely,

**NEV HOLDINGS, LLC**

By: _____
Name: Jordan Katz
Title: Vice President

ACKNOWLEDGED AND AGREED:

**NATIONAL ENVELOPE CORPORATION**

By: _____
Name: James Shelby Marlow
Title: Chief Financial Officer

## SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT

This **SECOND AMENDMENT TO ASSET PURCHASE AGREEMENT** (this "Second Amendment"), entered into effective as of August 23, 2010, is made by and between NEV Holdings, LLC, a limited liability company formed under the laws of the State of Delaware ("Buyer"), and National Envelope Corporation, a corporation formed under the laws of the State of New York (the "Company"), on behalf of itself and each other Seller, and amends that certain Asset Purchase Agreement, dated as of July 8, 2010 (the "Purchase Agreement"), by and among (i) NEC Holdings Corp., corporation formed under the laws of the State of Delaware ("Parent"), the Company, and the Subsidiaries of the Company identified on Annex A thereto (together with Parent and the Company, "Sellers," and each, individually, a "Seller"), and (ii) Buyer.  Sellers and Buyer are referred to herein individually as a "Party" and collectively as the "Parties". Capitalized terms used and not otherwise defined in this Second Amendment will have the meanings set forth in the Purchase Agreement.

**WHEREAS**, the Parties have heretofore entered into the Purchase Agreement;

**WHEREAS**, the Parties have heretofore entered into the First Amendment to Asset Purchase Agreement, dated July 21, 2010 (the "First Amendment"); and

**WHEREAS**, the Parties desire to amend the Purchase Agreement in accordance with Section 9(d) of the Purchase Agreement as more fully set forth herein.

**NOW, THEREFORE**, in consideration of the mutual promises herein made and the mutual agreements herein contained, the Parties hereby agree as follows:

1.      Amendments.  The Parties hereby agree that the Purchase Agreement shall be amended as follows:

(a)      Section 1 of the Purchase Agreement is hereby amended by adding the following defined term after the defined term "GAAP":

""Gores Fund II" means, collectively, Gores Capital Partners II, L.P., a limited partnership formed under the laws of the State of Delaware, and Gores Co-Invest Partnership II, L.P., a limited partnership formed under the laws of the State of Delaware."

(b)      The definition of "Initial Purchase Price" in Section 1 of the Purchase Agreement is hereby deleted and replaced in its entirety by the following:

""Initial Purchase Price" means an amount equal to $149,850,000."

(c)      The definition of "Initial Purchase Increase Amount" in Section 1 of the Purchase Agreement is hereby deleted and replaced in its entirety by the following:

""Initial Purchase Price Increase Amount" has the meaning set forth in Section 2(g)(iv)(A)."

(d)     Section 1 of the Purchase Agreement is hereby amended by adding the following defined term after the defined term "Intercompany":

"Intercreditor Agreement" means an intercreditor agreement by and among NE Opco, NE Opco's first lien lenders and the Company or such other Person or Persons as are designated by the Company in writing, containing the terms set forth on Exhibit A to the Second Amendment and otherwise in form and substance reasonably satisfactory to Sellers."

(e)     Section 1 of the Purchase Agreement is hereby amended by adding the following defined term after the defined term "Material Contracts":

"NE Opco" means NE Opco, Inc., a Delaware corporation and a wholly owned Subsidiary of Buyer."

(f)     Section 1 of the Purchase Agreement is hereby amended by adding the following defined terms after the defined term "Schedules":

"Second Amendment" means that certain Second Amendment to the Agreement by and between Buyer and the Company, on behalf of itself and each of other Seller, dated August 23, 2010.

"Second Lien Credit Agreement" means a second lien credit agreement among Buyer, NE Opco, as obligor, the Company or such other Person or Persons as are designated by the Company in writing, as obligees, and the Person designated thereunder as agent for the obligees, as agent, containing the terms set forth on Exhibit A to the Second Amendment and otherwise in form and substance reasonably satisfactory to Sellers.

"Second Lien Documents" means, collectively, the Second Lien Credit Agreement, the Intercreditor Agreement and the Second Lien Guaranty.

"Second Lien Guaranty" means a guaranty by Gores Fund II jointly and severally guaranteeing the obligations of NE Opco under the Second Lien Loan Obligations, containing the terms set forth on Exhibit A to the Second Amendment and otherwise in form and substance reasonably satisfactory to Sellers.

"Second Lien Loan Obligations" means second lien term loan obligations of NE Opco, as obligor under the Second Lien Credit Agreement, in favor of the Company or such other Person or Persons as are designated by the Company in writing, as obligees under the Second Lien Credit Agreement."

(g)     The definition of "Wind-Down Escrow Agreement" in Section 1 of the Purchase Agreement is hereby deleted.

(h)     The definition of "Wind-Down Escrow Amount" in Section 1 of the Purchase Agreement is hereby deleted and replaced in its entirety by the following:

""Wind-Down Amount" means an amount equal to $9,020,000, which is the budgeted amount for wind-down costs and expenses (including attorneys' fees) expected to be incurred between the Closing Date and the date of the termination of the Transition Services Agreement; provided, however, that, for the avoidance of doubt, such amount shall in no event be disbursable to Buyer."

(i)     The first sentence of Section 2(d)(i) of the Purchase Agreement is hereby deleted and replaced in its entirety by the following:

"The aggregate consideration for the sale and transfer of the Acquired Assets shall be (i) the Initial Purchase Price, subject to adjustment determined prior to the Closing pursuant to Section 2(g)(iv)(A) (as so adjusted, the "Closing Purchase Price"), which Closing Purchase Price is payable and deliverable, free and clear of, and, subject to Section 2(j), without reduction for, any Tax due in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated in this Agreement, to Sellers at the Closing in accordance with Section 2(f)(ii)(J), (ii) the aggregate principal amount of the Second Lien Loan Obligations, and (iii) the assumption by Buyer of the Assumed Liabilities."

(j)     Section 2(f)(ii) of the Purchase Agreement is hereby amended by adding the following subsections after existing subsection (K):

"(L)    the Second Lien Documents."

(k)     Section 2(f)(ii)(I) of the Purchase Agreement is hereby deleted and replaced in its entirety by the following:

"(I)    the Wind-Down Amount, by wire transfer of immediately available funds to a segregated bank account designated in writing by the Company prior to the Closing Date;"

(l)     Section 2(f)(ii)(J) of the Purchase Agreement is hereby deleted and replaced in its entirety by the following:

"(J)    the Closing Purchase Price, reduced by the amount of the Deposit paid pursuant to Section 2(d)(ii), the Working Capital Escrow Amount paid pursuant to Section 2(f)(ii)(H) and the Wind-Down Amount paid pursuant to Section 2(f)(ii)(I), by wire transfer of immediately available funds to one or more bank accounts designated in writing by Sellers to Buyer prior to the Closing Date (the "Sellers' Accounts"); and"

3

(m)    The fourth sentence of Section 2(g)(iv)(B) of the Purchase Agreement is hereby deleted and replaced in its entirety by the following:

"If the amount of Net Working Capital on the Conclusive Net Working Capital Statement equals the Target Net Working Capital Amount, then the Escrow Agent shall pay out of the Escrow Funds in cash (1) to Buyer an amount equal to the Initial Purchase Price Increase Amount, if any, and (2) to Sellers the amount remaining in the Escrow Funds after giving effect to the payments to Buyer, if any, contemplated in this sentence, in each case, by wire transfer of immediately available funds to an account designated by Buyer or Sellers' Accounts, as applicable."

(n)    Clause (H) of Section 5(j)(v) of the Purchase Agreement is hereby deleted and replaced in its entirety by the following:

"(H) the Wind-Down Amount shall be deposited in a segregated bank account designated in writing by the Company."

(o)    Section 5 of the Purchase Agreement is hereby amended by adding subsections (q) and (r) after existing subsection (p) as follows:

"(q)    <u>Treatment of Leases and Leased Real Property Prior to Closing</u>.  On or prior to the Closing Date, Buyer shall not request, instruct or take any other action requiring Sellers to (i) terminate, reject, or waive or (ii) conflict, abrogate, nullify, restrict or in any way prevent or interfere with Sellers' performance or obligations under any Leases and/or Leased Real Property. Buyer shall cooperate with Sellers to ensure that all Leases and Leased Real Property shall be subject to the Transition Services Agreement (until such Leases or Leased Real Property are rejected pursuant to <u>Section 2(i)(vi)</u> hereof).

(r)    <u>Second Lien</u>.  Buyer shall cause Gores Fund II to, and the Company shall, prior to Closing, negotiate in good faith and at Closing execute or acknowledge, as applicable, the Second Lien Documents.  In furtherance of the foregoing, Buyer shall provide to the Company and such Persons designated by the Company (i) the credit agreement related to the Facility (as defined in the Debt Commitment Letters) in substantially final form no later than four Business Days after the Sale Hearing and (ii) all other documents related to the Facility in substantially final form as soon as reasonably practicable following delivery of the credit agreement related to the Facility."

(p)    Section 6(o) of the Purchase Agreement is hereby deleted and replaced in its entirety by the following:

"(o)    <u>Delivery of Wind-Down Information</u>.  Concurrently with the delivery by Sellers to the Bankruptcy Court pursuant to the Sale Order of any

reports or financial information required to be delivered to the Bankruptcy Court regarding the Wind-Down Amount, Sellers shall deliver such reports or financial information to Buyer."

(q)    Annex B of the Purchase Agreement is hereby deleted and replaced in its entirety by <u>Exhibit B</u> attached hereto.

(r)    Exhibit G of the Purchase Agreement is hereby deleted and replaced in its entirety by <u>Exhibit C</u> attached hereto.

(s)    Buyer hereby waives the conditions to Closing set forth in Subsections 7(a)(i) through 7(a)(viii) of the Purchase Agreement.

2.    <u>Miscellaneous</u>.

(a)    Except as specifically amended by the First Amendment and this Second Amendment, the terms and conditions of the Purchase Agreement shall remain in full force and effect and shall be unaffected by this Second Amendment.

(b)    Solely to the extent as provided in Section 6(a) of the Purchase Agreement, each Party hereto agrees, without further consideration, until the dissolution or liquidation of Sellers, to take such further actions and execute, acknowledge (if appropriate) and deliver, or cause the execution, acknowledgment and delivery of, such further documents and instruments as may reasonably be requested by another Party hereto or such other Party's successors and permitted assigns, to carry out the purpose and intent of this Second Amendment.

(c)    This Second Amendment shall in all aspects be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York (other than Section 5-1401 of the New York general obligations law), except to the extent that the laws are superseded by the Bankruptcy Code, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws.  For so long as Sellers are subject to the jurisdiction of the Bankruptcy Court, the Parties irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Second Amendment or the transactions contemplated hereby, and consent to the exclusive jurisdiction of, the Bankruptcy Court.  After Sellers are no longer subject to the jurisdiction of the Bankruptcy Court or if the Bankruptcy Court is unwilling or unable to hear any matter arising under or in connection with this Second Amendment or the transactions contemplated hereby, such matter shall be brought in the courts of the State of New York sitting in the County of New York or of the United States for the Southern District of New York, and by execution and delivery of this Second Amendment, each of the Parties consents to the exclusive jurisdiction of those courts. Each of the Parties irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of *forum non conveniens*, which it may now or hereafter have to

the bringing of any action or proceeding in such jurisdiction in respect of this Second Amendment or the transactions contemplated in this Second Amendment.

(d)     Each of the Parties hereby consents to process being served by any Party in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 9(g) of the Purchase Agreement.

(e)     EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS SECOND AMENDMENT OR THE TRANSACTIONS CONTEMPLATED IN THIS SECOND AMENDMENT.

(f)     This Second Amendment may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.  This Second Amendment or any counterpart may be executed and delivered by facsimile or email with scan attachment copies or pdf, each of which shall be deemed an original.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the undersigned have executed this Second Amendment as of the date first above written.

SELLERS:

**NATIONAL ENVELOPE CORPORATION**

By: _____
        Name: James Shelby Marlow
        Title:   Authorized Person

**BUYER:**

**NEV HOLDINGS, LLC**

By: _____
        Name:
        Title:

[Signature Page to Second Amendment to Asset Purchase Agreement]

IN WITNESS WHEREOF, the undersigned have executed this Second Amendment as of the date first above written.

**SELLERS:**

**NATIONAL ENVELOPE CORPORATION**

By: _____

      Name:

      Title:

**BUYER:**

**NEV HOLDINGS, LLC**

By: _____Jordan Katz_____

      Name: Jordan Katz

      Title: Vice President

[Signature Page to Second Amendment to Asset Purchase Agreement]

Exhibit A

Term Sheet for Second Lien Documents

(see attached)

NE Opco, Inc.
$37,686,928.74 Senior Secured Second Lien Term Loan Facility
FINAL TERM SHEET

| | |
|---|---|
| ***Obligor:*** | NE Opco, Inc., a Delaware corporation (the "***Obligor***"), all of the outstanding equity interests of which are owned by NEV Holdings, LLC, a Delaware limited liability company ("***Parent***"). |
| ***Guarantors:*** | Parent and all of Parent's present, future, direct or indirect subsidiaries, other than the Obligor (the "***Guarantors***"); *provided*, that subsidiaries that are controlled foreign corporations (each "***CFC***") will not be required to be Guarantors if to do so would result in material adverse tax consequences. Such Guarantors, together with Obligor, each a "***Loan Party***" and collectively, the "***Loan Parties***"). |
| ***Sponsor Guarantee:*** | In addition to the guarantees of the Guarantors, Gores Capital Partners II, L.P. and Gores Co-Invest Partnership II, L.P. (collectively, the "***Sponsor***") shall unconditionally and fully guaranty, on an unsecured basis, jointly and severally, the payment and performance of the obligations under the Second Lien Facility. In addition to other standard terms and conditions, the Sponsor Guaranty shall contain the following terms: Sponsor shall represent that as of the day of the auction it had uncalled capital (from partners that are not in default under the applicable Sponsor fund documents) ("***Uncalled Capital***") in an aggregate amount of approximately $400,000,000 and will have Uncalled Capital of at least $150,000,000 as of Closing Date, and shall covenant that at all times it shall maintain uncommitted Uncalled Capital which is callable to satisfy the obligations of the Sponsor under the Sponsor Guaranty in an aggregate amount equal to not less than the Minimum Uncalled Capital Amount. As used herein, the term "***Minimum Uncalled Capital Amount***" shall mean, at any date of determination, an aggregate amount equal to the aggregate principal amount of the outstanding Term Loans (as defined below) and any accrued and unpaid interest under the Second Lien Facility (as defined below), together with any other obligations due and payable under the Second Lien Facility. The Obligees shall be permitted to demand payment under the guaranty following the occurrence of an event of default under the Second Lien Facility that is not cured within 10 days of the occurrence of the event of default. The guaranty shall provide for the delivery of quarterly certifications by a senior executive officer of Sponsor certifying that the Sponsor has the Minimum Uncalled Capital Amount. It shall be an event of default if the Sponsor fails to timely deliver the certification or breaches the covenant to maintain the Minimum Uncalled Capital Amount. |

| | |
|---|---|
| ***Obligees:*** | [Term B Lenders] or its Eligible Assignees (as defined below) (the "***Obligees***"). |
| ***Agent:*** | An agent to be appointed by the Obligees, and reasonably satisfactory to the Obligor, shall be the sole administrative and collateral agent for the Obligees (in such capacity, the "***Agent***"). The Agent shall initially be General Electric Capital Corporation. The Agent shall receive an annual market based administrative fee (the amount of which fee shall be determined on or prior to the Closing Date (as defined below) and reasonably acceptable to Obligor), payable annually in advance. |
| ***Second Lien Facility:*** | A senior secured second lien term loan facility (the "***Second Lien Facility***") in an aggregate principal amount of $37,686,928.74 (the "***Second Lien Facility Amount***"). |
| ***Term Loans:*** | On the Closing Date (defined below) of the Second Lien Facility, the Obligees will receive term loans of the Obligor under the Second Lien Facility (the "***Term Loans***") in an aggregate principal amount equal to the Second Lien Facility Amount. |
| ***Optional Prepayment:*** | So long as no First Lien Facilities Obligation (as defined below) is outstanding, the Term Loans may be prepaid in whole or in part from time to time without penalty or premium. |
| ***Mandatory Prepayments:*** | The credit agreement governing the Second Lien Facility will contain the same mandatory prepayment provisions as provided under the First Lien Facilities (applicable during such periods and for only so long as such mandatory prepayments are applicable under the First Lien Facilities), *provided* that any such mandatory prepayment shall be subject to prior remittance of such mandatory prepayments under the First Lien Facilities and payment to Second Lien Facility if waived by the First Lien Facility. |
| ***Interest Rate:*** | Interest on the Term Loans will accrue from the Closing Date at a rate per annum equal to 8%. |
| | Interest on the Term Loans shall be calculated on the basis of a year of 360 days and the actual number of days elapsed. |
| ***Interest Payments:*** | Interest on the Term Loans will be payable in cash, quarterly in arrears. |
| ***Default Rate:*** | At any time when an event of default has occurred and is continuing and upon written election of the Required Obligees (as defined below), all amounts outstanding under the Second Lien Facility shall bear interest at 2.0% above the interest rate |

2

otherwise applicable thereto.

**Term and Amortization:**

The Second Lien Facility will mature on the date that is 5 years from the Closing Date ("**Maturity Date**") and will not be subject to interim amortization.

**Collateral:**

A second priority perfected security interest in all of the collateral (the "**Collateral**") securing Obligor's senior secured first lien credit facilities (the "**First Lien Facilities**"), such Collateral to consist of (i) substantially all of the Loan Parties' now owned and hereafter acquired property and assets (subject to customary exceptions) and all proceeds and products thereof, subject to liens permitted pursuant to the terms of the First Lien Facilities (*provided* that any such liens (other than (x) permitted purchase money liens, (y) the interests of lessors under capital leases and (z) with respect to Collateral with an aggregate value that does not exceed $3,000,000 ("**Permitted Priority Liens**")) which are senior to the liens securing the Second Lien Facility shall secure funded debt for borrowed money not to exceed the Senior Debt Cap (defined below)), and (ii) in all of the stock (or other ownership interests in) each first-tier subsidiary of each Loan Party and all proceeds and products thereof; provided that only 65% of the stock of (or other ownership interests in) CFCs will be required to be pledged if the pledge of a greater percentage would result in material adverse tax consequences.

The liens securing the Second Lien Facility and the guarantees of the Guarantors (collectively, the "**Second Lien Facility Obligations**") will be second in priority to the liens securing the First Lien Facilities, the related guarantees, obligations under any bank products agreements and hedge agreements provided by the lenders and affiliates of the lenders under the First Lien Facilities, and any permitted refinancings thereof (collectively, the "**First Lien Facilities Obligations**").

**Representations and Warranties:**

The credit agreement governing the Second Lien Facility will contain the following representations and warranties regarding the Obligor and its Subsidiaries (which shall be the same as such representations and warranties under the First Lien Facilities; *provided* that materiality thresholds and baskets will be subject to a cushion of at least 15%): due organization and qualification; subsidiaries; due authorization; no conflict; governmental consents; binding obligations; perfected liens; no encumbrances; jurisdiction of organization; location of chief executive office, organizational identification number; commercial tort claims; and Patriot Act and OFAC.

**Affirmative Covenants:**

The credit agreement governing the Second Lien Facility will contain the same affirmative covenants contained in the First Lien Facilities (*provided* that (i) materiality thresholds and

3

baskets will be subject to a cushion of at least 15%, (ii) borrowing base-related reporting shall not be required under the Second Lien Facility, (iii) the Second Lien Facility shall not contain covenants relating to the location of inventory and equipment and collections) which will be applicable to the Obligor (and certain of which will also apply to subsidiaries of the Obligor).

***Negative Covenants:***  The credit agreement governing the Second Lien Facility will contain the same negative covenants contained in the First Lien Facilities (which shall include a change of control covenant) (*provided* that (i) materiality thresholds and baskets will be subject to a cushion of at least 15%, (ii) the Second Lien Facility shall not contain covenants relating to consignments and inventory and equipment with bailees and (iii) the Second Lien Facility shall limit the aggregate principal amount of funded debt for borrowed money senior to the Second Lien Facility to $110,000,000 (the "***Senior Debt Cap***") plus the aggregate amount of any funded debt for borrowed money secured by Permitted Priority Liens).

***Events of Default:***  The credit agreement governing the Second Lien Facility will contain the same events of default as contained in the First Lien Facilities (including, without limitation, for change of control) (*provided* that (i) materiality thresholds and baskets will be subject to a cushion of 15%, (ii) events of default shall be subject to grace periods of 10 days (unless otherwise agreed to by the Sponsor and [Term B Lenders], and (iii) the cross default to the First Lien Facilities will only be applicable with respect to (x) payment defaults under the First Lien Facilities, (y) financial covenant defaults under the First Lien Facilities that are not cured or waived within a period to be agreed upon, and (z) defaults under the First Lien Facilities that give rise to an acceleration of the First Lien Facilities).

***Financial Covenants:***  None.

***Financial Reporting:***  The credit agreement governing the Second Lien Facility will contain the same financial reporting requirements (other than financial covenant and borrowing-base related reporting requirements) as contained in the First Lien Facilities.

***Scheduled Closing Date:***  The closing date relative to the Second Lien Facility ("***Closing Date***") shall occur on or before September 10, 2010.

***Voting and Agent Approval:***  Amendments and waivers of the Loan Documents will require the approval of Obligees (other than any Related Lender) holding more than 50% of the aggregate amount of the Term Loans (the "***Required Obligees***") (*provided* that at any time there are 2 or more Obligees, the Required Obligees shall include at least 2 Obligees), except that the consent of each

Obligee directly adversely affected thereby shall be required with respect to (i) creation of or increases in commitments of such Obligee, (ii) reductions of principal or interest, or changes in the dates of such payments, (iii) extensions of final maturity and (iv) releases of Loan Parties (other than in connection with permitted transactions) or all or substantially all of the Collateral.

In the event that the Obligor, Sponsor or any of their respective affiliates (each, a *"Related Lender"*) acquire, directly or indirectly, any interest in the Second Lien Facility, such Related Lender shall have no direct or indirect voting rights with respect to such interest in the Second Lien Facility, *provided*, that the Related Lender's interests in the Second Lien Facility shall not be treated in an adverse or discriminatory matter vis a vis the other Obligees. Such Related Lender shall not be entitled to receive any information prepared by or shared solely among the other Obligees (including, without limitation, any reports of consultants or advisors retained by the other Obligees), and shall only have the benefit of any counsel retained by the other Obligees in connection with any joint defense arrangements, lawsuits, claims and similar actions affecting all Obligees (other than with respect to those lawsuits, claims or similar actions filed by the Obligor or Sponsor).

*Assignments/Participations:*

Each Obligee shall be permitted to assign its rights and obligations under the Loan Documents, or any part thereof, to any to any persons or entity (including, without limitation, Sun Capital and its affiliated funds) (other than individuals) that are "accredited investors" within the meaning of Rule 501(a)(1) under the Securities Act of 1933, as amended (*"Eligible Assignees"*), subject only to the right of first offer set forth below. Each Obligee shall be permitted to sell participations in such rights and obligations, or any part thereof to any person or entity without the consent of Obligor.

The Sponsor, shall have a right of first offer (exercisable within 10 days of the relevant offer to the Sponsor, with such assignment or participation to be on the same terms as are being offered to the proposed assignee or participant) with respect to proposed assignments and participations of any Obligee's rights and obligations under the Loan Documents to a person other than to another Obligee or affiliate of an Obligee (or an Obligee's respective members or general or limited partners, as applicable, pursuant to a distribution in kind in accordance with the terms of such Obligee's organizational documents), it being understood that in the event that Sponsor does not accept the relevant Obligee's offer, the Obligee shall have the right to freely assign or participate such obligations as were offered to Sponsor to the

5

proposed assignee or participant (on the same terms as were offered to Sponsor) for a period of 90 days thereafter.

**Expense Reimbursement/Indemnification:** The Second Lien Facility shall contain the same expense reimbursement and indemnification provisions as the First Lien Facilities; *provided* that Obligor shall not be required to reimburse the Obligees for any of their liabilities, costs and expenses incurred (i) on or prior to (or relating to matters that occurred prior to) the Closing Date or (ii) in connection with NEC's chapter 11 cases in the United States Bankruptcy Court for the District of Delaware.

**Governing Law and Forum:** State of New York

**Intercreditor Agreement:** The Second Lien Facility shall be subject to an intercreditor agreement with the First Lien Facilities which, subject to the proviso below, shall contain market terms and conditions for a second lien transaction and which shall be reasonably acceptable to the Obligor, the Agent, the Obligees, the First Lien Agent and the lenders under the First Lien Facilities, *provided*, that (i) the Second Lien Facility Obligations shall be subordinated in right of payment to the First Lien Facilities Obligations (which subordination shall not prevent the occurrence of an event of default under Second Lien Facility) and (ii) if an event of default (other than a payment or bankruptcy event of default) has occurred and is continuing under the First Lien Facilities, payments in respect of the indebtedness under the Second Lien Facility shall be permitted following the expiration of a 180 day standstill period.

## Exhibit B

Assumed Contracts List

(see attached)

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | Advanta Bank Corp. | Attn: General Counsel or President | Plymouth Corporate Center | Conshohocken | PA | Contract | Pricing Agreement | $0.00 |
| National Envelope Corporation | Advanta Corp | Attn: General Counsel or President | Plymouth Corporate Center | Conshohocken | PA | Contract | Advanta Purchase Order Terms & Conditions | $0.00 |
| National Envelope Corporation | Afflink Business Solutions | 1400 Afflink Place | | Tuscaloosa | AL | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | AIPPM Group | Attn: General Counsel or President | Marshall Brown, Executive Director | Greensboro | NC | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Allan Company | 14620 Joanbridge Street | | Baldwin Park | CA | Contract | Recyclable Material Purchase and Sale Agreement | $0.00 |
| National Envelope Corporation | Alliance Data | Attn: General Counsel or President | 7500 Dallas Parkway, Suite 700 | Plano | TX | Contract | First Amendment to General Purchasing Agreement | $0.00 |
| National Envelope Corporation | Alliance Data | Attn: General Counsel or President | 17655 Waterview Parkway | Plano | TX | Contract | General Purchasing Agreement | $0.00 |
| National Envelope Corporation | Alliance Data | Attn: General Counsel or President | 7500 Dallas Parkway, Suite 700 | Plano | TX | Contract | Second Amendment to General Purchasing Agreement | $0.00 |
| National Envelope Corporation | Alliance Data Systems | Attn: General Counsel or President | 17655 Waterview Parkway | Plano | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Allied Envelope | 525 E. 42nd St. | | Boise | ID | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Alltel Communications | 8540 Riverwood Drive | | North Little Rock | AR | Contract | Master Purchase Agreement Contract # 061116N1 | $0.00 |
| National Envelope Corporation | American Paper Corp | Amelia Distribution Center | 26 Emma Street | | | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Anchor Paper | Attn: President Or General Counsel | 480 Broadway | St. Paul | MN | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Arc Paper LLC | Attn: President Or General Counsel | 5277 S Cameron St-Suite 150 | Las Vegas | NV | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Argo Envelope Co | 43-10 21st Street | | Long Island City | NY | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Arista | 275 Middlefield Road | | Menlo Park | CA | Contract | Price Proposal | $0.00 |
| National Envelope Corporation | AT&T | One AT&T Way | | Bedminster | NJ | Contract | Amendment No. 03032467.A.004 | $0.00 |
| National Envelope Corporation | AT&T | 310 Orange Street, Room 3K3 | | New Haven | CT | Contract | Amendment No. 03032467.A.005 | $0.00 |
| National Envelope Corporation | AT&T | One AT&T Way | | Bedminster | NJ | Contract | Amendment No. 03032467.A.006 | $0.00 |
| National Envelope Corporation | AT&T | 2800 Century Parkway 9th floor | | Atlanta | GA | Contract | Consent to Assignment and Amendment 03032467-03 | $0.00 |
| National Envelope Corporation | AT&T Corp | 2800 Century Parkway 9th floor | | Atlanta | GA | Contract | AT&T Intrastate Services Pricing Schedule | $66,879.18 |
| National Envelope Corporation | AT&T Corp | One AT&T Way | | Bedminster | NJ | Contract | AT&T Master Agreement | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | COUNTERPARTY ADDRESS ADDRESS LINE 1 | ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | AT&T Corp | 2800 Century Parkway 9th floor | | Atlanta | GA | Contract | AT&T SDN OneNet Service Pricing Schedule | $0.00 |
| National Envelope Corporation | AT&T Global Services | 817 N. Loop, 2nd floor | | Austin | TX | Contract | AT&T Primary Rate ISDN: SmartTrunk ICB Service Agreement | $0.00 |
| National Envelope Corporation | AT&T Services | 675 West Peachtree Street NW, suite 39M30 | | Atlanta | GA | Contract | Amendment NO. 001 Agreement # 20080311.065.C | $0.00 |
| National Envelope Corporation | AT&T Services | 675 West Peachtree Street NW, suite 39M30 | | Atlanta | GA | Contract | Amendment NO. 03032467.A.007 | $0.00 |
| National Envelope Corporation | AT&T Services | 675 West Peachtree Street NW, suite 39M30 | | Atlanta | GA | Contract | Amendment NO. 03032467.A.008 | $0.00 |
| National Envelope Corporation | AT&T Services | 675 West Peachtree Street NW, suite 39M30 | | Atlanta | GA | Contract | Amendment NO. 03032467.A.009 | $0.00 |
| Atlantic Envelope Co | AT&T Services | 675 West Peachtree Street NW, suite 39M30 | | Atlanta | GA | Contract | Amendment NO. 2 Agreement # 03032467 | $0.00 |
| National Envelope Corporation | AT&T Services | 675 West Peachtree Street NW, suite 39M30 | | Atlanta | GA | Contract | Material and Services Agreement # 20080311.065.C | $0.00 |
| National Envelope Corporation | Athens Paper | 1898 Elm Tree Dr | | Nashville | TN | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope-Leasing LLC | Atlantic Capital Bank | 3280 Peachtree Road, NE | Suite 1600 | Atlanta | GA | Lease | Lease - Real Property | $0.00 |
| National Envelope Corporation | Bank of America NA | 1100 N. King Street | | Wilmington | DE | Contract | General Services Agreement # CW117872 | $0.00 |
| National Envelope Corporation | Belvoir Media Group LLC | 800 Connecticut Ave., 4th Floor | | Norwalk | CT | Contract | Envelope Supply Agreement | $0.00 |
| National Envelope Corporation | Blue Cross Blue Shield of South Carolina | I-20 at Alpine Road | | Columbia | SC | Contract | Amendment No 1 | $0.00 |
| National Atlantic Envelope | Blue Cross Blue Shield of South Carolina | I-20 at Alpine Road | | Columbia | SC | Contract | Amendment No 2 | $0.00 |
| National Atlantic Envelope | Blue Cross Blue Shield of South Carolina | I-20 at Alpine Road | | Columbia | SC | Contract | Amendment No 3 | $0.00 |
| National Envelope Corporation | Blue Cross Blue Shield of South Carolina | I-20 at Alpine Road | | Columbia | SC | Contract | Amendment No 4 | $0.00 |
| National Envelope Corporation | Blue Cross Blue Shield of South Carolina | I-20 at Alpine Road | | Columbia | SC | Contract | Amendment No 5 | $0.00 |
| National Atlantic Envelope | Blue Cross Blue Shield of South Carolina | I-20 at Alpine Road | | Columbia | SC | Contract | Amendment No 6 | $0.00 |
| National Envelope Corporation | Blue Cross Blue Shield of South Carolina | I-20 at Alpine Road | | Columbia | SC | Contract | Amendment No 7 | $0.00 |
| Atlantic Envelope LLC | Blue Cross Blue Shield of South Carolina | I-20 at Alpine Road | | Columbia | SC | Contract | Contact for Production of Envelopes | $0.00 |
| National Envelope Corporation | Bosworth Papers Inc | Attn: President Or General Counsel | Po Box 40905 | Houston | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Boy Scouts of America | Attn: General Counsel or President | 1325 Walnut Hill Lane | Irving | TX | Contract | Terms and Conditions | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | Bradner National | Alto Papers | 1443 Wainwright Way-Suite 155 | Carrollton | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Butler Dearden Paper Co | Attn: President Or General Counsel | 80 Shrewsbury Street | Boylston | MA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Bw Wilson-Richmond | Attn: President Or General Counsel | 2501 Brittons Hill Road | Richmond | VA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation-City of Industry LLC | California State Teachers Retirement System | Attn: General Counsel or President | 100 Waterfront Place | West Sacremento | CA | Lease | Lease - Real Property - 1st Amendment to Lease | $0.00 |
| National Envelope Corporation | Capital One | 1680 Capital One Drive | | McLean | VA | Contract | Confidentiality Agreement | $0.00 |
| National Envelope Corporation | CenterPoint Energy | PO BOX 4567 | | Houston | TX | Contract | Contract # 4600021400 | $0.00 |
| National Envelope Corporation | Central Michigan Paper | Attn: President Or General Counsel | Po Box 2649 | Grand Rapids | MI | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Central Paper Company | Attn: President Or General Counsel | 400 Glenwood Avenue | Pawtucket | RI | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Charles Schwab | Attn: General Counsel or President | 211 Main Street | San Francisco | CA | Contract | Work Order No. 1 | $0.00 |
| National Envelope Corporation | City of Los Angeles | 1149 South Broadway Street, 3rd floor | | Los Angeles | CA | Contract | City of Los Angeles Non-Discrimination Equal Employment Practices Affirmative Action | $0.00 |
| National Envelope Corporation | Clampit Paper | 9207 Ambassador Row | | Dallas | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Clear Image Inc. dbs Clearbags | 4949 Windplay Drive | Ste 100 | El Dorado Hills | CA | Contract | Supplier Contract | $0.00 |
| National Envelope Corporation | Cole Papers Inc | Attn: President Or General Counsel | 1300 38Th Street Nw | Fargo | ND | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Commerce Paper Company | Attn: President Or General Counsel | 15 S Ontario Street | Toledo | OH | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Constellation NewEnergy - Gas Division, LLC | N21 W2334G Ridgeview Pkwy W | | Waukesha | WI | Contract | Energy Contract - Amendment to master Natural Gas Agreement | $4,238.85 |
| National Envelope Corporation | Constellation NewEnergy - Gas Division, LLC | 9960 Corporate Campus Dr., Ste 2000 | | Louisville | KY | Contract | Energy Contract - Natural Gas Agency Agreement | $0.00 |
| National Envelope Corporation | Constellation NewEnergy - Gas Division, LLC | Attn: General Counsel or President | 12120 Port Grace Blvd | Las Vista | NE | Contract | Energy Contract - Transaction Confirmation FP15802893 | $0.00 |
| National Envelope Corporation | Constellation NewEnergy - Gas Division, LLC | 9960 Corporate Campus Dr., Ste 2000 | | Louisville | KY | Contract | Energy Contract - Transaction Confirmation re: Base Agreement # 27504; Transaction Confirmation # 27500 | $0.00 |
| National Envelope Corporation | Constellation NewEnergy - Gas Division, LLC | 1221 Lamar St., Suite 750 | | Houston | TX | Contract | Energy Contract - Electricity Supply Agreement | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | COUNTERPARTY ADDRESS ADDRESS LINE 1 | ADDRESS LINE 2 | CITY | STATE | CONTRACT /LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | Constellation NewEnergy Gas Division, LLC | N21 W2334G Ridgeview Pkwy W | | Waukesha | WI | Contract | Energy Contract - Gas Service Contract for Transportation Service | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Gas Division, LLC | Attn: General Counsel or President | 12120 Port Grace Blvd | Las Vista | NE | Contract | Energy Contract - Transaction Confirmation | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Gas Division, LLC | Attn: General Counsel or President | 12120 Port Grace Blvd | Las Vista | NE | Contract | Energy Contract - Transaction Confirmation | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Gas Division, LLC | Attn: General Counsel or President | 12120 Port Grace Blvd | Las Vista | NE | Contract | Energy Contract - Transaction Confirmation Contract #120-110489-001 | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Gas Division, LLC | Attn: General Counsel or President | 12120 Port Grace Blvd | Las Vista | NE | Contract | Energy Contract - Transaction Confirmation Contract# 120-110489-001 | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Inc. | 1221 Lamar St., Suite 750 | | Houston | TX | Contract | Energy Contract - Electricity Supply Agreement Fixed Price Solutions New York | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Inc. | Attn: General Counsel or President | PO BOX 840159 | Dallas | TX | Contract | Energy Contract - Electricity Supply Agreement -New England Fixed Price Solutions | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Inc. | Attn: General Counsel or President | PO BOX 840159 | Dallas | TX | Contract | Energy Contract - Exhibit A | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Inc. | 1221 Lamar St., Suite 750 | | Houston | TX | Contract | Energy Contract - Fixed Price Solutions Pricing Schedule | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Inc. | 1221 Lamar St., Suite 750 | | Houston | TX | Contract | Energy Contract - Fixed Price Solutions Pricing Schedule | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Inc. | 1221 Lamar St., Suite 750 | | Houston | TX | Contract | Energy Contract - Flexible Index Solutions Pricing Schedule | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Inc. | Attn: General Counsel or President | PO BOX 840159 | Dallas | TX | Contract | Energy Contract - Retail Trade Transactions ("RT") Confirmation | $0.00 |
| National Envelope Corporation | Constellation NewEnergy Inc. | 1301 McKinney Suite 200 | | Houston | TX | Contract | Master Electricity Supply Agreement | $490,327.92 |
| National Envelope Corporation | Consumer Powerline | 100 Congress Ave., Suite 2000 | | Austin | TX | Contract | Energy Contract - ERCOT System Client Agreement | $0.00 |
| National Envelope Corporation | Consumer Powerline | 17 State Street, 19th floor | | New York | NY | Contract | Energy Contract - PJM Client Agreement | $0.00 |
| National Envelope Corporation | Corporate Express | 4205 S 96th St, Attn: Strategic Sourcing | | Omaha | NE | Contract | Consent to Assignment and Amendment | $0.00 |
| National Envelope Corporation | Corporate Express | 4205 S 96th St, Attn: Strategic Sourcing | | Omaha | NE | Contract | Strategic Supplier Agreement | $0.00 |
| National Envelope Corporation | Corporate Express | 4205 S 96th St, Attn: Strategic Sourcing | | Omaha | NE | Contract | Strategic Supplier Memorandum of Understanding | $0.00 |
| National Envelope Corporation | Cpower | Attn: General Counsel or President | 17 State Street, #129 | New York | NY | Contract | Energy Contract - Master Service Agreement | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corp Williamhouse LLC | Cpower | 3570 Hamilton Blvd., Suite 102 | | Allentown | PA | Contract | Energy Contract - PJM RPM Program Client Agreement | $0.00 |
| National Envelope Corporation | Cpower | Attn: General Counsel or President | 17 State Street, #129 | New York | NY | Contract | Energy Contract - Statement of Work | $0.00 |
| National Envelope Corporation | Cpower | Attn: General Counsel or President | 17 State Street, #129 | New York | NY | Contract | Energy Contract - Statement of Work | $0.00 |
| National Envelope Corporation | Cpower | Attn: General Counsel or President | 17 State Street, #129 | New York | NY | Contract | Energy Contract - Statement of Work | $0.00 |
| National Envelope Corporation | Cpower | 17 State Street, Suite 1920 | | New York | NY | Contract | Master Services Agreement | $0.00 |
| National Envelope Corporation | Crown Credit | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Lease - Personal Property - Crown FC4010-40TT-188 | $0.00 |
| National Envelope Corporation | Crown Credit | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Lease - Personal Property - Crown Forklift FC4545-60TT-180 (40120838-1) | $0.00 |
| National Envelope Corporation | Crown Credit | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Lease - Personal Property - Crown PE4500-60 (40077835-1) | $0.00 |
| National Envelope Corporation | Crown Credit | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Lease - Personal Property - Crown, FC4545-60TT-180 | $0.00 |
| National Envelope Corporation | Crown Credit | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Lease - Personal Property - Crown, RR5210-35TT-198 | $0.00 |
| National Envelope Corporation | Crown Credit | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Lease - Personal Property - Lift Truck FC45100-50TT-188 | $0.00 |
| National Envelope Corporation | Crown Credit | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Lease - Personal Property - Lift Truck-Crown-20WRTL-102 (40079467-1) | $0.00 |
| National Envelope Corporation | Crown Credit | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Lease - Personal Property - Lift Truck-TUSK 1000CG8TT-197( 40112951-1) | $0.00 |
| National Envelope Corporation | Crown Credit | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Lease - Personal Property - Tusk 800CBH (40113754-1) | $0.00 |
| National Envelope Corporation | Crown Credit Company | Attn: General Counsel or President | 44 South Washington St. | New Bremen | OH | Lease | Master Lease Agreement | $0.00 |
| National Envelope Corporation | Datamax of Texas | PO BOX 2222 | | St Louis | MO | Lease | Lease - Personal Property - Lease Agreement | $642.98 |
| National Envelope Corporation | Datamax Office Systems | Attn: General Counsel or President | 6717 Waldemar Avenue | St. Louis | MO | Lease | Lease - Personal Property - Copier ir5075,ir3225, ir1025if | $0.00 |
| National Envelope Corporation | DCP Midstream | 370 17th Street, suite 2500 | | Denver | CO | Contract | Envelope Supply Agreement | $0.00 |
| National Envelope Corporation | Dennis Paper Company | Attn: President Or General Counsel | 910 Acorn Drive | Nashville | TN | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Desert Paper & Envelope Co | 2700 Girard Blvd, NE | | Albuquerque | NM | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Direct Mail Holding | 425 North Iris St | | Mt Pleasant | IA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | Domtar Distribution Group | 50 River Center Blvd. Suite 260 | | Covington | KY | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Double Envelope | 7702 Plantation Road | Attn: Jon Peyton | Roanoke | VA | Contract | Trade Partner Agreement | $2,574.00 |
| National Envelope Corporation | Dupli Graphics | 1 Dupli Park Dr | | Syracuse | NY | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Dupont | Attn: General Counsel or President | 1007 Market Street | Wilmington | DE | Contract | Cyrel Fast As You Need It Equipment Loan Agreement | $0.00 |
| National Envelope Corporation | Dupont | Attn: General Counsel or President | 1007 Market Street | Wilmington | DE | Contract | Supplier Contract - Sales Agreement # FP074 Addendum #3 | $0.00 |
| National Envelope Corporation | Duroflex Specialty Papers Inc (Cad) | Attn: President Or General Counsel | 6597 Kilimat Unit 1 | | | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Economy Paper Co Inc | Attn: President Or General Counsel | 1175 E Main Street | Rochester | NY | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Enernoc | 800 Howard St., Suite 400 | | San Francisco | CA | Contract | Energy Contract - Xcel Energy Peak Savings Sales and Services Agreement | $0.00 |
| National Envelope Corporation | ESKO Artwork | 219A Rittenhouse Circle | | Bristol | PA | Contract | Customer Support Service Contracts | $0.00 |
| National Envelope Corporation | ESKO Artwork | 219A Rittenhouse Circle | | Bristol | PA | Contract | Customer Support Service Contracts | $0.00 |
| National Envelope Corporation | Esko-Graphics, Inc. | 721 Crossroads Court | | Vandalia | OH | Contract | Equipment Covered Shown on Addendum A | $4,375.00 |
| National Envelope Corporation | EU Services | 649 N Horners Lane | | Rockwall | MD | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Express Scripts | One Express Way | | St Louis | MO | Contract | Pricing Agreement | $0.00 |
| National Envelope Corporation | FC Meyer Packaging | 108 Main St | | Norwalk | CT | Contract | Supplier Contract - Terms and Corporate Rebate | $0.00 |
| National Envelope Corporation | Federal Express | 2007 Corporate Avenue | | Memphis | TN | Contract | Agreement | $0.00 |
| National Envelope Corporation | FedEx | 3690 Hacks Cross Road, BLD I, 2nd Floor | | Memphis | TN | Contract | Amendment Contract No. 08-507-001 | $0.00 |
| National Envelope Corporation | FedEx Freight Systems | Attn: General Counsel or President | Renaissance Center | Memphis | TN | Contract | Terms and Conditions | $0.00 |
| National Envelope Corporation | Fidelity | Attn: General Counsel or President | 82 Devonshire St. | Boston | MA | Contract | Contract Number 30146732 Amendment 1 | $0.00 |
| National Envelope Corporation | Field Paper Co | 3950 D Street | | Omaha | NE | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Fine Paper Inc | 5620 Blessey St | | New Orleans | LA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Specialties Group LLC | First Citizens Bank & Trust Co | Attn: General Counsel or President | 239 Fayetteville Street Mall | Raleigh | NC | Contract | Amendment to Envelope Supply Agreement | $0.00 |
| Atlantic Envelope Co | First Date Corporation | 10825 Farnam Drive | | Omaha | NE | Contract | Business Forms Purchase Agreement | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | COUNTERPARTY ADDRESS ADDRESS LINE 1 | ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | First Data Corporation | 6200 S Quebec Street | | Greenwood Village | CO | Contract | Price Adementment | $0.00 |
| National Envelope Corporation | First-Citizens Bank | PO BOX 27131 | | Raleigh | NC | Contract | Envelope Supply Agreement | $0.00 |
| National Envelope Corporation | Fiserv Document Solutions | 5325 S. Moorland Road | | New Berlin | WI | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | FMR LLC (Fidelity) | 82 Devonshire Street | | Boston | MA | Contract | Master Print/Mail Agreement #30146732 | $0.00 |
| National Envelope Corporation | Frank Parsons Paper | Attn: President Or General Counsel | 1300 Mercedes Drive | Hanover | MD | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Gadge USA | 1979 Marcus Ave., Suite 218 | | Lake Success | NY | Contract | Supplier Contract - Extension of Sales Incentives | $0.00 |
| National Envelope Corporation | Gadge USA | 1979 Marcus Ave., Suite 218 | | Lake Success | NY | Contract | Supplier Contract - Sales Incentives: Regular and Supplemental | $0.00 |
| National Envelope Corporation | GE Money | 777 Lond Ridge Rd. Attn: Margaret Keane | | Stamford | CT | Contract | Master Service Agreement | $0.00 |
| National Envelope Corporation | Gecko Distribution | Attn: President Or General Counsel | 2487 S Gilbert Road #106-612 | Gilbert | AZ | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | GPO Department of the Treasury | 11836 Canon Blvd., | | Newport News | VA | Contract | Single Window Kerns (SWK) and Double Window Kerns (DWK) Program 5351-S | $0.00 |
| National Envelope Corporation | GPO Department of the Treasury | 11836 Canon Blvd., | | Newport News | VA | Contract | Window Envelopes for Four Treasury/MFS Centers Program 3356-S | $0.00 |
| National Envelope Corporation | GPO Social Security Administration | 36 H Street NW | | Washington | DC | Contract | Envelopes Program 234-S | $0.00 |
| National Envelope Corporation | Graphic Equipment & Supply | Attn: President Or General Counsel | Po Box 606 | Amarillo | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Grizzard/Tabs Direct | 1002 Texas Parkway | | Stafford | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Grossman Marketing | 30 Huntington Blvd | | Newton | MA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Grupo Pochteca | Corporativo | Manuel Reyes Veramendi No. 6 | | | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | HackerGroup | 1215 4th Avenue, suite 2100 | | Seattle | WA | Contract | Confidentiality and Nondisclosure Agreement | $0.00 |
| National Envelope Corporation | Hammond Greetings & Promotions LLC | 1192 E Draper Pkwy #200 | | Draper | UT | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Harold M. Pitman Company | 721 Union Boulevard | | Totowa | NJ | Contract | Consignment Inventory Stocking and Sales Agreement | $0.00 |
| National Envelope Corporation | Hartford Fire Insurance Company | Attn: General Counsel or President | One Hartford Plaza | Hartford | CT | Contract | Amendment No. 3 of Services Agreement dated July 1, 2005 | $0.00 |
| National Envelope Corporation | Hartford Fire Insurance Service Provider | Attn: General Counsel or President | One Hartford Plaza | Hartford | CT | Contract | Amendment No 2 to Services Agreement | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | Hartford Fire Insurance Service Provider | Attn: General Counsel or President | One Hartford Plaza | Hartford | CT | Contract | Amendment No. 1 to Service Agreement 07/01/07 | $0.00 |
| National Envelope Corporation | Hartford Fire Insurance Service Provider | Attn: General Counsel or President | One Hartford Plaza | Hartford | CT | Contract | Services Agreement | $0.00 |
| National Envelope Corporation | Henkel | 10 Finderne Ave | | Bridgewater | NJ | Contract | Supplier Contract - Adhesive Volume Purchase Agreement | $0.00 |
| National Envelope Corporation | Hudson Valley Paper | Attn: President Or General Counsel | 981 Broadway | Albany | NY | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | IBM | 4111 Northside Pkwy, NW | | Atlanta | GA | Lease | Lease - Personal Property - ValuePlan Lease Agreement | $113,983.08 |
| National Envelope Corporation | IBM | PO BOX 643600 | | Pittsburgh | PA | Contract | IBM Firm Order Letter | $0.00 |
| | IBM Credit LLC | Attn: General Counsel or President | North Castle Dr MS NCA-306 | Armonk | NY | Lease | Lease - Personal Property - Base Extension | $0.00 |
| | IBM Credit LLC | Attn: General Counsel or President | North Castle Dr MS NCA-306 | Armonk | NY | Lease | Lease - Personal Property - Iseries Computer and related equipment | $0.00 |
| National Envelope Corporation | IBM Credit LLC | 4111 Northside Pkwy, NW | | Atlanta | GA | Lease | Lease - Personal Property - ValuePlan Lease Agreement | $0.00 |
| National Envelope Corporation | IBM Credit LLC | 4111 Northside Pkwy, NW | | Atlanta | GA | Lease | Lease - Personal Property - ValuePlan Lease Agreement | $0.00 |
| | IBM Credit LLC | Attn: General Counsel or President | North Castle Dr MS NCA-306 | Armonk | NY | Lease | Leases - Personal Property | $0.00 |
| National Envelope Corporation | ICS | Attn: President Or General Counsel | 54 Middlesex Turnpike | Bedford | MA | Contract | ICS Software License, Service, and Maintenance Agreement | $0.00 |
| National Envelope Specialties Group LLC | Imaging Financial Services, Inc. | 100 Kings Highway S, Suite 2000 | | Rochester | NY | Lease | Lease - Personal Property - Lease Agreement | $0.00 |
| | Imaging Financial Svc, Inc (dba EKCC) | 100 Kings Highway South, Suite 2000 | | Rochester | NY | Lease | Lease - Personal Property - Magnus 800 System | $0.00 |
| National Envelope Corporation | ING Bank, FSB | 1 South Orange Street | | Wilmington | DE | Contract | Master Services Agreement | $0.00 |
| National Envelope Corporation | ING Bank, FSB | Attn: General Counsel or President | 802 Delaware Ave. | Wilmington | DE | Contract | SOW No 1 | $0.00 |
| National Envelope Corporation | ING Bank, FSB | Attn: General Counsel or President | 802 Delaware Ave. | Wilmington | DE | Contract | SOW No 2 | $0.00 |
| National Envelope Corporation | ING Bank, FSB | Attn: General Counsel or President | 802 Delaware Ave. | Wilmington | DE | Contract | SOW No 3 | $0.00 |
| National Envelope Corporation | Innerworkings | 600 West Chicago, suite 850 | | Chicago | IL | Contract | FSC Supplier Outsourcing Agreement | $0.00 |
| National Envelope Corporation | Inovis | 11720 Amber Park Drive | | Alpharetta | GA | Contract | Inovis Services Agreement | $1,500.00 |
| National Envelope Corporation | INX | 150 N Martingale Road, Suite 700 | | Schaumburg | IL | Contract | Corporate Ink Service | $0.00 |
| National Envelope Corporation | INX | Attn: President Or General Counsel | 1955 Lakeway Drive | Lewisville | TX | Contract | Supplier Contract - Ink Proposal for Ennis, Tx location | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | Iron Mountain Inc. | 1235 N. Union Bower | | Irving | TX | Contract | Iron Mountain Customer Agreement | $7,459.02 |
| National Envelope Corporation | Jackson Paper Co | Attn: President Or General Counsel | 4400-C Magnum Drive | Flowood | MS | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | JBM | 2850 Henkle Drive | | Lebanon | OH | Contract | Supplier Contract - Rebate Program | $0.00 |
| National Envelope Corporation of Texas | JC Penney | 6501 Legacy Dr | | Plano | TX | Contract | General Print Agreement | $0.00 |
| National Envelope Corporation | JD Edwards | 8055 E. Tufts Ave | | Denver | CO | Contract | Software License, Service and Maintenance Agreement | $0.00 |
| National Envelope Corporation | John H Harland Co | Attn: General Counsel or President | 2939 Miller Road | Decatur | GA | Contract | Supply Agreement | $0.00 |
| National Envelope Corporation | John H Harland Co | Attn: General Counsel or President | 2939 Miller Road | Decatur | GA | Contract | Supply Agreement Amendment | $0.00 |
| National Envelope Corporation | Jp Gasway | Attn: President Or General Counsel | P.O. Box 11700 | Cedar Rapids | IA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | JP Morgan Chase Bank | Attn: President Or General Counsel | 270 Park Avenue | New York | NY | Contract | Amendment No. 3 to Schedule One | $0.00 |
| National Envelope Corporation | JP Morgan Chase Bank | 1111 Polaris Parkway, Suite 1N | Attn: Angela Mosel - Contracts Management Team | Columbus | OH | Contract | Amendment One to Schedule One | $0.00 |
| National Envelope Corporation | JP Morgan Chase Bank | Attn: President Or General Counsel | 270 Park Avenue | New York | NY | Contract | Amendment One to schedule One | $0.00 |
| National Envelope Corporation | JP Morgan Chase Bank | Attn: President Or General Counsel | 270 Park Avenue | New York | NY | Contract | Amendment Two to Schedule One | $0.00 |
| Atlantic Envelope Company LLC | JP Morgan Chase Bank | 1 Bank One Plaza, IL 1-0479 | Attn: General Services | Chicago | IL | Contract | Master Procurement Agreement | $0.00 |
| National Envelope Corporation | JP Morgan Chase Bank | 1111 Polaris Pkwy, Suite 1N | | Columbus | OH | Contract | Master Services Agreement | $0.00 |
| National Envelope Corporation | JP Morgan Chase Bank | Attn: President Or General Counsel | 270 Park Avenue | New York | NY | Contract | Schedule for Commercial Print Services for Remit and Bangtail Envelopes CW306334 to the Master Services Agreement | $0.00 |
| National Envelope Corporation | JP Morgan Chase Bank | Attn: President Or General Counsel | 270 Park Avenue | New York | NY | Contract | Schedule One | $0.00 |
| National Envelope Corporation | Kodak | 401 Merritt 7 | | Norwalk | CO | Contract | Customer Lease Agreement | $0.00 |
| National Envelope Specialties Group LLC | Kodak | 401 Merritt 7 | | Norwalk | CT | Contract | Customer Agreement | $0.00 |
| National Envelope Corporation | Kubra | 5050 Tomken Rd | | Mississauga | ON | Contract | Envelope Supply Agreement | $0.00 |
| National Envelope Corporation | Lewis Paper | Attn: President Or General Counsel | 1400 S. Wolf Rd, Suite 100 | Wheeling | IL | Contract | Lewis Paper/City and County of Denver | $0.00 |
| National Envelope Corporation | Lewis Paper Place | 1400 S Wolf Road | | Wheeling | IL | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |

Page 9 of 14

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | Lindenmeyr Munroe | Three Manhattanville Rd | | Purchase | NY | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | M&M Associates, Inc | 301 Oxford Valley Rd., Suite 1305 | | Yardley | PA | Contract | Envelope Supply Agreement | $0.00 |
| National Envelope Corporation | Mac Paper | 3300 Phillips Highway | | Jacksonville | FL | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | MBNA Canada an Affiliate of Bank of America | 1600 James Naismith Drive | | Gloucester | ON | Contract | Statement of Work | $0.00 |
| National Envelope Corporation | MBNA Canada an Affiliate of Bank of America | 1600 James Naismith Drive | | Gloucester | ON | Contract | Statement of Work # CW206557 | $0.00 |
| National Envelope Corporation | Medco Health Solutions | 100 Parsons Pond Dr | | Franklin Lakes | NJ | Contract | Amendment No 3 to Agreement (#MR-6050) | $0.00 |
| National Envelope Corporation | Medco Health Solutions | 100 Parsons Pond Dr | | Franklin Lakes | NJ | Contract | Amendment No 4 to Agreement (#MR-6050) | $0.00 |
| National Envelope Corporation | Meyer Distribution Co | 1810 Summit Commerce Park | | Twinsburg | OH | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Midland Paper | 101 E Palatine Rd | | Wheeling | IL | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Millcraft paper Co. | 6800 Grant Ave | | Cleveland | OH | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Millcraft paper Co. | 6800 Grant Ave | | Cleveland | OH | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | MPC Printing | 317 Livvey Industrial Parkway | | Weymouth | MA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Multi-Plastics, INC | Attn: President Or General Counsel | 7770 North Central Drive | Lewis Center | OH | Contract | Supplier Contract - Corporate Rebate Chart | $0.00 |
| National Envelope Corporation | National Paper & Plastics, CO | 1100 Woodfield Rd | | Schaumburg | IL | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| Atlantic Envelope Company LLC | Nationwide Insurance | One Nationwide Plaza | | Columbus | OH | Contract | Master Services Agreement No 982896 | $0.00 |
| National Envelope Corporation | Neenah | 3460 Preston Ridge Road, Suite 600 | | Alpharetta | GA | Contract | Supplier Contract - 2009 Growth Incentive Program | $0.00 |
| National Envelope Corporation | New England Art | 10 Railroad St | | N. Abington | MA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Nicor Gas | P.O. Box 180 | | Aurora | IL | Contract | Energy Contract - Gas Service Contract for Transportation Service | $0.00 |
| National Envelope Corporation | Nicor Gas | P.O. Box 180 | | Aurora | IL | Contract | Energy Contract - Rider 25 Contract for Firm Transportation Service | $0.00 |
| National Envelope Corporation | NVEnergy | PO BOX 98910, MS#5 | | Las Vegas | NV | Contract | Amendment No. 1 to Service Agreement 07/01/07 | $0.00 |
| National Envelope Corporation | Olmsted Kirk | 2420 Butler St. | | Dallas | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Olmsted Kirk (Kubra) | 2420 Butler St | | Dallas | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | Omaha Paper Company | Attn: President Or General Counsel | 6936 L Street | Omaha | NE | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Oracle/JD Edwards | PO BOX 71028 | | Chicago | IL | Contract | Invoice | $0.00 |
| National Envelope Corporation | PaperlinX | 12310 E. Slauson Ave | | Santa Fe Springs | CA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Paperworks, Inc. | Attn: President Or General Counsel | 15477 Woodrow Wilson | Detroit | MI | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Paterson Papers | 730 Madison Ave | | Paterson | NJ | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | PG&E | Attn: President Or General Counsel | 77 Beale Street | San Francisco | CA | Contract | Contract # 4600017259 | $0.00 |
| National Envelope Corporation | PG&E | Attn: President Or General Counsel | 77 Beale Street | San Francisco | CA | Contract | Contract Change Order # 4600017259 | $0.00 |
| National Envelope Corporation | Pitman | Attn: President Or General Counsel | 721 Union Blvd. | Totowa | NJ | Contract | Supplier Contract - Pitman Partnership Proposal | $0.00 |
| National Envelope Corporation | Plastic Suppliers, Inc | 2887 Johnstown Rd. | | Columbus | OH | Contract | Supplier Contract - Rebate Schedule | $0.00 |
| National Envelope Specialties Group LLC | Powerline | 17 State Street, 19th floor | | New York | NY | Contract | Energy Contract - PJM System Client Agreement | $0.00 |
| National Envelope Corporation | Premier Paper & Packaging | Attn: President Or General Counsel | 1550 Boone Industrial Blvd | Columbia | MO | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Printing Papers Inc | Attn: Accounts Payable | P.O. Box 192716 | Little Rock | AR | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Puget Sound Envelope | 17965 N E 65th St | | Redmond | WA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Quantum Ink | 4651 Melton Ave | | Louisville | KY | Contract | Supplier Contract - Rebate Schedule | $0.00 |
| National Envelope Corporation | Quill/Medical Arts Press, Inc | One Scheller Road | | Lincolnshire | IL | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Rand-Whitney | 1 Agrand St | | Worcester | MA | Contract | Supplier Contract - Rebate Schedule | $0.00 |
| National Envelope Corporation | Raymond James & Assoc. | 880 Carillon Pkwy | | St Petersburg | FL | Contract | Envelope Supply Agreement | $0.00 |
| National Envelope Corporation | Redd Paper Company | Attn: President Or General Counsel | 3851 Center Loop | Orlando | FL | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Regions Financial Corp | 250 Riverchase Prky E., Suite 400 | | Birmingham | AL | Contract | Master Agreement | $0.00 |
| National Envelope Corporation | Regions Financial Corp | 1900 5th Avenue North | | Birmingham | AL | Contract | Statement of Work for Envelope Program | $0.00 |
| National Envelope Corporation | Reynolds Sales, Inc. / Asel Art Supply | 300 N. Bryant, Ste. 116 | | Midlothian | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Rock-Tenn Company | 329 Industrial Road | | Harrison | AR | Contract | Supplier Contract - Rebate Schedule | $0.00 |
| National Envelope Corporation | Sandia Paper Co Inc | Attn: President Or General Counsel | 5801 Jefferson Ne | Albuquerque | NM | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT /LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | SBC Services | 2600 Camino Ramon, 4E450DD, ATTN: Senior Contract Manager | | San Ramon | CA | Contract | Amendment No. 03032467-01 | $0.00 |
| Atlantic Envelope Co | SBC Services | 2600 Camino Ramon, 4E450DD, ATTN: Senior Contract Manager | | San Ramon | CA | Contract | Material and Services Agreement # 03032467 | $0.00 |
| National Envelope Corporation | Sears Canada | 222 Jarvis Street | | Toronto | ON | Contract | Universal Terms and Condition for Services and Products Not for Resale | $0.00 |
| National Envelope Corporation | Shaughnessy - Kniep-Hawe Paper Co | 4316 Duncan Ave. | | St. Louis | MO | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Southern California Edison | 705 N Baldwin Park Blvd | | City of Industry | CA | Contract | Energy Contract - Contract for Interruptible Service | $0.00 |
| National Envelope Corporation | Southern California Edison | 705 N Baldwin Park Blvd | | City of Industry | CA | Contract | Energy Contract - Contract for Interruptible Service | $0.00 |
| National Envelope Corporation | Southern California Edison Company | PO Box 1800 | | Rosemead | CA | Contract | Energy Contract - Contract for Interruptible Service | $0.00 |
| National Envelope Corporation | Southern California Edison Company | PO Box 1800 | | Rosemead | CA | Contract | Energy Contract - Contract for Interruptible Service | $0.00 |
| National Envelope Corporation | Spectrum Paper Co Inc | Attn: President Or General Counsel | 27 Concord Street | El Paso | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Sprague Energy Corp | Two International Drive, Suite 200 | | Portsmouth | NH | Contract | Energy Contract - Natural Gas Pricing Confirmation | $0.00 |
| National Envelope Corporation | Sprague Energy Corp | Two International Drive, Suite 200 | | Portsmouth | NH | Contract | Energy Contract - Natural Gas Pricing Confirmation | $0.00 |
| National Envelope Corporation | Sprague Energy Corp | Two International Drive, Suite 200 | | Portsmouth | NH | Contract | Energy Contract - Natural Gas Sales Agreement | $0.00 |
| National Envelope Corporation | Sprague Energy Corp | Two International Drive, Suite 200 | | Portsmouth | NH | Contract | Energy Contract - Natural Gas Transaction Confirmation | $23,066.14 |
| National Envelope Corporation | Sprague Energy Corp | Two International Drive, Suite 200 | | Portsmouth | NH | Contract | Energy Contract - Natural Gas Transaction Confirmation | $0.00 |
| National Envelope Corporation | Sprague Energy Corp | Two International Drive, Suite 200 | | Portsmouth | NH | Contract | Energy Contract - Natural Gas Transaction Confirmation | $0.00 |
| National Envelope Corporation | Sprague Energy Corp | Two International Drive, Suite 200 | | Portsmouth | NH | Contract | Energy Contract - Natural Gas Transaction Confirmation | $0.00 |
| National Envelope Corporation | Standard Register Company | 600 Albany Street | | Dayton | OH | Contract | Subcontractor Confidentiality, Indemnification, Intellectual Property and Non-Competition Agreement | $0.00 |
| National Envelope Corporation | Staples | 4205 S 96th St, Attn: Strategic Sourcing | | Omaha | NE | Contract | Amendment to Strategic Supplier Agreement | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | Staples | 4205 South 96th Street | | Omaha | NE | Contract | Amendment to Strategic Supplier Agreement | $0.00 |
| National Envelope Corporation | Steen-Macek Paper Co | Attn: President Or General Counsel | 3224 Market Street | Green Bay | WI | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Sterling Paper | Attn Accounts Payable | 1845 Progress Ave | Columbus | OH | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Strickland Paper | 481 Republic Circle | | Birmingham | AL | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | SunTrust | 303 Peachtree Street NE, 8th floor Plaza, GA-ATL-4087 | | Atlanta | GA | Contract | General Procurement Agreement | $0.00 |
| National Envelope Corporation | Tayloe Paper Company-Tulsa | Attn: President Or General Counsel | 6717 East 13Th Street | Tulsa | OK | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Texas NICUSA LLC | 301 Congress Abe., Suite 400 | | Austin | TX | Contract | TXSmartbuy Technology & Administrative Fee Agreement | $0.00 |
| National Envelope Corporation | The Kern Organization | 20955 Warner Center lane | | Woodland Hills | CA | Contract | Draft Services Agreement | $0.00 |
| National Envelope Corporation | Timber Creek Paper-Wichita | Attn: President Or General Counsel | 316 N Cleveland | Wichita | KS | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Travelers Indemnity Co | One Tower Square, ATTN: Contracts Administrator 3PB | | Hartford | CT | Contract | Master Product Purchase Agreement | $0.00 |
| National Envelope Corporation | Unisource Canada | 50 East Wilmont St | | Richmond Hill | ON | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Unisource Worldwide | 6600 Bovernors Lake Pkwy | | Norcross | GA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | United Group | 76 8th Ave., 6th Floor | | New York | NY | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | United States Postal Service | 475 L Enfant Plaza SW, Room 4131 | | Washington | DC | Contract | Amendment of Solicitation/Modification of Contract | $0.00 |
| National Envelope Corporation | United States Postal Service | 475 L Enfant Plaza SW, Room 4131 | | Washington | DC | Contract | Award Data Sheet- Contract 2AP-CON-07-B-0006 | $0.00 |
| National Envelope Corporation | United States Postal Service | 475 L Enfant Plaza SW, Room 4131 | | Washington | DC | Contract | Order/Solicitation/Offer/Award | $0.00 |
| National Envelope Corporation | UPR Inc | Attn: President Or General Counsel | Po Box 3906 | Tustin | CA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Verizon | 110 East Monroe | | Bloomington | IL | Contract | Agreement for Verizon Public Communications Services | $7,335.47 |
| National Envelope Corporation | Verizon Business | | | | | Contract | Ethernet Access | $18,469.43 |
| National Envelope Corporation | Verizon Business Network Services Inc | | | | | Contract | Amendment to Verizon Business Service Agreement | $0.00 |
| National Envelope Corporation | Vertis Inc | 250 West Pratt St., ATTN: Steve Hofler | | Baltimore | MD | Contract | Envelope Supply Agreement | $0.00 |

| DEBTOR | CONTRACT COUNTERPARTY NAME | ADDRESS LINE 1 | COUNTERPARTY ADDRESS ADDRESS LINE 2 | CITY | STATE | CONTRACT / LEASE | CONTRACT DESCRIPTION | CURE |
|---|---|---|---|---|---|---|---|---|
| National Envelope Corporation | VF Corp | 105 Corporate Center Blvd | | Greensboro | NC | Contract | VF Corp Bidder Agreement Event# 954554 | $0.00 |
| National Envelope Corporation | Vonage Marketing Inc | 23 Main Street | | Holmdel | NJ | Contract | Agreement for Professional Services | $0.00 |
| National Envelope Corporation | Vonage Marketing Inc | 23 Main Street | | Holmdel | NJ | Contract | Agreement for Professional Services Statement of Work | $0.00 |
| National Envelope Corporation | Wachovia Corp | 1525 West W. T. Harris Blvd., ATTN: Carol Levitzki | | Charlotte | NC | Contract | Amendment One | $0.00 |
| National Envelope Corporation | Wachovia Corp | 1525 West W. T. Harris Blvd., ATTN: Carol Levitzki | | Charlotte | NC | Contract | Envelope Agreement | $0.00 |
| National Envelope Corporation | Warden Paper Co. | PO Box 1162 | | Great Falls | MT | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | WebCraft LLC | Attn: General Counsel or President | 2015 Industrial Pkwy | Salisbury | MD | Contract | Privacy Agreement | $0.00 |
| National Envelope Corporation | Wells Fargo (successor in interest to Wachovia Corporation) | 420 Montgomery Street | | San Francisco | CA | Contract | Amendment | $0.00 |
| National Envelope Corporation | West Coast Paper Co | 23200 64th Ave. South | | Kent | WA | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Western Paper Co | 2700 South 800 West | | Salt Lake City | UT | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Western Paper Co | 3709 E. Randol Mills Rd., #300 | | Arlington | TX | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Wilcox Paper Co | 2301 Traffic Street NE | | Minneapolis | MN | Contract | Wholesale Customer Contract - Rebate Form | $0.00 |
| National Envelope Corporation | Wilen Group | 3333 SW 15th Street | | Deerfield Beach | FL | Contract | Confidentiality, Non Disclosure, Non Circumvention & Solicitation Agreement | $0.00 |

Page 14 of 14

## Exhibit C

Form of Transition Services Agreement

(see attached)

Exhibit C–1

## TRANSITION SERVICES AGREEMENT

THIS TRANSITION SERVICES AGREEMENT (this "Agreement") is entered into as of _____, 2010, by and among NEV Holdings, LLC, a limited liability company formed under the laws of the State of Delaware ("Buyer"), National Envelope Corporation, a corporation formed under the laws of the State of New York ("Seller Representative"), and the Subsidiaries of Seller Representative indentified on Annex A hereto (together with Seller Representative, "Seller Service Providers"). Buyer and Seller Service Providers are referred to herein individually as a "Party" and collectively as the "Parties". Capitalized terms used but not defined herein have the meanings given to such terms in that certain Asset Purchase Agreement (the "Purchase Agreement"), dated as of July 8, 2010, by and among (a) Buyer and (b) NEC Holdings Corp., a corporation formed under the laws of the State of Delaware ("NEC Holdings"), Seller Service Providers and the other Subsidiaries of Seller Representative indentified on Annex A thereto (collectively with NEC Holdings and Seller Service Providers, "Sellers").

## RECITALS

WHEREAS, pursuant to the Purchase Agreement, Buyer purchased from Sellers the Acquired Assets; and

WHEREAS, Buyer and Seller Service Providers have agreed to provide certain Services (as defined below) to each other as described herein following the Closing, pursuant to and in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I

### SERVICES

1.1 Services.

      (a)    Subject to the terms and conditions of this Agreement, from and after the Closing Date and until the termination or expiration of this Agreement pursuant to Article III below, (i) Seller Service Providers shall provide, and, as applicable, use commercially reasonable efforts to cause their Affiliates and any third parties to provide, to Buyer, the Services described on Exhibit A[1] attached hereto (the "Sellers Services"), in accordance with the terms and conditions and for the periods set forth therein and herein, and (ii) Buyer shall provide, and, as applicable, use commercially reasonable efforts to cause its Affiliates and any third parties to provide, to Seller Service Providers, the Services described on Exhibit B attached hereto (the

---

[1] Exhibit A and Exhibit B contain general descriptions of the Sellers Service and the Buyer Services to be provided pursuant to this Agreement. Between signing and the closing contemplated by the APA, the Parties will develop a more detailed description of the services for each exhibit and such exhibits will be mutually agreed upon by the Parties prior to the execution of this Agreement, but will not impact the obligations of the Parties to perform under this Agreement.

"Buyer Services" and, together with the Sellers Services, the "Services"), in accordance with the terms and conditions and for the periods set forth therein and herein. Each of the foregoing time periods shall be referred to herein as a "Transition Period." The term "Service Recipient" shall refer to Buyer, in the case of Sellers Services, and the applicable Seller Service Provider(s), in the case of Buyer Services, and the term "Service Provider" shall refer to the applicable Seller Service Provider(s), in the case of Sellers Services, and Buyer, in the case of the Buyer Services.

(b)     Each Party agrees to provide commercially reasonable assistance to the other Parties, their Affiliates and any third parties selected by such other Parties to provide the Services in a manner designed (to the extent reasonably possible) to minimize disruptions to either of Seller Service Providers' or Buyer's respective business operations.

(c)     Each Party shall use its commercially reasonable efforts to take all such actions as may be reasonably necessary to enable the other Parties to provide the Services in a timely manner, including, without limitation, providing access, necessary information and specific authorizations and approvals to the other Parties.

(d)     Each Party shall, and shall use commercially reasonable efforts to cause its Affiliates and any third parties to, observe and comply in all material respects with any and all applicable laws and any confidentiality, security, privacy or other policies of Buyer and Seller Service Providers, as applicable (to the extent disclosed to such Party), relating to the performance of the Services.

(e)     Each Party shall use its commercially reasonable efforts to assume responsibility for (or engage a third party to assume responsibility for) providing the Services as soon as reasonably practicable following the date hereof.

1.2 Service Coordinators. Each of Seller Representative (on behalf of Seller Service Providers) and Buyer shall nominate a representative to act as the primary contact person with respect to the provision of the Services (each such person, a "Service Coordinator"). The Service Coordinators shall be managerial level employees of Buyer and Seller Representative, as applicable. The initial Service Coordinators shall be _____ for Seller Service Providers and _____ for Buyer, and each of their respective phone, facsimile numbers and email addresses is set forth on Schedule 1.2 attached hereto. Each of Seller Representative and Buyer may, in its sole discretion, change its Service Coordinator from time to time by providing written notice to the other Party of such change and the relevant contact information for such new Service Coordinator at least five (5) Business Days prior to such change taking effect. Unless Seller Representative (on behalf of Seller Service Providers) and Buyer otherwise agree in writing, all material communications relating to the Services or this Agreement, including dispute notices, notices regarding transition of Services, service level failures and service disruptions, shall be directed to the Service Coordinators in accordance with Section 5.6.

1.3 Personnel. In providing the Services, each Party shall use its commercially reasonable efforts to make available to the applicable Service Recipient during regular business hours the personnel of the Party providing the applicable Services as necessary to provide such Services including, without limitation, any personnel specifically set forth on Exhibit A or

Exhibit B attached hereto with respect to such Service (but only to the extent such personnel remain employed by the applicable Party). In addition, Seller Service Providers shall use, to the extent reasonably practicable, the same employees and/or outside vendors and other third party providers who provided such Services to the Business prior to the date of this Agreement. Each Party shall remain solely responsible for the proper performance of all Persons engaged by such Party to perform the Services, and, except as provided in Section 4.2, no Service Recipient shall be liable for the actions or inactions of any Persons engaged by the Service Provider to render the Services except to the extent that such Liability arises out of the gross negligence, fraud, bad faith or willful misconduct of such Service Recipient or out of actions or inactions taken at the explicit instruction of such Service Recipient.

1.4 <u>Additional Services</u>. The Services detailed in this Agreement and the related Exhibits may not include all of the services that Buyer or Seller Service Providers will ultimately require following the date of this Agreement. In the event and to the extent additional services are required by Buyer or by Seller Service Providers which have not been addressed herein, including, without limitation, with respect to Buyer Services, software, technology, technical services and finance, administration or support functions (collectively, the "<u>Additional Services</u>"), Seller Representative (on behalf of Seller Service Providers) and Buyer shall work together in good faith to provide for the Additional Services, in accordance with such reasonable terms upon which Seller Representative (on behalf of Seller Service Providers) and Buyer shall agree in writing, in a commercially reasonable manner designed to support the Party needing such Additional Services until such Party is able to perform such services for itself or can engage a third party vendor to provide such services, which time shall be treated, for the purposes of this Agreement, as a Transition Period. Any Additional Services agreed to by the Parties in accordance with this Section 1.4 shall be deemed to constitute Sellers Services or Buyer Services, as applicable, and shall be governed by the terms of this Agreement.

1.5 <u>Excluded Services</u>. Except as otherwise specified in <u>Exhibit A</u> or <u>Exhibit B</u> attached hereto, as applicable, no Party shall be required to provide to any other Party under this Agreement any (a) legal or Tax services, other than cooperation with respect to any requests for information related to legal or Tax issues, (b) financial reporting services for lending or regulatory purposes, other than cooperation with respect to any requests for information related to financial reporting issues or (c) budget-related services.

## ARTICLE II

## QUALITY OF SERVICES; SPECIFIC PERFORMANCE; EXCLUSIVE REMEDY

2.1 <u>Quality of Services.</u>

(a)     Each Party represents severally, but not jointly, that the Services will be performed in a timely, efficient, workmanlike and commercially reasonable manner in all material respects and in a fashion intended to support the business of the other Party as such business is conducted as of the date hereof, and, with respect to specific Services, in accordance with the standards, if any, set forth in <u>Exhibit A</u> or <u>Exhibit B</u> attached hereto, as applicable, with respect to such Services. Without limiting the generality of the foregoing, to the extent reasonably practicable and, in the case of Seller Service Providers, taking into account the

3

changes in such Parties' business as a result of the Chapter 11 Cases and the consummation of transactions contemplated by the Purchase Agreement, the Services will be provided at the same general level of service, with the same degree of care (which in no event may be less than reasonable care), with similar response times, to the same extent, and in a manner similar in all material respects to the manner in which such Services historically have been provided to or by each Party's business, as applicable, unless a higher standard for any particular Service is set forth in Exhibit A or Exhibit B attached hereto, as applicable.

(b)  To the extent reasonably practicable, each of Seller Service Providers and Buyer agrees to pass through to the other Party any warranties provided by third party service providers or subcontractors employed to provide the Services.

(c)  In the event of an alleged breach, default or nonperformance of any obligation under this Agreement by Seller Service Providers or Buyer, the applicable Service Coordinator shall provide prompt written notice to the allegedly breaching, defaulting or nonperforming Party setting forth in reasonable detail the nature and extent of the alleged breach, default or nonperformance. The allegedly breaching, defaulting or nonperforming Party will then have a period of five (5) Business Days (or such other period as may be set forth in Exhibit A or Exhibit B attached hereto, as applicable) in which to initiate actions reasonably designed to cure such alleged breach, default or nonperformance, and all such deficiencies shall, in any case, be cured within thirty (30) days (or such other period as may be set forth in Exhibit A or Exhibit B, as applicable) following receipt by the allegedly breaching, defaulting or nonperforming Party of formal notice thereof; provided, however, that if the alleged breach, default or nonperformance relates to Buyer's failure to make any payment (other than nonpayment of the Payroll Cost (as defined on Exhibit A)) under this Agreement after Sellers' Service Coordinator provides written notice of such failure to pay to Buyer, Buyer will then have a period of ten (10) Business Days to cure all such deficiencies; provided, further, however, that if the alleged breach, default or nonperformance relates to Buyer's failure to pay the Payroll Cost, Buyer will not be entitled to notice of such deficiency and must cure such deficiency by the close of business on the Wednesday of the week the payment of the Payroll Cost is due.

2.2 Specific Performance. The Parties acknowledge and agree that the other Parties may be damaged irreparably in the event any provision of this Agreement is not performed in accordance with its specific terms or otherwise breached, so that, in addition to any other remedy that any Party may have under law or equity (subject to Section 2.3), a Party shall be entitled to seek injunctive relief to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions hereof.

2.3 Exclusive Remedy. EXCEPT AS OTHERWISE EXPLICITLY PROVIDED IN THIS AGREEMENT, TERMINATION PURSUANT TO SECTION 3.2 AND SPECIFIC PERFORMANCE TO THE EXTENT AVAILABLE UNDER SECTION 2.2 SHALL BE THE SOLE AND EXCLUSIVE REMEDIES OF ANY PARTY AND ITS AFFILIATES AND THEIR RESPECTIVE REPRESENTATIVES FOR ANY BREACH, DEFAULT OR NONPERFORMANCE OF THIS AGREEMENT. FOR THE AVOIDANCE OF DOUBT, EXCEPT AS OTHERWISE EXPLICITLY PROVIDED IN THIS AGREEMENT, NO MONETARY REMEDIES SHALL BE AVAILABLE TO ANY PARTY FOR ANY BREACH, DEFAULT OR NONPERFORMANCE OF THIS AGREEMENT.

## ARTICLE III

### TERM AND TERMINATION

3.1 <u>Term</u>. Unless earlier terminated pursuant to <u>Section 3.2</u>, with respect to each of the Services (or any portion thereof), the term of this Agreement as related thereto will be for a period commencing as of the Closing Date and continuing until the earlier of the date on which (a) Seller Service Providers complete their performance of all of their obligations under <u>Exhibit A</u> attached hereto or Buyer completes its performance of all of its obligations under <u>Exhibit B</u> attached hereto, in each case, with respect to the applicable Services (or portion thereof), (b) the Transition Period during which the applicable Services (or portion thereof) are to be provided, as set forth in <u>Exhibit A</u> or <u>Exhibit B</u> attached hereto, as applicable, expires and (c) January 5, 2011. Notwithstanding any termination or expiration of the Services hereunder, Buyer's obligation with respect to payment of Liabilities in connection with the use, administration and operation of each Facility (as defined below) shall continue until the effective date of Sellers' final disposition, through assumption or rejection under Section 365 of the Bankruptcy Code, of the agreement under which such Liability arises so long as (i) Sellers are complying with Sections 2(i)(v) and 2(i)(vi) of the Purchase Agreement with respect to Sellers' performance under such agreements and (ii) upon receipt of written notice from Buyer that any such agreements are no longer necessary, Sellers promptly take all necessary actions to reject such agreements under Section 365 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that Buyer shall, subject to <u>Exhibit A</u>, (A) be liable only for such Liabilities as would not have been incurred by Sellers on the Closing Date had they rejected all such agreements as of such date and (B) be liable only for Liabilities that are administrative expenses in the Chapter 11 Cases related to, arising out of or resulting from this Agreement. This Agreement shall automatically terminate upon the last to occur of (1) Seller's final disposition, through assumption or rejection under Section 365 of the Bankruptcy Code, of all agreements relating to the Sellers Services, and (2) expiration or termination of all Services to be performed hereunder.

3.2 <u>Termination</u>.

(a)    Except as otherwise specified in <u>Exhibit A</u> or <u>Exhibit B</u> attached hereto, any or all of the Services may be terminated by the Service Recipient, in its sole discretion, at any time by furnishing three (3) Business Days' prior written notice to the applicable Service Provider of the Service Recipient's intention to terminate the applicable Services, which written notice shall specify (i) the Services (or portion thereof) being terminated and (ii) the date on which the Services (or portion thereof) shall be terminated; <u>provided</u>, <u>however</u>, that, notwithstanding <u>Section 2.3</u>, if the Service Recipient is Buyer, Buyer shall be responsible for the payment of any and all charges and fees owed to the Service Provider under this Agreement for Services rendered prior to the later of (A) the effective date of the termination and (B) the effective date of the rejection of the agreement, including Leases, under which such Services were rendered.

(b)    Buyer may immediately terminate this Agreement with respect to any Seller Service Provider by written notice to such Seller Service Provider without any prior notice if such Seller Service Provider materially breaches any of its obligations hereunder and such breach remains uncured for the applicable period specified in <u>Section 2.1(c)</u>.

(c)     Any Seller Service Provider may immediately terminate its obligations under this Agreement by written notice to Buyer without any prior notice upon the occurrence of any of the following events:

(i)     Buyer materially breaches any of its obligations hereunder and such breach remains uncured for the applicable period specified in Section 2.1(c);

(ii)     the date on which such Seller Service Provider has completed its performance of all of its obligations specified in Exhibit A;

(iii)     the date on which such Seller Service Provider incurs any Liability in excess of the funds immediately available in the Transition Account (as defined below) and such deficiency remains uncured for the applicable period specified in Section 2.1(c);

(iv)     any amount or fee payable under this Agreement by Buyer remains unpaid by Buyer for the applicable period specified in Section 2.1(c);

(v)     the appropriate personnel to perform such Seller Service Provider's Sellers Services are no longer employed by such Seller Service Provider; or

(vi)     Buyer does not provide adequate Buyer Services to support the provision by such Seller Service Provider of the Sellers Services and such deficiency remains uncured by Buyer for the applicable period specified in Section 2.1(c);

provided, however, any such termination shall not terminate the obligations of any other Seller Service Provider. Upon any termination of this Agreement or any Seller Services by a Seller Service Provider pursuant to this Section 3.2(c), such Seller Service Provider shall be permitted to immediately effect a final disposition, through assumption or rejection under Section 365 of the Bankruptcy Code, of all agreements relating to the terminated Sellers Services unless such agreements are otherwise related to or necessary for the provision of any other Seller Services.

3.3 Survival of Certain Obligations.  Sections 2.2 and 2.3, this Article III and Articles IV and V shall survive the termination or expiration of this Agreement.

## ARTICLE IV

## CONSIDERATION; PREPAYMENT; TAXES

4.1 Consideration for Buyer Services.  The sole consideration for Buyer providing the Buyer Services shall be the provision of the Sellers Services by Seller Service Providers to Buyer.  For the avoidance of doubt, the Buyer Services shall be provided at no cost and expense to all Seller Service Providers.

4.2 Payment for Seller Services.  Buyer will pay directly, or reimburse the applicable Seller Service Provider for, any and all fees, costs, expenses and other Liabilities incurred by Seller Service Providers in the provision of the Seller Services in accordance with Exhibit A.

(a)    To the extent not included in the direct payments or reimbursements made by Buyer pursuant to the foregoing, Buyer shall reimburse Sellers Service Providers' or pay directly to the appropriate Governmental Entity, on Seller Service Providers' behalf out of Buyer's own funds: (i) any applicable sales, use, gross receipts, value added or similar tax that is imposed as a result of, or measured by, any Seller Services rendered hereunder unless covered by an exemption certificate and (ii) any other Taxes (including property taxes) imposed on the applicable Seller Service Provider.

(b)    Upon payment of any amounts pursuant to this Section 4.2, Buyer shall furnish the applicable Seller Service Provider with reasonable documentary evidence of such payment.

(c)    For the avoidance of doubt, for all purposes under this Agreement, Buyer shall, subject to Exhibit A, (A) be liable only for such Liabilities as would not have been incurred by Sellers on the Closing Date had they terminated all Employees (as defined below) and rejected all agreements necessary for the provision of Seller Services as of such date, and (B) be liable for Liabilities that are administrative expenses in the Chapter 11 Cases related to, arising out of or resulting from this Agreement.

4.3 Transition Escrow Account.

(a)    Buyer deposited into a segregated escrow account ("Transition Account") one million dollars ($1,000,000), which amount shall be held in escrow pursuant to the Transition Escrow Agreement, dated as of the date hereof, by and between Buyer and Seller Representative until the expiration or termination of this Agreement. In the event that Buyer fails to pay when due any Liability required to be paid by Buyer pursuant to this Agreement, upon three (3) days' prior written notice to Buyer, Seller Service Providers shall be entitled to direct the escrow agent to pay such unpaid amounts using the funds in the Transition Account and Seller Service Providers shall notify Buyer of any such payment concurrently with the direction to the escrow agent to make such payment. Buyer shall replenish the Transition Account to its original balance within three (3) days' following the payment of any Liability from the Transition Account.

(b)    With respect to any fees, costs, expenses and other Liabilities to be incurred by Seller Service Providers in the provision of the Seller Services for which Buyer will reimburse the applicable Seller Service Provider, except as otherwise contemplated by Exhibit A, no later than ten (10) Business Days prior to the date on which such fees, costs, expenses or other Liabilities are due and payable, Buyer shall deposit such amounts in the Transition Account and Seller Service Providers shall promptly direct the escrow agent to pay such amounts to the applicable parties.

(c)    In no event shall any Seller Service Provider use amounts in the Transition Account for any purpose, or direct the escrow agent to use amounts in the Transition Account, other than for the provision of Sellers Services or the payment of any Liability related thereto.

(d)    In no event shall Buyer have any ability to direct the escrow agent to disburse funds from the Transition Account other than in accordance with the following sentence

unless, in the case of Section 4.3(b), Seller Service Providers have not directed the escrow agent to disburse the funds for the purposes such funds were deposited in the Transition Account. If any amounts remain in the Transition Account after the termination of this agreement in accordance with Sections 3.1 or 3.2 and, if applicable, the payment of all Buyer Liabilities pursuant to this Section 4.3, such amounts shall be returned by the escrow agent to Buyer.

4.4 <u>Wind-Down Account</u>.  Pursuant to Section 2(f)(ii)(I) of the Purchase Agreement, Buyer delivered the Wind-Down Amount into a segregated account designated in writing by the Seller Representative (the "<u>Wind-Down Account</u>"), which amount shall be held until the later of (a) the expiration or termination of this Agreement and (b) the payment of all Wind-Down Expenses (as defined below) incurred prior to the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or the effective date of a plan of reorganization or liquidation in the Chapter 11 Cases. Seller shall be permitted to disburse funds from the Wind-Down Account to pay all wind-down expenses of the Sellers (<u>Exhibit C</u> provides a budget of such wind-down expenses (the "<u>Wind-Down Expenses</u>")), including the fees and expenses of the professionals in the Chapter 11 Cases and including expenses related to environmental Liabilities associated with the Sellers' real property located in Union, New Jersey. Buyer shall have no ability to direct the Seller Representative to disburse funds from the Wind-Down Account nor shall any funds be disbursable to Buyer. If any amounts remain in the Wind-Down Account after the payment of all Wind-Down Expenses, such amounts shall remain property of Seller Representative and may be used for general corporate purposes.

4.5 <u>Indemnity</u>.  Notwithstanding <u>Section 2.3</u>, Buyer shall indemnify and hold harmless each Seller Service Provider, its Affiliates and each of their respective Representatives from and against any Liabilities incurred by any Seller Service Providers, their Affiliates and their respective Representatives related to, arising out of or resulting from: (i) this Agreement or the provision of any Sellers Services, <u>provided</u>, <u>however</u>, that this <u>Section 4.5(i)</u> shall, subject to <u>Exhibit A</u>, (A) only apply to such Liabilities as would not have been incurred by Sellers on the Closing Date had they terminated all Employees and rejected all agreements necessary for the provision of Seller Services as of such date and (B) only apply to such Liabilities that are administrative expenses in the Chapter 11 Cases related to, arising out of or resulting from this Agreement, and (ii) the breach of Buyer of its obligations hereunder or from the gross negligence, fraud, bad faith or willful misconduct of Buyer, its Affiliates, their respective Representatives or any other Person engaged by Buyer or Seller Service Providers in the performance of the obligations hereunder.

## ARTICLE V

## MISCELLANEOUS

5.1 <u>No Representations or Warranties</u>.

    (a)    THE PARTIES MAKE NO EXPRESS REPRESENTATIONS OR WARRANTIES EXCEPT THOSE EXPRESSLY STATED IN THE PURCHASE AGREEMENT, THIS AGREEMENT AND THE SCHEDULES HERETO.

(b)    EXCEPT FOR THOSE REPRESENTATIONS AND WARRANTIES EXPRESSLY STATED IN THE PURCHASE AGREEMENT, THIS AGREEMENT AND THE SCHEDULES HERETO, EACH PARTY EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, REPRESENTATIONS AND CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, TO THE FULL EXTENT PERMISSIBLE, INCLUDING, WITHOUT LIMITATION, AVAILABILITY, ACCURACY, COMPLETENESS, CORRECTNESS, RELIABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT WITH RESPECT TO ANY OF THE SERVICES, GOODS OR PRODUCTS FURNISHED PURSUANT TO THIS AGREEMENT.

5.2 Confidentiality. From and after the Closing Date, neither Seller Service Providers nor Buyer, nor any of their respective Affiliates or Representatives, shall use, divulge, furnish or make accessible to anyone (other than such other Affiliates, Representatives and service providers who are required to know in order to provide the Services hereunder), any proprietary, non-public or other confidential information of Buyer, in the case of Seller Service Providers, or any Seller Service Provider, in the case of Buyer, in each case, provided to it by such other Party in connection with the provision of Services hereunder (including, without limitation, any information known to any Seller Service Provider or Buyer concerning such other Party's business), except to the extent that disclosure of such information is required by applicable law (in which case Buyer or the Seller Representative (on behalf of Seller Service Providers), as the case may be, shall use commercially reasonable efforts to advise the Seller Representative or Buyer, as the case may be, prior to making such disclosure to provide any Seller Service Provider or Buyer, as the case may be, a reasonable opportunity to review the proposed disclosure and to attempt to obtain a protective order or other assurance that confidential treatment will be accorded such confidential information). Each Seller Service Provider shall use its reasonable best efforts to cooperate with Buyer, and Buyer shall use its reasonable best efforts to cooperate with each Seller Service Provider, in each case, in preserving such proprietary or confidential aspects of such other Party's business.

5.3 Work Product. If any Party develops, invents, obtains or creates any data, information, records, content, copyrightable works or other intellectual property that constitute, cover or are embedded in any deliverable provided or required to be provided in accordance with this Agreement in connection with the provision of Services ("Work Product"), such Party, as applicable, agrees that such Work Product belongs to the other Party, as applicable. Each Party hereby assigns all right, title and interest, including all copyrights and other intellectual property rights, in and to all such Work Product to the other Party.

5.4 Entire Agreement. This Agreement, together with any annexes, exhibits and schedules hereto, constitutes the entire agreement between the Parties and supersedes any prior understandings, agreements or representations by or between the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

5.5 Amendments and Waivers. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by each of Buyer and the Seller Representative (on behalf of all Seller Service Providers) except as expressly provided herein. No waiver of any breach of this Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Agreement. No waiver by any Party of any

default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party making such waiver, nor shall such waiver be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent default, misrepresentation or breach of warranty or covenant. No conditions, course of dealing or performance, understanding or agreement purporting to modify, vary, explain or supplement the terms or conditions of this Agreement shall be binding unless this Agreement is amended or modified in writing pursuant to the first sentence of this Section 5.5 except as expressly provided herein. Except where a specific period for action or inaction is provided herein, no delay on the part of any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

     5.6 Notices. All notices, requests, demands, claims and other communications hereunder will be in writing except as expressly provided herein. Any notice, request, demand, claim or other communication hereunder shall be deemed duly given (a) when delivered personally to the recipient; (b) when sent by facsimile (with written confirmation of transmission) or email (with confirmation of receipt by email); (c) one Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); (d) three Business Days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Seller Service Providers:

> [Seller Service Coordinator]
> National Envelope Corporation
> 333 Earle Ovington Boulevard, Suite 1035
> Uniondale, New York 11553
> Attention:  Dale G. Nissenbaum
> Facsimile: (516) 699-4030
> Email: DNissenbaum@natenv.com

with a copy  (which shall not constitute notice) to:

> Latham & Watkins LLP
> 233 South Wacker Drive, Suite 5800
> Chicago, Illinois 60606
> Attention: Josef S. Athanas
> Facsimile: (312) 993-9767
> Email: josef.athanas@lw.com

If to Buyer:

> [Buyer Service Coordinator]
> c/o The Gores Group, LLC
> 10877 Wilshire Boulevard, 18th Floor
> Los Angeles, California 90024
> Attention: General Counsel

Facsimile: (310) 443-2149
Email: ehattler@gores.com

with a copy  (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Attention: Kyle C. Krpata
Facsimile: (650) 802-3100
Email: kyle.krpata@weil.com

Any Party may change the address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Party notice in the manner set forth in this Section 5.6.

5.7 Governing Law; Jurisdiction. This Agreement shall in all aspects be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York (other than Section 5-1401 of the New York general obligations law), except to the extent that the laws are superseded by the Bankruptcy Code, and the obligations, rights and remedies of the Parties shall be determined in accordance with such laws. For so long as Seller Service Providers are subject to the jurisdiction of the Bankruptcy Court, the Parties irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement or the transactions contemplated hereby, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Seller Service Providers are no longer subject to the jurisdiction of the Bankruptcy Court or if the Bankruptcy Court is unwilling or unable to hear any matter arising under or in connection with this Agreement or the transactions contemplated hereby, such matter shall be brought in the courts of the State of New York sitting in the County of New York or of the United States for the Southern District of New York, and by execution and delivery of this Agreement, each of the Parties consents to the exclusive jurisdiction of those courts. Each of the Parties irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Agreement or the transactions contemplated in this Agreement.

5.8 Consent to Service of Process. Each of the Parties hereby consents to process being served by any Party in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 5.6.

5.9 Waivers    of    Jury    Trial.      EACH    PARTY    IRREVOCABLY    AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED IN THIS AGREEMENT.

5.10    Severability. The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, in each case, so long as the economic and legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party.

5.11    Successors and Assignment. This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns, including any chapter 7 or other trustee, responsible Person or similar representative for Seller Service Providers or Seller Service Providers' estate appointed in connection with the Chapter 11 Cases. No Party may assign either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Parties; provided, however, that the rights of Buyer under this Agreement may be assigned by Buyer, without the prior written consent of any Seller, to (a) one or more Affiliates of Buyer or (b) one or more of its lenders (or any administrative or collateral agent for such lenders), in each case, so long as Buyer shall continue to remain obligated in full hereunder.

5.12    Headings. The Section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

5.13    Counterparts; Facsimile or Email Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. This Agreement or any counterpart may be executed and delivered by facsimile or email with scan attachment copies or pdf, each of which shall be deemed an original.

5.14    No Third Party Beneficiaries. This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

5.15    Relationship of the Parties. It is expressly understood and agreed that in rendering the Services hereunder, all of the Parties are acting as independent contractors and that this Agreement does not make any Person providing Services an employee, agent or other representative of any other Party for any purpose whatsoever. No Party has the right or authority to enter into any contract, warranty, guarantee or other undertaking in the name or for the account of any other Party, or to assume or create any obligation or liability of any kind, express or implied, on behalf of any other party, or to bind any other party in any manner whatsoever, or to hold itself out as having any right, power or authority to create any such obligation or liability on behalf of any other party or to bind any other party in any manner whatsoever (except as to any actions taken by a party at the express written request and direction of any other party); provided, however, that, for purposes of this Agreement, Seller Representative shall be entitled

12

to take all of the foregoing actions on behalf of any Seller Service Provider. No employee, contractor or subcontractor of any Party shall be deemed to be an employee, contractor or subcontractor of any other Party.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed and delivered as of the date first set forth above.

**BUYER:**

**NEV HOLDINGS, LLC**

By:_____
    Name:
    Title:

**SELLER REPRESENTATIVE:**

**NATIONAL ENVELOPE CORPORATION**

By:_____
    Name:
    Title:

**SELLER SERVICE PROVIDERS:**

[SELLER SERVICE PROVIDERS]

By:_____
    Name:
    Title:

**EXHIBIT A**

SERVICES PROVIDED BY SELLER SERVICE PROVIDERS

It is intent of the Parties that the Seller Services be limited generally to the retention by Sellers of (a) certain facilities leased by Sellers to be identified prior to Closing at which Buyer will conduct the Business (the "Facilities") together with ancillary agreements relating to the operations of the physical plant of the Facilities (*e.g.*, utilities, cleaning services, grounds keeping services and insurance policies), and (b) the retention of the employment relationship with certain personnel (the "Employees") at Facilities from which such personnel will perform their historical duties in support of the Business without altering any employment terms or increasing the level of salary or benefits. In addition to the foregoing, the Seller Services shall include the following:

Employees

Each Seller Service Provider and Employee is an independent contractor with respect to Buyer. Without limiting the foregoing, (a) Seller Service Providers hereby reserve sufficient authority so as to maintain a right to administrative direction and control over the Employees, which shall include, without limitation, the payment of wages and overtime, the withholding of income and employment Taxes from said wages, the tracking and recording of attendance and hours worked, and the administration of any vacation, sick leave, benefits or insurance programs, and (b) Seller Service Providers shall observe and perform all obligations applicable to them under applicable law as the employers of the Employees.

During the Transition Period, each Employee will for all purposes continue to be an employee solely of the applicable Seller Service Provider. Seller Service Providers will, consistent with their practices with respect to the Employees (a) pay compensation and provide benefits (subject to the terms and conditions of the applicable Seller Service Provider plans and Section 6(g) of the Purchase Agreement) to the Employees equal to (and, unless otherwise agreed by the Buyer, in no event greater than or, in the case of benefits, other than as required to maintain the Employees' coverage under Seller Service Providers' plans or as a result of changes that affect all plan participants equally) the wages paid and benefits provided by Seller Service Providers to similarly situated employees of Seller Service Providers (excluding any benefits provided under equity compensation plans), (b) make all payments to Employees (including bonuses or commissions as determined in consultation with Buyer) directly through Seller Service Providers' payroll systems, (c) make all required payroll withholding deductions for Employees and remit Taxes with respect to Employees to all applicable Governmental Entities, (d) file all Tax reports with respect to the Employees to the extent required under applicable law and (e) maintain and keep in force at all times during the Transition Period liability insurance coverage relating to acts, omissions and employment of all Employees, including, without limitation, commercial general liability insurance, workers' compensation insurance and employer's liability insurance, consistent with any such coverage in effect for such purposes immediately prior to the Closing Date.

On a monthly basis, Seller Service Providers shall provide payroll services (including, without limitation, payment of all withholding, unemployment, social security and other payroll

Taxes).  Seller Service Providers shall provide Buyer an invoice each Tuesday before 10 a.m. prevailing Pacific time  setting forth the amount for that week's payroll and the reasonable and out-of-pocket costs incurred by Seller Service Providers in administering such payroll (the "Payroll Cost").  Buyer shall deposit the Payroll Cost in the Transition Account by the close of business on each Tuesday.

Notwithstanding anything contained herein, in no event shall Buyer bear any costs arising out of, or relating to the closure of, any Facility or termination of employment of any Employee, including, without limitation, severance pay, costs arising out of any collective bargaining agreement or relationship, multi-employer plan withdrawal liability (including incremental increases, if any, in withdrawal liability as a result of service provided during the Transition Period) or WARN Act Liabilities (or any similar applicable state or local plant-closing law); provided, however, that in the event that Buyer fails to provide Seller Service Providers with sufficient advance written notice to permit Seller Service Providers to comply with their obligations under the WARN Act (or any similar applicable state or local plant-closing law), Buyer shall be responsible for the costs incurred by Seller Service Providers arising out of, or relating to such non-compliance by Seller Service Providers; provided, further, however, that Buyer shall bear all costs resulting from its obligation to satisfy the Liabilities under COBRA pursuant to Section 6(g)(iii) of the Purchase Agreement.

Facilities/Third Parties

With respect to the costs related to the Facilities (including rent, utilities, and maintenance services) and other Liabilities payable to third party service providers or Governmental Entities, Seller Service Providers shall forward all invoices or statements for such services to the Buyer Service Coordinator.  Buyer shall deposit the amounts set forth on such invoices or statements in the Transition Account no later than ten (10) Business Days prior the date on which such payment is due or pay when due, on Seller Service Providers' behalf out of Buyer's own funds, each such invoice or statement directly to the applicable payee.

Proration of Pre-Paid Expenses

All costs for Seller Services paid by any Seller Service Providers prior to the Closing Date related to (a) the Facilities (including, without limitation, rent, utilities, and maintenance services), (b) the Employees and (c) third party service providers or Governmental Entities for periods that begin before the Closing Date and end after the Closing Date shall be allocated between Seller Service Providers, on the one hand, and Buyer, on the other hand, on a per-diem basis, and Seller Service Providers' proportionate share of such pre-paid costs shall be determined from the beginning of such period through the Closing Date and Buyer's proportionate share of such pre-paid costs shall be determined from the day after the Closing Date until the end of such period.  If as result of such determination the amount of costs paid by Seller Service Providers prior to the Closing Date exceeds Seller Service Providers' proportionate shares of such costs, Buyer shall, within 45 days of the Closing Date, deposit, in immediately available funds, such excess into the Wind-Down Account, unless Buyer delivers to Seller Service Providers a notice that they dispute the Seller Service Providers' determination of such costs (a "Dispute Notice"), in which event Buyer shall pay to Seller Service Providers the amount of any undisputed items within such 45 day period.  If Buyer delivers a dispute notice

within such 45-day period, then for 20 days following delivery of the Dispute Notice (the "Resolution Period"), Buyer and Seller Service Providers shall attempt in good faith to resolve their differences with respect to the disputed items (the "Disputed Items"). Any resolution by Buyer and Seller Service Providers during the Resolution Period as to any Disputed Items shall be set forth in a writing executed by Buyer and Seller Service Providers and will be final, binding and conclusive on both Buyer and Seller Service Providers and Buyer shall pay to Seller Service Providers any amounts owing as a result of such resolution within 5 days after execution of such agreement. If Buyer and Seller Service Providers do not resolve all Disputed Items by the end of the Resolution Period, then all Disputed Items remaining in dispute will be submitted within 10 days after the expiration of the Resolution Period to Grant Thornton LLP or, if such firm declines to act in such capacity, a national independent accounting firm mutually acceptable to Buyer and Seller Service Providers (the "Neutral Arbitrator"). The Neutral Arbitrator shall act as an arbitrator to determine only those Disputed Items remaining in dispute as of the end of the Resolution Period. All fees and expenses relating to the work, if any, to be performed by the Neutral Arbitrator will be allocated between Buyer and Seller Service Providers in the same proportion that the aggregate amount of the Disputed Items so submitted to the Neutral Arbitrator that is unsuccessfully disputed by each such Party (as finally determined by the Neutral Arbitrator) bears to the total amount of such Disputed Items so submitted. In addition, Buyer and Seller Service Providers shall give the Neutral Arbitrator reasonable access to all Records, facilities, Representatives, and personnel of such Party as reasonably necessary to perform its function as arbitrator of the Disputed Items. In the event Buyer or Seller Service Providers shall participate in teleconferences or meetings with, or make presentations to, the Neutral Arbitrator, the other Party shall be entitled to participate in such teleconferences, meetings or presentations. Buyer and Seller Service Providers shall use their commercially reasonable efforts to cause the Neutral Arbitrator to deliver to Buyer and Seller Service Providers a written determination (such determination to include a work sheet setting forth all material calculations and methods used in arriving at such determination) of the Disputed Items submitted to the Neutral Arbitrator within 20 days of its engagement to review such Disputed Items, which determination will be final, binding and conclusive and upon which judgment may be entered. Buyer shall pay to Seller Service Providers the amounts determined by the Neutral Arbitrator within five (5) days after the Neutral Arbitrator resolves the Disputed Items. For the avoidance of doubt, in no event shall Seller Service Providers owe Buyer any amounts as of the result of the foregoing proration.

## EXHIBIT B

### SERVICES PROVIDED BY BUYER

All administrative and other support necessary for the services set forth on Exhibit A or any other Sellers Services provided hereunder.

Employees

Each Buyer Service Provider and employee of Buyer and its Affiliates, including, without limitation, the Transferred Employees, is an independent contractor with respect to Sellers. Without limiting the foregoing, (a) Buyer Service Providers hereby reserve sufficient authority so as to maintain a right to administrative direction and control over the such employees, which shall include, without limitation, the payment of wages and overtime, the withholding of income and employment Taxes from said wages, the tracking and recording of attendance and hours worked, and the administration of any vacation, sick leave, benefits or insurance programs, and (b) Buyer Service Providers shall observe and perform all obligations applicable to them under applicable law as the employers of such Employee.

## EXHIBIT C

### WIND-DOWN EXPENSES

| Expense | Amount |
|---|---|
| 503(b)(9) Claims | $1,900,000 |
| Environmental Remediation | $2,000,000 |
| Maintenance / Security | $180,000 |
| Administrative | $150,000 |
| United States Trustee | $150,000 |
| Miscellaneous / Other | $300,000 |
| Sellers' Lead Bankruptcy Counsel | $1,800,000 |
| Sellers' Local Counsel | $240,000 |
| Sellers' Corporate Counsel | $125,000 |
| Sellers' Chief Reorganization Officers | $540,000 |
| Counsel to Official Committee of Unsecured Creditors | $1,095,000 |
| Financial Advisors to Official Committee of Unsecured Creditors | $240,000 |
| Claims' Agent | $300,000 |

## ANNEX A

ADDITIONAL SELLER SERVICE PROVIDERS

## **SCHEDULES**

Schedule 1.2

Service Coordinator Contact Information

For Seller Service Providers:
[NAME]
Title:
Phone:
Facsimile:
Email:


For Buyer:
[NAME]
Title:
Phone:
Facsimile:
Email: