# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEC HOLDINGS CORP., *et at.,* | Case No. 10-11890 (PJW) |
| Debtors. | Jointly Administered |
| | **Hearing Date: October 6, 2010 at 9:30 A.M.**<br>**Objection Deadline: September 21, 2010 at 4:00 P.M.** |

## SOUTHERN CALIFORNIA EDISON COMPANY'S (I) MOTION TO VACATE SALE ORDER, IN PART, FOR FAILURE TO PROPERLY SERVE CONTRACT NOTICE AND (II) OBJECTION TO THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS FOR FAILURE TO ACKNOWLEDGE CURE AMOUNTS

Southern California Edison Company ("SCE"), by counsel, for its (I) Motion to Vacate Sale Order, In Part, For Failure To Properly Serve Contract Notice and (II) Objection to the Debtors' Assumption and Assignment of Executory Contracts for Failure To Acknowledge Cure Amounts, respectfully represents as follows:

## PRELIMINARY STATEMENT

The convoluted assumption procedures approved in the Bidding Procedures Order (defined below) and related notices and orders appear to be designed more to confuse than to provide due process to non-debtor contract counterparties. Moreover, it appears the Debtors did not:(a) act in good faith in listing a $0.00 cure amount for its contracts with SCE; and (b)try to provide due process to SCE, as the Debtors purportedly "served" SCE with the Contract Notice (defined below) by mailing copies to themselves at their own address and to a PO Box that does not belong to SCE. As a result, SCE did not timely receive the Contract Notice and cannot be bound by the Sale Order. Accordingly, the Debtors should not be permitted to assume and assign its service agreements with SCE unless and until they pay SCE the unpaid prepetition amounts (which are the subject of a proof of claim properly

SL1 1020654v1/018560.00130

filed in the Debtors' bankruptcy proceedings) and any unpaid post-petition amounts owing under those agreements as of the date of assumption.

## FACTS

### Procedural Facts

1. On June 10, 2010 (the "Petition Date"), the Debtors in the above-captioned bankruptcy case each filed a voluntary petition for relief with this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). These cases are being administered jointly pursuant to Fed. R. Bankr. P. 1015(b), and the bar date for filing proofs of claim in these cases has been set for October 8, 2010.

2. On July 30, 2010, this Court entered an *Amended Order Approving and Authorizing (A) Bidding Procedures in Connection with the Sale of Substantially All the Assets of the Debtors, (B) Stalking Horse Bid Protections, (C) Form and Manner of Notice of the Sale Hearing, and (D) Related Relief* (the "Bidding Procedures Order").

3. The Bidding Procedures Order set forth certain procedures pursuant to which the Debtors could assume and assign executory contracts and unexpired leases to the successful bidder at an auction of substantially all of the Debtors' assets. Specifically, the Bidding Procedures Order provided that the Debtors, as soon as practicable, shall serve on all counterparties to contracts with the Debtors that may be assumed and assigned pursuant to the sale a "Contract Notice," identifying "(a) the Contract that may be assumed, (b) the name of the counterparty to such Contract, (c) the cure amount for such Contract if it becomes an Assumed Contract, and (d) the deadline by which any Contract counterparty must file a 'Contract Objection' to the proposed assumption and assignment." Bidding Procedures Order at ¶ 12.b. The Bidding Procedures Order further provided that "[a]s soon

2

SL1 1020654v1/018560.00130

practicable after conclusion of the Auction, the Debtors shall file with the Court and serve on the Contract Notice Parties party [*sic.*] to an Assumed Contract identified by the Successful Bidder a further notice…identifying the Successful Bidder and stating which Contracts will be Assumed Contracts, and no other or further notice will be required with respect to the Assumed Contracts…." *Id.*

4. On July 31, 2010, the Debtors filed its *Notice of (I) Cure Amount with Respect to Executory Contracts to Be Assumed and Assigned and (II) Potential Assumption and Assignment of Executory Contracts* (the "Contract Notice"). Exhibit 1 to the Contract Notice listed four contracts, each described as "Energy Contract - Contract for Interruptible Service" between Debtor National Envelope Corporation and SCE. The Contract Notice listed the cure amount for each of the four SCE contracts as $0.00.

5. The Contract Notice set August 16, 2008 as the deadline by which SCE must file any objections to the cure amounts listed in Exhibit 1 to the Contract Notice.

6. On August 23, 2008, the Court entered an *Order Authorizing (I) Sale of Certain of the Assets of the Debtors Free and Clear of Liens, Claims and Interests, (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Assumption of Certain Liabilities* (the "Sale Order").

7. The Sale Order provides, in relevant part, as follows:

    a. "The Debtors have served a notice of assignment and cure costs (the 'Contract Notice') on all non-debtor counterparties to Contracts. Such Contract Notice is adequate and sufficient notice of the proposed assumption and assignment of the Assumed Contracts identified on the Assumed Contracts List pursuant to the terms of the Agreement." Sale Order at ¶ X.

    b. "For all such counterparties to Assumed Contracts that were served with a Contract Notice at least 10 days prior to the Sale Hearing, the deadline to file an objection to the assumption and assignment to the Purchaser of any Assumed Contract (a 'Contract Objection')

3

has expired.... To the extent that any such party did not timely file a Contract Objection by the Contract Objection deadline, such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract, and (ii) the proposed cure amount (the 'Cure Amount') set forth on the Contract Notice." Sale Order at ¶ Y.

c. "Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Agreement, of the Assumed Contracts are hereby approved, *and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.*" Sale Order at ¶ 23 (emphasis added).

d. "The Debtors have filed the Contract Notice, and *as soon as practicable will serve the Contract Notice on all non-Debtor counterparties to the Assumed Contracts....* For all non-debtor counterparties to an Assumed Contract served a Contract Notice in accordance with this paragraph 23 [*sic*], ten or more days prior to the Sale Hearing, to which no Contract Objection was timely filed, such Assumed Contract is hereby deemed assumed and assigned in accordance with the Contract Notice. For all non-debtor counterparties to an Assumed Contract served with a Contract less than ten days prior to the Sale Hearing, if a timely Contract Objection is not received, the counterparty to such Assumed Contract shall be deemed to have consented to such assumption and assignment and Cure Amount, and the assignment will be deemed effective as of the date hereof." Sale Order at ¶ 28 (emphasis added).

**Facts Regarding Service of the Contract Notice**

8. The Debtors have not filed a certificate of service with respect to the Contract Notice. Exhibit 1 of the Contract Notice lists the following two addresses as the counterparty addresses for the SCE contracts:

a. 705 N Baldwin Park Blvd, City of Industry, CA; and

b. PO Box 1800, Rosemead, CA.

9. Neither of the foregoing addresses is an address of SCE. The first address is the address for the Debtors' facility to which SCE provided electric service under one of its two Contracts for Interruptible Service with the Debtors. The second address is not a post office box of SCE. SCE has a PO Box address of PO Box 800 (not 1800 as set forth in the Contract Notice), Rosemead, CA.

10. SCE has performed a diligent inquiry and has determined that to date nobody from SCE

4

has received service of the Contract Notice.

11. SCE first learned about the Debtors' proposed assumption and assignment of its service contracts with the Debtors on August 25, 2010, when it received a copy of the Notice of Assumption and Assignment of Executory Contracts, dated August 23, 2010 (the "Assumption Notice").

12. SCE first learned about the existence of the Contract Notice on August 30, 2010 in response to SCE's counsel's inquiry to Debtors' counsel regarding the deadline for filing a cure objection. Debtors' counsel responded by advising that the Debtors "served" the Contract Notice on SCE in late July by overnight delivery to the two addresses listed in the Contract Notice, and stating that SCE had missed the August 16th cure objection deadline.

### Facts Regarding SCE's Contracts with the Debtors

13. SCE and the Debtors are parties to the following contracts:

    A. Contract for Interruptible Service between SCE and National Envelope dated December 11, 2008 (the "2008 Agreement"); and

    B. Contract for Interruptible Service between SCE and National Envelope, dated January 12, 2010 (the "2010 Agreement"; and together with the 2008 Agreement, the "Service Agreements").

14. The Debtors owe SCE a total of $75,625.89 for prepetition service under the Service Agreements, as follows:

    a. 2008 Agreement: for service from May 11, 2010 through the Petition Date - $40,812.26;

    b. 2010 Agreement: for service from May 11, 2010 through the Petition Date - $34,813.63;

5

15.  On June 25, 2010, SCE filed its proof of claim in the Debtors' bankruptcy proceedings in the total amount of $75,625.89, for amounts due and owing for prepetition service rendered under the Service Agreements. In its proof of claim, SCE listed the following as the address to which all notices and disbursements should be sent:

> Attention: Credit and Payment Services
> 300 N. Lone Hill Ave
> San Dimas, CA 91773.

## DISCUSSION

### I. The Sale Order Should Be Vacated as to SCE and SCE Should Be Permitted To File Its Cure Objection Now Because It Was Never Properly Served With the Contract Notice.

16.  Rule 9014(b) of the Federal Rules of Bankruptcy Procedure provides that in contested matters, "[t]he motion shall be served in the manner provided for service of a summons and complaint by Rule 7004." Rule 4(b)(3), made applicable by Bankruptcy Rule 7004, provides for service of process by mail on a corporation as follows:

> Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by appointment to receive service and the statute so requires, by also mailing a copy to the defendant.

17.  Rule 60(b)(4) of the Federal Rules of Civil Procedure, made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [where] the judgment is void." Further, "[i]t is well-established that, given its due process underpinnings, a party's failure to substantially comply with the notice requirement of Bankruptcy Rule 7004(b)(3) renders the entry of a judgment by default improper" and thus void. *Saucier v. Capitol One (In re Saucier)*, 366

6

SL1 1020654v1/018560.00130

B.R. 780, 784 (Bankr. N.D. Ohio 2007); *see also Rivas v. RJM Acquisition assignee of Popular Club Inc. (In re Rivas)*, 377 B.R. 423, 426 (Bankr. S.D. Fla. 2007)("It is axiomatic that absent good service, the Court has no *in personam* or personal jurisdiction over a defendant.")

18. The Sale Order is unclear as to whether the Debtors have even attempted to serve SCE with the Contract Notice to date. While recital paragraph X. states that the Debtors have served the notice on all contract counterparties, paragraph 28 indicates that as of the date the Sale Order was entered, the Debtors had merely filed the Contract Notice, but had not yet served all the contract counterparties with the Contract Notice, although they would do so "as soon as practicable". Because the Debtors have not filed a certificate of service with respect to the Contract Notice, there is no actual evidence that the Debtors have attempted to serve SCE with the Contract Notice at all or, if they have, what address(es) they have attempted to serve. Debtors' counsel reports, however, that the Contract Notice was served by overnight mail in late July on the two addresses listed for SCE in Exhibit 1 attached thereto.

19. What is clear is that SCE never received the Contract Notice, and the two addresses listed in the Contract Notice are not proper service addresses for SCE. The City of Industry, CA address listed is the Debtors' own address, and the PO Box listed is not a valid address for SCE. Moreover, even if the Debtors had attempted to serve SCE at its correct PO Box 800 address, as opposed to the PO Box 1800 address they purportedly served, such attempted service still would not have constituted proper service on SCE because without having designated, by name, a specific officer, managing or general agent, the purported service would not have complied with Bankruptcy Rule 7004. *See, e.g., In re Saucier,* 366 B.R. at 785 (holding that pleading addressed to "office manager" did not comply with Rule 7004(b)); *see also In re Golden Books Family Entertainment, Inc.,*

7

269 B.R. 300, 305 (D. Del. 2001) (holding that notices addressed to the "Asst. Controller" were deficient because "they failed to address any of the copies of the notice to a person of authority or to a person authorized to accept service"); *In re Schoon*, 153 B.R. 48 (Bankr. N.D. Cal. 1993) (holding that notices addressed to "Attn: President" did not constitute valid service upon an officer and "makes a joke of the requirement that an officer be served."); *Addison v. Gibson Equipment Co., Inc. (In re Pittman Mechanical Contractors, Inc.)*, 180 B.R. 453 (Bankr. E.D. Va. 1995) (holding that because "nationwide service of process by first class mail was a rare privilege," notice addressed to "President or Corporate Officer" was improper because no individual was named).

20. Adequate and timely notice of the filing of a suit, or in this case a motion, is an essential element of our judicial system. As held by the Supreme Court and reiterated by Judge McKelvie in *Golden Books*, "due process of law in any proceeding which is to be accorded finality [requires] notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

21. Moreover, the Plaintiff (in this case the Debtors) bears the burden to establish that proper service of process is accomplished. *In re Saucier*, 366 B.R. at 783. The Debtors cannot carry their burden in this case because, according to Debtors' counsel, they purportedly "served" SCE at the two addresses listed in the Contract Notice, which are not valid addresses for SCE. As a result, SCE did not receive the Contract Notice until August 30, 2008, well after the cure objection deadline, and could not possibly have filed an objection to the proposed cure amounts by the cure objection deadline.

22. Accordingly, the Sale Order is void and should be vacated as to SCE to the extent it provides (a) that the Debtors' provided adequate notice of the Contract Notice to SCE, (b) that the

requirements of 365(b)(1) have been satisfied as to SCE, and (c) that SCE is deemed to have consented to the proposed Cure Amounts.

**II. The Debtors Should Be Required To Cure All Defaults Under Its Service Agreements with SCE as a Condition to Assumption and Assignment of Those Service Agreements to the Successful Bidder.**

23. Section 365(b)(1) of the Bankruptcy Code provides as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default.

24. As set forth above, the prepetition cure amounts for the 2008 and 2010 Service Agreements should be $40,812.26 and $34,813.63, respectively. In addition, the cure amounts should include any unpaid post-petition amounts under each of the Service Agreements as of the date of assumption.

25. Accordingly, the Debtors cannot assume the Service Agreements without paying the cure amounts of:

  A. $40,812.26;

  B. $34,813.63; and

  C. Any unpaid post-petition amounts under the Service Agreements as of the date of assumption.

## CONCLUSION

For all of the foregoing reasons, this Court should (1) vacate the Sale Order as to SCE as set forth above, (2) enter an Order requiring the Debtors immediately to pay SCE the proper cure amounts listed above as a condition to the Debtors' assumption and assignment of their Service

9

Agreements with SCE, and (3) provide such other and further relief as is just and proper.

Dated: September 3, 2010  **STEVENS & LEE, P.C.**

*/s/ John D. Demmy*
John D. Demmy (DE Bar No. 2802)
1105 N. Market Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 425-3308
Telecopier: (610) 371-8515
Email: jdd@stevenslee.com

and

Russell R. Johnson III
John M. Merritt
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
E-mail: russj4478@aol.com

*Counsel for Southern California Edison Company*

SL1 1020654v1/018560.00130