## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____
                                            )
In re:                                      )    Chapter 11
                                            )
National Envelope - Specialties Group LLC   )    Case No. 10-11905
NEC HOLDINGS CORP., *et al.,*               )    Case No. 10-11890 (PJW)
                                            )
                  Debtors.                  )    Jointly Administered
_____ )
                                                 **Claim Amount: $19,087.62**
                                                 **Schedule: F**

## NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY
## PURSUANT TO FRBP RULE 3001(e)(1)

**TO:**  **TRANSFEROR:**  Unicast Inc.
Attn: President or General Counsel
17 McFadden Road
P.O. Box 4627
Easton, PA 18043-4627

PLEASE TAKE NOTICE of the transfer of all right, title and interest in the above scheduled claim in the amount of $19,087.62 against National Envelope - Specialties Group LLC as evidenced by the attached Assignment of Claim Agreement to:

**TRANSFEREE:**  **Pioneer Credit Opportunities Fund, LP**
(where notices and  Attn: Adam Stein-Sapir
payments to transferee  Greeley Square Station, P.O. Box 20188
should be sent)  39 W. 31st Street
New York, NY 10001
Tel: 646-237-6969
adam@pfllc.com

No action is required. IF YOU OBJECT TO THE TRANSFER OF YOUR CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS NOTICE, YOU MUST:

- FILE A WRITTEN OBJECTION TO THE TRANSFER WITH THE COURT
- SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE
- IF YOU FILE AN OBJECTION, A HEARING WILL BE SCHEDULED
- IF YOUR OBJECTION IS NOT TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED FOR THE TRANSFEROR ON OUR RECORDS AS A CLAIMANT IN THIS PROCEEDING

_____
Clerk of the Court

# ASSIGNMENT OF CLAIM AGREEMENT

**Assignment of Claim.** Unicast Inc., with a principal address of 17 McFadden Road, Easton, PA 18045 (hereinafter "Assignor"), in consideration of the sum of $_____ ("Purchase Price"), which is equal to the sum of (a) the product of the General Unsecured Claim (defined below) times ___% ("General Unsecured Claim Purchase Rate") and (b) the product of the Administrative Claim (defined below) times ___% ("Administrative Claim Purchase Rate"), does hereby transfer to Pioneer Credit Opportunities Fund, L.P., having an address at Greeley Square Station, P.O. Box 20188, New York, NY 10001 and any of its successors, assigns or designees (hereinafter "Assignee", and together with the Assignor, the "Parties"), all of Assignor's right, title and interest in and to the claims of Assignor, as more specifically set forth below against National Envelope Corporation and its affiliates (collectively the "Debtor"), Debtor in proceedings for reorganization ("Proceedings") in the United States Bankruptcy Court for the District of Delaware ("Court") jointly administered under National Envelope Corporation Case No. 10-11890, in the currently outstanding amount of not less than $151,014.00 ("Claim Amount") comprised of a Section 503(b)(9) administrative expense claim in the amount of $29,538.14 ("Administrative Claim") and a general unsecured claim of $121,475.86 ("General Unsecured Claim", and together with the Administrative Claim, the "Claims") and all rights and benefits of Assignor relating to the Claims, including without limitation (i) proof of claim number 167 filed August 5, 2010 for the Administrative Claim in an amount of $29,538.14, (ii) Assignor's rights to receive all interest, penalties, cure payments, and fees, if any, which may be paid with respect to the Claims, (iii) any actions, claims, rights or lawsuits against Debtor, its affiliates, any guarantor or other third party, together with voting and other rights and benefits arising from, under or relating to any of the foregoing, (iv) all cash, securities, instruments and other property which may be paid or issued by Debtor in satisfaction of the Claims, and (v) if applicable, the right to participate in any future offerings of debt, securities or other rights by the Debtor. The Claims are based on amounts owed to Assignor by Debtor as set forth below and this assignment shall be deemed an absolute and unconditional assignment of the Claims for the purpose of collection and shall not be deemed to create a security interest.

**Representations; Warranties and Covenants.** Assignor represents and warrants that (a) the General Unsecured Claim is not less than $121,475.86 and is a valid, undisputed, liquidated, non-contingent, allowable and enforceable claim based on amounts owed to Assignor for goods and/or services provided to the Debtor prior to the commencement of the Proceedings; (b) the Administrative Claim is not less than $29,538.14 and is a valid administrative expense claim against the Debtor pursuant to Sections 503 and 507 of the Bankruptcy Code based on amounts owed to Assignor for goods received by the Debtor within twenty (20) days before the date of the commencement of the Proceedings, which goods were sold to the Debtor in the ordinary course of the Debtor's business; (c) no consent, approval, filing or corporate partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Assignment of Claim Agreement ("Agreement") by Assignor; (d) this Agreement has been duly authorized, executed and delivered by the Assignor and Assignor has the requisite power and authority to execute, deliver and perform this Agreement; (e) this Agreement constitutes the valid, legal and binding agreement of Assignor, enforceable against Assignor in accordance with its terms; (f) no payment or distribution has been received by Assignor, or by any third party claiming through Assignor, in full or partial satisfaction of the Claim; (g) Assignor has not previously assigned, sold or pledged the Claims to any third party, in whole or in part; (h) Assignor owns and has title to the Claims free of any and all liens, security interests or encumbrances of any kind or nature whatsoever; (i) there are no offsets or defenses or preferential payment demands that have been asserted by or on behalf of Debtor or any other party to reduce the amount of the Claims or to impair their value; (j) Assignor does not and did not at the commencement of the Proceedings hold any funds or property of or owe any amounts or property to the Debtor or any affiliate of the Debtor; (k) Assignor has not engaged in any acts, conduct or omissions that might result in the Assignee receiving in respect of the Claims proportionally less payments or distributions or less favorable treatment (including timing or distributions) than other unsecured creditors; (l) the Claims are not subject to any factoring agreement; (m) Assignor is not "insolvent" within the meaning of Section 1-201 (23) of the Uniform Commercial Code or within the meaning of Section 101(32) of the Bankruptcy Code; and (n) Assignor has fully performed and satisfied all of its obligations (if any) to the Debtor. Assignor agrees to indemnify Assignee from all losses, claims, damages and expenses (including, without limitation, reasonable attorneys' fees), which result from Assignor's breach of any of its representations, warranties, covenants or agreements set forth herein.

The Parties are aware that the Purchase Price received herein for the sale of the Claims may differ both in kind and amount from any distributions ultimately made pursuant to any plan of reorganization or liquidation confirmed by the Court in the Proceedings. Assignor has agreed to the Purchase Price based on its own independent investigation and credit determination. Assignee does not assume, and shall not be responsible for, any obligations or liabilities of Assignor related to or in connection with the Claims or the Proceedings.

**Claim Impaired or Disallowed.** Assignee will assume all of the recovery risk in terms of the amount paid on the Claims, if any, at Debtor's emergence from bankruptcy or liquidation. Assignor agrees to make to Assignee immediate proportional restitution and repayment of the Purchase Price at the General Unsecured Claim Purchase Rate or the Administrative Claim Purchase Rate, as applicable, to the extent that the General Unsecured Claim or Administrative Claim, as applicable, is disallowed, avoided, subordinated, reduced, objected to or otherwise impaired for any reason whatsoever, in whole or in part, including without limitation a breach of any of the terms or conditions of this Agreement (a "Disallowance"), together with interest, calculated at the rate of five percent (5%) per annum, from the date of Assignor's execution of this Agreement until the date that such restitution payment is received by Assignee. Assignor further agrees to reimburse Assignee for all reasonable costs and expenses incurred by Assignee as a result of Assignor's failure to make proportional restitution or repayment within 15 days after receiving notice of such Disallowance.

**Notices (including Voting Ballots) Received by Assignor; Further Cooperation.** Assignor agrees to immediately forward to Assignee any and all notices received from Debtor, the Court or any other court or government entity or any third party regarding the Claims assigned herein and to take such other action, with respect to the Claims, as Assignee may request from time to time. Assignor agrees to take such further action, at its own expense, as may be necessary or desirable to effect the transfer and assignment of the Claims and to direct any payments or distributions, or any form of recovery on account of the Claims to Assignee including, without limitation, the execution of appropriate voting ballots, transfer powers, corporate resolutions and consents at Assignee's sole discretion. Assignor agrees that any distribution received by Assignor on account of the Claims, whether in the form of cash, securities, rights,

# ASSIGNMENT OF CLAIM AGREEMENT

instruments or any other property, shall constitute property of the Assignee to which Assignee has an absolute right, and that Assignor will hold such property in trust and will, at its own expense, promptly (but not later than 5 business days) deliver to Assignee any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee.

**Limited Power of Attorney.** Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claims herein assigned. Assignor grants unto Assignee full authority to do all things necessary to enforce the Claims and its rights there under pursuant to this Agreement. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that the Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defend the Claims' validity or amount in the Proceedings. If for any reason Assignor is entitled to exercise any such rights after the date hereof, Assignor agrees that it will act or refrain from acting in respect of any request or vote to be made in accordance with Assignee's written directions.

**Governing Law, Personal Jurisdiction and Service of Process.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York. Any action arising under or relating to this Agreement must be brought in a State or Federal court located in New York County in the State of New York. Assignor consents to and confers personal jurisdiction over Assignor by such court or courts and agrees that service of process may be upon Assignor by mailing a copy of said process to Assignor at the address set forth in this Agreement. In any action hereunder Assignor waives the right to demand a trial by jury.

**Execution of Agreement.** This Agreement shall become effective and valid when (a) Assignor executes this Agreement and it is received by Assignee, (b) the Agreement is executed by a proper representative of Assignee, and (c) Assignee has paid the Purchase Price to Assignor.

**Consent and Waiver.** Assignor hereby acknowledges and consents to all of the terms set forth in this Agreement and hereby waives (a) its right to raise any objections hereto and (b) its right to receive notice pursuant to Rule 3001 of the Rules of Bankruptcy Procedure.

**Miscellaneous.** Each party expressly acknowledges and agrees that it is not relying upon any representations, promises, or statements (including the status of the Proceedings, condition of Debtor or any other matter relating to the Debtor or the Proceedings), except to the extent that the same are expressly set forth in this Agreement, and that each party has the full authority to enter into this Agreement and that the individuals whose signatures appear below hereby expressly represent that they have the authority to bind the party for which they sign this Agreement. This Agreement (a) may not be modified, waived, changed or discharged, in whole or in part, except by an agreement in writing signed by the Parties; (b) constitutes the entire agreement and understanding between the Parties hereto with respect to the subject matter hereof; and (c) supersedes all prior agreements, understandings and representations pertaining to the subject matter hereof, whether oral or written. Assignor hereby acknowledges that Assignee may at any time re-assign the Claims, together with all right, title and interest of Assignee in and to this Agreement. All representations and warranties made herein shall survive the execution and delivery of this Agreement and any such re-assignment. The terms of this Agreement shall be binding upon, and shall inure to the benefit of and be enforceable by Assignor, Assignee and their respective successors and assigns. This Agreement may be executed in counterparts and by telecopy, or other commonly acceptable form of electronic transmission, each of which shall be deemed an original and all of which taken together shall be deemed to constitute a single agreement. Failure or delay on the part of the Assignee to exercise any right, power or privilege hereunder shall not operate as a waiver thereof.

IN WITNESS WHEREOF, the undersigned hereunto set its hand this 13 day of August, 2010.

| Unicast Inc. ("Assignor") | Pioneer Credit Opportunities Fund, LP ("Assignee") |
|---|---|
| By _____ Signature | _____ Signature |
| Peter R. Molinaro Print Name and Title | Adam D. Stein-Sapir - President Print Name and Title |
| 610-559-9998 Telephone | 646-237-6969 Telephone |