**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NEC HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-11890 (PJW)<br><br>Jointly Administered<br><br>Docket Ref. No. 963<br><br>**Hrg. Date for Cross-Motion: Jan. 20, 2011, at 2 p.m. (ET) (requested)**<br>**Obj. Deadline for Cross-Motion: At the Hearing (requested)** |

# NEV HOLDINGS, LLC'S AND NE OPCO, INC.'S (I) CROSS-MOTION TO COMPEL ARBITRATION AND (II) OBJECTION TO DEBTORS' MOTION FOR AN ORDER ENFORCING SALE ORDER AND ASSET PURCHASE AGREEMENT AND DIRECTING WORKING CAPITAL ARBITER TO MAKE ITS DECISION CONSISTENT THEREWITH

NEV Holdings, LLC ("NEV") and its direct subsidiary NE Opco, Inc. (together with NEV, the "Purchaser"), the purchaser of substantially all of the assets of NEC Holdings Corp. and its affiliated debtors in the above referenced chapter 11 cases (collectively, the

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: NEC Holdings Corp., a Delaware corporation (6395); National Envelope Corporation, a New York corporation (5935); National Envelope – WH LLC, a New York limited liability company (9721); National Envelope – AECO LLC, a Delaware limited liability company (9071); National Envelope – Chino LLC, a California limited liability company (9266); National Envelope – City of Industry, LLC, a California limited liability company (9710); National Envelope – Ennis LLC, a Delaware limited liability company (3868); National Envelope – Corsicana LLC, a Texas limited liability corporation (9716); National Envelope – Grand Prairie LLC, a Texas limited liability company (9258); National Envelope – Aurora LLC, a Colorado limited liability company (9712); National Envelope – Lenexa LLC, a Kansas limited liability company (9256); National Envelope – Appleton LLC, a Wisconsin limited liability company (9719); National Envelope – Elk Grove Village LLC, an Illinois limited liability company (9262); National Envelope – Scottdale LLC, a Pennsylvania limited liability company (9711); National Envelope Corporation – East, a New Jersey Corporation (6888); National Envelope – Specialties Group LLC, a Delaware limited liability company (9156); National Envelope – Houston LLC, a Texas limited liability company (9210); National Envelope – Shelbyville Equity LLC, a Delaware limited liability company (9255); National Envelope – Exton Equity LLC, a Delaware limited liability company (9354); National Envelope – Nashville Equity LLC, a Delaware limited liability company (9410); National Envelope – Houston Equity LLC, a Delaware limited liability company (9488); National Envelope – Leasing LLC, a Delaware limited liability company (9542); New York Envelope Corporation, a New York corporation (3186); National Envelope Corporation – North, a Massachusetts corporation (1548); National Envelope Corporation – South, a Georgia corporation (5404); National Envelope Corporation – Central, a Missouri corporation (8259); Old Colony Envelope Corporation, a Massachusetts corporation (4416); and Aristocrat Envelope Corporation, a New York corporation (9284). The mailing address for National Envelope Corporation is 333 Earle Ovington Boulevard, Suite 1035, Uniondale, NY 11553.

"Debtors"), respectfully submit this cross-motion and objection (the "Cross-Motion") to the *Debtors' Motion for an Order Enforcing Sale Order and Asset Purchase Agreement and Directing Working Capital Arbiter to Make its Decision Consistent Therewith* [Docket No.963] (the "Motion"). In support of this Cross-Motion, the Purchaser respectfully submits as follows:

**Preliminary Statement**

1. The Motion is an attempt by the Debtors to circumvent the agreed upon terms of the Asset Purchase Agreement (the "APA"), which was approved by this Court. The APA is unambiguous in its requirement that disputes regarding the Net Working Capital Adjustment (as defined herein) shall be subject to binding arbitration. The Debtors agreed to this bargained-for provision of the APA and have never questioned its validity; nonetheless, they scarcely mention the arbitration provision in the Motion or even attempt to explain why, notwithstanding clear precedent to the contrary, the Court has any ability to rule on the merits of the Net Working Capital Adjustment disputes. Rather than honor the agreed upon terms of the APA, the Debtors seek to have the Court make determinations as to the amount of the Net Working Capital Adjustment, in direct contravention of the procedures set forth in the APA and applicable law. The APA's arbitration provision is valid, binding and enforceable, and relates precisely to the issues addressed in the Motion. As such, the arbitration provision must be enforced and the Motion should be denied.

2. The Motion should also be denied as it is procedurally defective. The Motion seeks a declaratory judgment as to the meaning of the APA. Requests for such relief must be commenced through an adversary proceeding, which the Debtors failed to do.

3. If the Court declines to compel arbitration, the Court should adjourn a hearing on the merits of the Motion to a later date. The Purchaser relied on the clear and

unambiguous language of the APA and applicable law in concluding that the Court would not rule on the merits of the underlying disputes. See AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649-50 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claim"). Thus, it would be entirely unfair to the Purchaser to allow the Debtors to argue the merits of the Net Working Capital Adjustment disputes at the January 20 hearing. Instead, the Court should allow the Purchaser a full and fair opportunity to brief the underlying issues and present evidence and argument to the Court at a subsequent hearing.[2]

## Relief Requested

4. The Motion ignores both the unambiguous and agreed upon terms of the APA, as well as clearly established federal policy favoring arbitration. There is no question as to either the enforceability of the arbitration provision or its applicability to the issues addressed in the Motion. As such, the Motion should be denied and the Court should enter an Order, substantially in the form attached hereto as Annex A, compelling arbitration.

5. Even if the Court were to determine that the arbitration provision does not apply, the Court should adjourn the hearing on the Motion to a later date.

## Background

6. On August 23, 2010, the Court approved the sale of substantially all of the Debtors' assets to the Purchaser pursuant to the terms set forth in the Asset Purchase Agreement dated as of July 8, 2010 (as amended, the "APA").[3] See Sale Order [Docket No. 471]. The APA approved by the Court contains the arbitration provision discussed below. On September 7, 2010

[2] Nothing in this Cross-Motion should be deemed a waiver of, and the Purchaser expressly reserves all of its rights, remedies, and defenses, including but not limited to its rights of appeal.

[3] A copy of the APA is attached as Exhibit 1 to the Sale Order, dated August 23, 2010 [Docket No. 471].

(the "Closing Date"), the Purchaser consummated the purchase of substantially all of the assets of the Debtors.

7. The Initial Purchase Price (as defined in the APA) of $134,500,000 is subject to adjustment based on the actual amount of Net Working Capital (as defined in the APA) versus the amount as estimated in the APA (this difference is defined in the APA as the "Net Working Capital Adjustment"). The APA provides for a standard mechanism to adjust the Initial Purchase Price based on the Net Working Capital Adjustment. Generally, the process entails the exchange of calculations by the Debtors and the Purchaser followed by a Resolution Period (as defined in the APA) during which time the Purchaser and the Debtors are to "attempt in good faith to resolve their differences" with respect to disputed items. See APA § 2(g)(iii).

8. As is customary, the APA contains an arbitration provision which requires that disputes as to the Net Working Capital and the corresponding adjustment to the Purchase Price be referred to an accounting firm for "final, binding and conclusive" arbitration.[4] See APA § 2(g)(iii). Specifically, Section 2(g)(iii) of the APA states that "[i]f Buyer and Sellers do not resolve all Disputed Items by the end of the Resolution Period, then all Disputed Items remaining in dispute will be submitted ... to Grant Thornton LLP (the 'Neutral Arbitrator')." APA § 2(g)(iii). "Disputed Items" is generally defined as those differences between the Buyer's and Sellers' Net Working Capital Statement. See id.

## Argument

### I. The APA Mandates Arbitration to Resolve Disputes Regarding the Net Working Capital Adjustment

9. Section 2(g)(iii) of the APA is clear in its requirement that disputes regarding the Net Working Capital Adjustment be submitted for binding arbitration. The Federal

[4] Such firm is currently set as Grant Thornton LLP, a nationally recognized accounting firm.

Arbitration Act (the "FAA") provides, in relevant part, that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[5] In determining whether an arbitration agreement should be enforced, courts conduct a three-step analysis: (1) whether the dispute is governed by an enforceable arbitration clause; (2) whether the Court has discretion to deny enforcement of the arbitration clause; and (3) if the Court has discretion to deny arbitration, whether it should exercise that discretion. Shubert v. Wellspring Media, Inc. (In re Winstar Communications, Inc.), 335 B.R. 556, 561-62 (Bankr. D. Del. 2005); Jalbert v. Pac. Employers Ins. Co. (In re Olympus Healthcare Group), 352 B.R. 603, 607 (Bankr. D. Del. 2006).

10. The Debtors do not dispute the validity of the arbitration provision or that it governs the parties' disagreement over the Net Working Capital Adjustment. Furthermore, clear precedent establishes that the Court does not have discretion to deny enforcement of the arbitration provision. The Debtors clearly recognize this and thus, rather than address the arbitration provision, attempt to circumvent its control by alleging that certain issues must be decided by the Court prior to arbitration. The Court should not countenance this argument when the law is clear that the arbitration provision controls.

---

[5] The "final, binding and conclusive" arbitration procedure set forth in Section 2(g)(iii) of the APA constitutes "arbitration" as defined by the FAA. See Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 350 (3rd Cir. 1997) ("'If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.' ... [T]he essence of arbitration, we think, is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e., to an award made by a third-party arbitrator.") (quoting AMF Inc. v. Brunswick Corp., 621 F.Supp. 456, 460 (S.D.N.Y. 1985)); see also, AMF, 621 F.Supp. at 460 ("No magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of the [FAA].").

## A. ***The Dispute Is Governed by the Arbitration Provision.***

11. The FAA has established a strong policy in favor of arbitration. Indeed, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration, whether the problem at hand is the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., 475 U.S. at 650 (1986).

12. The Debtors couch the relief requested in the Motion as contract interpretation issues that must be decided by this Court and do not even attempt to argue why these disputes are not exclusively within the province of the arbitration provision of the APA. The reason for the Debtors' diversion is clear: if the Court were to grant the relief requested by the Motion, the Court would be deciding the precise issues that are covered by the APA's arbitration provision in direct contravention of applicable law. AT&T Techs., 475 U.S. at 649-50 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claim") (emphasis added). It is wholly irrelevant whether these issues relate to matters of law, accounting or otherwise; the parties to the APA agreed that disputes over the Net Working Capital Adjustment are to be arbitrated, with no exceptions. Under these facts, this Court must refer the disputes regarding the Net Working Capital Adjustment to arbitration.

## B. ***The Court Does Not Have Discretion to Deny Enforcement of the APA's Arbitration Clause.***

13. The FAA's strong presumption in favor of arbitration means that this

Court has discretion to deny enforcement of an arbitration provision only in certain limited circumstances. The Third Circuit has held that a "bankruptcy court lacks the authority and discretion to deny [an arbitration provision's] enforcement, unless the party opposing arbitration can establish congressional intent ... to preclude waiver of judicial remedies for the statutory rights at issue." Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze), 434 F.3d 222, 231 (3d Cir. 2006) (emphasis in original).[6] Such Congressional intent can be discerned in one of three ways: (1) the statute's text; (2) the statute's legislative history; or (3) "an inherent conflict between arbitration and the statute's underlying purpose." Mintze, 434 F.3d at 229 (quoting Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 227 (1987)).

14. The Third Circuit has held that there is no intent to preclude judicial remedies in either the text of the Bankruptcy Code or its legislative history. Id. at 231. Further, the Third Circuit has held that where a debtor brings claims that raise "no bankruptcy issue to be decided by the Bankruptcy Court," there is no "inherent conflict" between arbitration of the debtor's claims and the underlying purpose of the Bankruptcy Code.[7] Id. at 231-32; see also Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1161 (3rd Cir. 1989). Courts in Delaware have interpreted this to mean that the appropriate analysis in determining whether a Bankruptcy Court has discretion to deny enforcement of an arbitration provision is "whether the claims are derived from the debtor or the claims are those 'that the Bankruptcy Code created for the benefit of creditors of the estate'" Olympus Healthcare, 352 B.R. at 610

---

[6] The party opposing arbitration has the burden to prove that Congress intended to preclude the waiver of judicial remedies. Id.

[7] The Mintze Court also specifically held that even where compelling arbitration may have "a potential effect on the order of priority and the amount of distribution of other creditors," such a consequence does not rise to the "sufficiently adverse effect on the underlying purpose of the Bankruptcy Code" necessary for the Court to refuse enforcement of an arbitration provision. Id. at 231-32.

(quoting Mintze, 434 F.3d at 230-31). "For claims that are derivative of the debtor, the Court does not have discretion and the claims are subject to mandatory enforcement of the arbitration agreement." Id.

15. As an initial matter, as the Motion barely addresses the arbitration provision, the Debtors have certainly not met their burden in establishing that the arbitration provision should not apply. Notwithstanding, the issues here are unquestionably "derivative of the Debtor," as they stem from the APA, a contract to which the Debtors are a party. The Debtors submitted this arbitration provision for the Court's approval. They cannot now argue that the provision should not be enforced. Accordingly, case law in this Circuit dictates that the arbitration provision should be enforced.

### C. ***Since the Court Does Not Have Discretion to Refuse to Enforce the Arbitration Provision, It Does Not Need to Determine Whether to Exercise such Discretion.***

16. As set forth above, the Court does not have discretion to deny enforcement of the APA's arbitration provision, and, therefore, the question of whether the Court should exercise its discretion is effectively moot. See Olympus Healthcase, 352 B.R. at 607 n.3; see also, Hays, 885 F.2d at 1156 (refusing to address the issue of whether the lower court abused its discretion, because it "committed a more fundamental error in determining that it had discretion to exercise").

### D. ***The Court Should Compel Arbitration.***

17. The APA's agreed-upon arbitration provision is valid and enforceable, and governs the dispute. Furthermore, the Court does not have discretion to deny enforcement of the arbitration provision. As such, the Court should deny the Debtors' Motion, grant this Cross-Motion and enter an order directing the parties to the APA to arbitrate all Disputed Items regarding the Net Working Capital Adjustment and the related Purchase Price Adjustment.

## II. The Motion Is Procedurally Defective and Should Be Denied.

18. Even if the Court were to find that the arbitration provision in the APA did not apply to the issues addressed in the Motion, the Court should deny the Motion on the grounds that it is procedurally defective. Although the Motion alleges that it is a motion to enforce the Sale Order, it, in fact, seeks a declaratory judgment as to the meaning of the APA. Specifically, the Motion seeks a ruling, inter alia, that the Purchaser's treatment of the claim of International Paper is contrary to both the plain meaning of the APA and the intentions of the parties. Such relief is clearly a request for a declaratory judgment as to the meaning of the APA. Declaratory judgment relief must be granted through an adversary proceeding, which must be commenced by filing a complaint. See Fed. R. Bankr. P 7001(9); 7003. The Motion is therefore procedurally defective and should be dismissed.

## III. If the Court Declines to Refer the Underlying Disputes to Arbitration, the Court Should Adjourn a Hearing on the Merits to a Later Date

19. In the event the Court declines to submit the disputes regarding the Net Working Capital Adjustment to arbitration (which it should not do), the Court should adjourn a hearing on the merits of the Motion to a later date. The Purchaser relied upon the clear and unambiguous terms of the APA and applicable law in concluding that the disputes raised in the Motion would not be decided by this Court. Thus, if the Court decides that it will consider the Motion on the merits, the Purchaser should be afforded a full and fair opportunity to brief the underlying substantive issues and present evidence and argument to the Court at a subsequent hearing.

WHEREFORE, the Purchaser respectfully requests that the Court deny the Motion, and enter an Order, substantially in the form attached hereto as Annex A, compelling arbitration and grant such other and further relief as the Court deems appropriate.

Dated: January 13, 2011
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Curtis S. Miller (No. 4583)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

and

Robert J. Lemons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Counsel for Purchaser

4033222